Paul A. DiGiorgio, Esq.
John E. Keefe, Jr., Esq.
**KEEFE LAW FIRM**
170 Monmouth Street
Red Bank, NJ  07701
Tel.  732-224-9400
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH PALMISANO, JAY HAJESKI, SEAN WALL, AND WALTER EVERETT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CROWDERGULF, LLC; BIL-JIM CONSTRUCTION CO., INC.; MAPLE LAKE, INC.; R. KREMER AND SON MARINE CONTRACTORS, LLC; JOHN C. RAMSAY, LYMAN W. RAMSAY, JR., JAMES R. JOHNSON, JR., DAVID L. JOHNSON, CAROLYN J. HORDICHUK, ABC CORPORATIONS (1-100); DEF CORPORATIONS (1-500); and JOHN DOES (1-10), et al.<br><br>Defendants. | Civil Action No.<br><br><br><br><br><br><br><br><br>**CLASS ACTION COMPLAINT, JURY DEMAND, AND DESIGNATION OF TRIAL COUNSEL** |

Plaintiffs, Joseph Palmisano, Jay Hajeski, Sean Wall, and Walter Everett, on behalf of themselves and others similarly situated, (hereinafter collectively referred to as "Plaintiffs" or the "Class"), by way of Complaint against the above-named Defendants, say as follows:

## INTRODUCTION

1. This Class Action seeks monetary and injunctive relief to redress the unlawful pay practices followed by Defendants, CrowderGulf, LLC (hereinafter "Crowder Gulf"), Bil-Jim

Construction Company, Inc. ("Bil-Jim"), Maple Lake, Inc. ("Maple Lake"), R. Kremer and Sons Marine Contractors, LLC ("Kremer Marine"), ABC Corporations (1-100), DEF Corporations (1-500), John C. Ramsay, Lyman W. Ramsay, Jr., James R. Johnson, Jr., David L. Johnson, Carolyn J. Hordichuk, and/or and John Does (1-100) (hereinafter collectively referred to as "Defendants"), in connection with their failure to properly pay Prevailing Wages to Plaintiffs in connection with a certain public works project, in the aftermath of the weather event commonly referred to as "Superstorm Sandy".

    2.    As more particularly described below, Defendants:

        a)    failed to pay employees who performed work, in an eligible "craft" and/or "trade" on a "public works" project, that was covered by the New Jersey State Prevailing Wage Act, N.J.S.A. 34:11-56.25 et seq. (hereinafter "PWA"), full prevailing wages ("Base" plus "Fringe" rate), "Shift Differentials", PWA-defined "Overtime", "Double Time" for work performed on Sundays and Holidays, and/or other PWA benefits; and

        b)    otherwise failed to comply with the PWA.

    3.    Plaintiffs bring this action on behalf of themselves and all other similarly situated employees of the prime contractor, its subcontractors, and their sub-subcontractors on the subject project. Plaintiffs seek compensatory and statutory damages and injunctive relief, as provided by the PWA, and such other further relief as this Court deems appropriate, including but not limited to attorneys' fees and costs.

    4.    This class action seeks monetary and injunctive relief to redress the unlawful pay practices followed by Defendants.

**PARTIES and BACKGROUND**

**Defendants:**

     5.     Upon information and belief and at all times mentioned in this Complaint, Defendant Crowder Gulf is a domestic profit corporation authorized to do business under the laws of the State of Alabama, with its main office in Theodore, Alabama; and it regularly conducts and, at all times relevant hereto, it conducted business in and throughout the State of New Jersey.

     6.     Crowder Gulf entered into contract(s) with the State of New Jersey in or about January 2013, for what is sometimes generally referred to as "waterway debris removal services", in connection with the effects of Superstorm Sandy (hereinafter, the "Prime Contract" and/or the "Sandy Project").  Attached to this Complaint are certain of the documents – which are related to and, to Plaintiffs' understanding, together make up the Prime Contract and partially describe the Sandy Project.  ***Exhibit A*** is a copy of the New Jersey Division of Purchase and Property Waivered Services Contracts Standard Terms and Conditions, revision date June 29, 2011 -- executed by Crowder Gulf's President (Defendant, John Ramsay) on January 14, 2013. The New Jersey Division of Purchase and Property's Request for Quotations for Waterway Debris Removal Services, revised January 15, 2013, with Attachments, Electronic Q&A, and Final Bidder Checklist dated January 16, 2013 (together, the "RFQ") is attached at ***Exhibit B***. Attached at ***Exhibit C*** is a copy of Crowder Gulf's Pricing Proposal to the State of New Jersey, dated January 18, 2013 (Crowder Gulf's "Proposal").

     7.     NJ's Standard T&C, at section VI., subsection D., makes the PWA part of the Prime Contract. (***Exhibit A***)

8. Plaintiffs performed PWA-eligible work on the Sandy Project in what the RFQ defines as the "Central Region" of New Jersey, primarily in the Barnegat Bay waterway, and on the nearby beaches. (***Exhibit B***, at p. 3)

9. Despite any general description of the Prime Contract, the scope of work for the Sandy Project primarily involved the dredging of "displaced sand" from the bay, transporting it, and using it (after screening it back to "beach quality") to rebuild nearby beaches, sand dunes, and sand bars. (***Exhibit B***, at p. 8)

10. Attached at ***Exhibit D*** is July 18 and 19, 2013 correspondence between the United States Department of the Army, Corps of Engineers and the New Jersey Department of Environmental Protection, regarding approval of work involved in the Sandy Project. In particular, these documents discuss: the "maintenance" dredging of certain waterways, in "sand overwash" areas, to clear navigational channels for commercial fishing and recreational boating, and the "redistribution" and "spreading" of that sand on the state's nearby beaches.

11. The Sandy Project served the dual purpose of repairing Barnegat Bay, including but not limited to the removal of large items, and restoring it (through dredging) to pre-storm depths – making it safely navigable again; and using that dredged material to rebuild the beaches. (***Exhibits B and D***)

12. Upon information and belief and at all times mentioned in this Complaint, Defendant Bil-Jim is a domestic profit corporation authorized to do business under the laws of the State of New Jersey; and it regularly conducts business throughout the State of New Jersey.

13. Upon information and belief and at all times mentioned in this Complaint, Defendant Maple Lake is a domestic profit corporation authorized to do business under the laws

of the State of New Jersey; and it regularly conducts business throughout the State of New Jersey.

14. Crowder Gulf, under its Prime Contract, entered into a subcontract with Bil-Jim on February 28, 2013. Attached as ***Exhibit E*** is a copy of an example of a subcontract for the Sandy Project (i.e. Bil-Jim's). Upon information and belief, Crowder Gulf subcontracted with companies other than Bil-Jim.

15. Defendant Maple Lake is apparently an affiliated entity of Bil-Jim's (through common but not necessarily identical ownership), and Maple Lake employees also performed work under Crowder Gulf's Prime Contract with the State of New Jersey – even though Maple Lake may not have contracted directly with Crowder Gulf.

16. Bil-Jim and Maple Lake employed workers to perform work on the Sandy Project, under Bil-Jim's subcontract with Crowder Gulf – which work was and is subject to the PWA.

17. At all times mentioned in this Complaint, ABC Corporations (1-100), are yet unidentified entities, which may be directly or vicariously liable for the damages suffered by Plaintiffs, through the conduct of their principals and/or employees, and who may have intentionally and/or negligently allowed and/or condoned any or all of the wrongful acts described to have occurred herein.

18. Upon information and belief, Crowder Gulf entered into other subcontracts, under the Prime Contract, with subcontractor ABC Corporations (1-100), which subcontracts were substantially similar to the Bil-Jim subcontract.

19. ABC Corporations (1-100) employed workers (putative class members) to perform work on the Sandy Project, under their subcontracts with Crowder Gulf – which work was and is subject to the PWA, but for which full prevailing wages plus benefits were not paid.

20. Upon information and belief and at all times mentioned in this Complaint, Defendant Kremer Marine is a domestic profit corporation authorized to do business under the laws of the State of New Jersey; and it regularly conducts business throughout the State of New Jersey.

21. Upon information and belief, Bil-Jim entered into a sub-subcontract with Kremer Marine, for the provision of services under the Prime Contract through Bil-Jim's subcontract with Crowder Gulf.

22. Kremer Marine employed workers (putative class members) to perform work on the Sandy Project, under its sub-subcontract with Bil-Jim – which work was and is subject to the PWA, but for which full prevailing wages plus benefits were not paid.

23. At all times mentioned in this Complaint, DEF Corporations (1-500), are yet unidentified entities, which may be directly or vicariously liable for the damages suffered by Plaintiffs, through the conduct of their principals and/or employees, and who may have intentionally and/or negligently allowed and/or condoned any or all of the wrongful acts described to have occurred herein.

24. Upon information and belief, Bil-Jim (and subcontractor ABC Corporations) entered into other sub-subcontracts, under their respective subcontracts to the Prime Contract, with sub-subcontractors DEF Corporations (1-500), which subcontracts were substantially similar to the Kremer Marine sub-subcontract.

25. Upon information and belief, Defendant DEF Corporations (1-500) employed workers (putative class members) to perform work on the Sandy Project, under their sub-subcontracts with Bil-Jim and/or ABC Corporations (1-100) – which work was and is subject to the PWA, but for which full prevailing wages plus benefits were not paid.

26. In addition to holding corporate employers responsible for PWA violations, the New Jersey Wage Payment Law, N.J. Stat. Ann. § 34:11-4.1 to 34:11-67 ("NJWPL") -- Article 2b of which is the PWA – also deems individual officers of, and any agents having management of, a corporation, as employers responsible for violations of the PWA.

27. Upon information and belief, and at all times relevant hereto, John C. Ramsay (President) and Lyman R. Ramsay, Jr. were the officers/members of, and/or agents having management of, Crowder Gulf.

28. Upon information and belief, and at all times relevant hereto, James R. Johnson, Jr. (President), David L. Johnson (Vice President), and Carolyn J. Hordichuk (Secretary/Treasurer) were the officers and/or senior management of Bil-Jim.

29. At all times mentioned in this Complaint, John Does (1-100), are the yet unidentified owners, officers, principals, directors, supervisors, or managers of Defendants Crowder Gulf, Bil-Jim, Maple Lake, ABC Corporations (1-100), and/or DEF Corporations (1-500) -- whose yet unidentified conduct, specific roles, responsibilities, and decisions resulted in the pay violations and other wrongful acts described to have occurred herein.

**Plaintiffs:**

30. Plaintiff Joseph Palmisano is a resident of Neptune, New Jersey. He was employed by Kremer Marine as, among other capacities, a licensed Tug Boat Operator,

Operating Engineer, Tug Captain, Tug Master, Power Boat Captain, and/or Deck Hand or General Laborer; from approximately March 2013 until in or about September 2013, on the Sandy Project. Also, he regularly worked: in excess of 40 hours per week, over 8 hours per day, more than a single shift in a day, on weekends, and on holidays.

31. Plaintiff Jay Hajeski is a resident of Pittsburgh, Pennsylvania. He was employed by Kremer Marine as, among other capacities, a Tug Boat Operator, Operating Engineer, Tug Captain, Tug Master, Power Boat Captain, and/or Deck Hand or General Laborer; from May 2013 until in or about September 2013, on the Sandy Project. Also, he regularly worked: in excess of 40 hours per week, over 8 hours per day, more than a single shift in a day, on weekends, and on holidays.

32. Plaintiff Sean Wall is a resident of Brick Township, New Jersey. He was employed by Bil-Jim as, among other capacities, a machine operator or "Operating Engineer", from approximately December 2012 until in or about March 2013, on the Sandy Project. Also, he regularly worked: in excess of 40 hours per week, over 8 hours per day, more than a single shift in a day, on weekends, and on holidays, and sometimes at more than a single hourly rate in the same pay week.

33. Plaintiff Walter Everett is a resident of Bayville, New Jersey. He was employed by Bil-Jim and/or Maple Lake as, among other capacities, a mechanic, lead engineer, foreman, and/or "Field Engineer", from approximately November 2012 until in or about March 2013, on the Sandy Project. Also, he regularly worked: in excess of 40 hours per week, over 8 hours per day, more than a single shift in a day, on weekends, and on holidays.

## COMMON FACTS

34. At all relevant times herein, Defendants engaged in, among other things, the construction business; and as such, they employed construction workers like Plaintiffs, of various skills and training, to perform various types of construction work – also referred to as "trades" or "crafts", in connection with the PWA and the New Jersey Department of Workforce Development Prevailing Wage Rate Determinations ("PW Rate Sheets").

35. As construction companies, Defendants regularly engaged, at all relevant times hereto, in various "public works" (as contemplated by the PWA) construction projects – for public entities, on public lands, and/or paid for with public funds; and as such, they were familiar with New Jersey's (and, based on the past experience of many Defendants, various other states') prevailing wage laws.

36. The Sandy Project took place on public land -- in what the RFQ defines as the "Central Region" of New Jersey, primarily in the Barnegat Bay waterway, and on the nearby beaches; and it began in or around January 2013, and it ended in or around February 2014.

37. In addition to the removal, disposal or recycling of eligible waterway debris, the Sandy Project primarily (in terms of cost, duration and quantity of labor, equipment, and material handled) involved the dredging of "displaced sand" from the bay, transporting it, and using it (after screening it back to "beach quality") to rebuild, replenish, reconstruct and/or repair impacted nearby beaches, sand dunes, and sand bars.

38. The Sandy Project served the dual purpose of repairing Barnegat Bay, including but not limited to the removal of large items, and restoring it (through dredging) to pre-storm depths – making it safely navigable again.

39. As such, the Sandy Project involved workers performing, among other things: construction, reconstruction, demolition, alteration, custom fabrication, or repair work, or maintenance work, including painting and decorating – pursuant to the PWA.

40. Upon information and belief, the Sandy Project was paid for entirely out of the funds of a "public body", within the meaning of N.J.S.A. 34:11-56.26(4).

41. Upon information and belief, the Sandy Project was performed entirely on land owned by a public body, pursuant to N.J.S.A. 34:11-56.26(5).

42. The type of work performed by Plaintiffs and the putative Class Members on the Sandy Project involved, among other things: construction, reconstruction, demolition, alteration, custom fabrication, or repair work, or maintenance work, including painting and decorating.

43. Defendants did not pay, and Plaintiffs did not receive, prevailing wages for the work they performed on the Sandy Project, including but not limited to full prevailing wages ("Base" plus "Fringe" rate), "Shift Differentials", PWA-defined "Overtime", "Double Time" for work performed on Sundays and Holidays, and/or other PWA benefits – as delineated in the PW Rate Sheets.

## JURISDICTION AND VENUE

44. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is a citizen of a state other than that of Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

45. This Court has personal jurisdiction over many of the Defendants because many of them are incorporated in New Jersey, and they conduct regular and continuous business in New Jersey.

46. Venue is proper in this District under 28 U.S.C. 1391(b) because the Prime Contract was entered into in, the Sandy Project work was performed in, and some Defendants are headquartered in, the State of New Jersey; and because Defendants have caused harm to Plaintiffs and putative Class members residing in this District.

## CLASS ALLEGATIONS

47. Pursuant to 28 U.S.C. § 1332(d), N.J.S.A. 34:11-56.40, 29 U.S.C. 201, and *N.J. Ct. R.* 4:32-1, Plaintiffs bring this action on behalf of themselves and all other persons similarly situated -- the "Class", which is defined to include:

> **All employees of Crowder Gulf, together with those of its subcontractors and their sub-subcontractors, on the Sandy Project (as described herein) involving waterway debris removal, sand dredging, beach rebuilding, and bay repairing, in the "Central Region of New Jersey" -- who performed work in crafts or trades subject to, but were not paid in accordance with, the PWA and/or the PW Rate Sheets issued in connection with same.**

48. There are questions of law and fact that are common to all members of the Class, which predominate over any question affecting only individual Class members.

49. The principal common issues include, but are not necessarily limited to, whether Plaintiffs were entitled prevailing wages and/or whether Defendants failed to properly pay prevailing wages to Plaintiffs, for work performed on the Sandy Project.

50. Plaintiffs' claims are typical of the claims of the Class because the claims are based on the same legal and remedial theories, and each class member was underpaid, in some way, in violation of the law.

51. Plaintiffs will fairly and adequately protect the interests of all Class members in the prosecution of this action and in the administration of all matters relating to the claims stated herein.

52. Plaintiffs are similarly situated with, and have suffered similar injuries as, the members of the Class that they seek to represent.

53. Plaintiffs have retained counsel experienced in complex litigation and class action cases.

54. Neither Plaintiffs nor counsel have any interest that may cause them to not vigorously pursue this action.

55. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because:

   a) Concentration of the litigation concerning this matter in this Court is desirable;
   b) Failure of justice will result from the absence of a class action;
   c) The Class and the difficulties likely to be encountered in the management of this class action are negligible; and
   d) The Class is potentially so numerous as to make it impracticable to join all members of the Class as plaintiffs.

## COUNT ONE (PWA)

56. Plaintiffs repeat and re-allege the allegations set forth in the previous paragraphs of this Complaint as if they were set forth in full herein.

57. At all times mentioned in this Complaint and during Defendants' employment of Plaintiffs, Defendants employed Plaintiffs to perform work within the scope of the PWA, under public works contracts, on public land, and/or involving public funds.

58. Plaintiffs performed work on these public works contracts in "Crafts" or "Trades" subject to the protections of the PWA and/or listed in the PW Rate Sheets.

59. At all times mentioned in this Complaint, Plaintiffs acted within the scope of their employment for the Defendants, and performed work that was subject to the protections of the PWA, for Defendants and at the direction of Defendants.

60. Pursuant to the PWA and common law, all contractors are liable for their subcontractors' violations of the PWA.

61. As such, Crowder Gulf is liable for its own PWA violations, together with the PWA violations of Bil-Jim, Maple Lake, Kremer Marine, ABC Corporations (1-100), and/or DEF Corporations (1-500) -- to its own employees and to the employees of all of said subcontractors and sub-subcontractors on the Sandy Project.

62. In addition, Bil-Jim and ABC Corporations (1-100) are liable for their own PWA violations, as well as for the PWA violations of Kremer Marine and DEF Corporations (1-500) – to their own employees and to the employees of all of said sub-subcontractors on the Sandy Project.

63. Likewise, Kremer Marine and DEF Corporations (1-500) are liable for their own PWA violations -- to their respective employees.

64. Moreover, Defendants John C. Ramsay, Lyman R. Ramsay, Jr., James R. Johnson, Jr., David L. Johnson, Carolyn J. Hordichuk, and John Does (1-100), as the owners, officers, principals, directors, supervisors, or managers of Defendants Crowder Gulf, Bil-Jim, Maple Lake, Kremer Marine, ABC Corporations (1-100), and/or DEF Corporations (1-500), are also responsible for their respective entity's failure to comply with the PWA -- to their employees and to the employees of their subcontractors and sub-subcontractors.

65. Defendants violated the PWA by failing to pay Plaintiffs for the subject public work, at full prevailing wage rates ("Base" plus "Fringe" rate), "Shift Differentials", "Overtime", "Double Time" for work performed on Sundays and Holidays, and/or other PWA benefits – all as defined in the applicable PW Rate Sheets; and therefore Defendants are liable to Plaintiffs.

66. As a result, Plaintiffs have been damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court issue an Order and grant Judgment to the Plaintiffs as follows:

a) Certifying this action as a Class Action;

b) Naming the Plaintiffs as the representatives of the absent Class members;

c) Appointing Keefe Law Firm as Class Counsel for all purposes in this action;

d) Granting Plaintiffs and Class Members compensatory, statutory, and declaratory relief, common law and punitive damages, and applicable pre- and post-judgment interest, in full recompense for their damages – including statutory attorneys' fees and costs;

e) Enjoining Defendants from violating any applicable statutory or case law, or PW Rate Determinations;

f) Entering judgment according to the injunctive, equitable and declaratory relief sought;

g) Granting Plaintiffs and Class members such other and further relief as the Court deems just in all the circumstances;

h) Granting Incentive Awards to Plaintiffs as Class Representatives for their impartial, loyal and dedicated service to the Class; and

i) Granting Class Counsel an award of their attorneys' fees and costs of suit, reflective of the work done in prosecuting this action, the time spent, the effort and hard costs invested, and results obtained, in light of the Court's judgment informed by awards in other similar cases of comparable difficulty and complexity.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury as to all of the issues contained herein.

## DESIGNATION OF TRIAL COUNSEL

John E. Keefe, Jr., Esq. and Paul A. DiGiorgio, Esq. are hereby designated as trial counsel for Plaintiffs in the within matter.

**KEEFE LAW FIRM**
*Attorneys for the Plaintiffs*

Dated: October 25, 2017         By:    */s/ Paul A. DiGiorgio*_____
                                        PAUL A. DIGIORGIO, ESQ.