

EXHIBIT B

# REQUEST FOR QUOTATIONS
## FOR
## WATERWAY DEBRIS REMOVAL SERVICES

REVISED January 15, 2013

**Issued by the**
**State of New Jersey**
**Division of Purchase and Property**

## IMPORTANT DATES

| | |
|---|---|
| **Date Issued:** | Friday, January 11, 2013 |
| **Questions Due:** | Monday, January 14, 2013 at 3:00 PM |
| **Answers to be Posted:** | Tuesday, January 15, 2013 at 3:00 PM |
| **Proposals Due:** | Friday, January 18, 2013 at 3:00 PM |

**ALL TIMES ARE EASTERN STANDARD TIME**

**New Jersey Department of the Treasury**
**Division of Purchase and Property**
**Proposal Receiving Room**
**33 West State Street, 9th Floor**
**P.O. Box 230**
**Trenton, NJ  08625-0230**

REQUEST FOR QUOTATIONS ("RFQ")
FOR
WATERWAY DEBRIS REMOVAL SERVICES

## 1.0 PURPOSE AND INTENT

This RFQ is issued by the Procurement Bureau, Division of Purchase and Property, Department of the Treasury on behalf of the New Jersey Department of Environmental Protection ("NJDEP"). The purpose of this RFQ is to solicit proposals from interested qualified firms and award up to three contracts to provide FEMA-compliant waterway debris removal services to the State, which will direct the prioritization of the location of these services to the Contractor.

The intent of this RFQ is to award a contract to up to three responsible and qualified bidders whose proposal(s), conforming to this RFQ, is/are most advantageous to the State, price and other factors considered. The State intends that this work to be performed pursuant to a contract between the State and up to three waterway debris removal contractors will be utilized by NJDEP for purposes of identifying debris submerged in waterways, removing debris from State-owned waterways, disposing or recycling of the debris, and dredging sand and redistributing it on the coastal barrier islands. The State will assume ownership of the debris upon collection and removal, including proceeds from recycling or other disposal. The State may award one or more, up to three, contracts for waterway debris removal services if deemed in the State's best interest, price and other factors considered.

It is the State's intent to ensure that all work performed pursuant to this RFQ is eligible for FEMA Public Assistance grant funding and performed in accordance with FEMA regulations, policies and guidance. Qualified firms shall either possess a New Jersey A-901 license or be willing to apply for such licensure within 48 hours of contract award with the N.J. Department of Environmental Protection, pursuant to N.J.S.A. 13:1E-1 et seq., N.J.A.C. 7:26-3.2 and N.J.A.C. 7:26G-7. The A-901 license must be possessed by the Contractor; this requirement cannot be assigned to a subcontractor. Qualified firms shall also possess all necessary and applicable licenses and permits to operate equipment and vessels related to waterway debris removal, which shall be provided to the State Contract Manager prior to the commencement of work on this contract.

## 1.1 BACKGROUND

The State of New Jersey suffered catastrophic damage as a result of Superstorm Sandy, which resulted in an extensive amount of debris being washed into the State's waterways. Based on field observations and aerial reconnaissance, the State has identified eleven (11) Zones ("Zones") for waterway debris removal and has ranked them in terms of anticipated volume of debris, complexity of debris removal operations, and other factors. The North Region is comprised of Zones 1-2, the Central Region is comprised of Zones 3-7 and the South Region is comprised of Zones 8-11. The Zones are described below in order of decreasing priority. A State map with Zone placement can be found at Attachment B. Additional maps of the Zones are located on NJDEP's Waterway Debris Resources website at http://www.nj.gov/dep/special/hurricane-sandy/wwdebris.htm

NORTH REGION:
- ZONE 1 – Metro: from Outer Bridge Crossing north to the State border

2

- ZONE 2 – Raritan Bay: Northern bank of Navesink River up to the Outer Bridge Crossing

CENTRAL REGION:
- ZONE 3 – Monmouth County Coastal Tidal Streams:  All of Navesink River (and tributaries) south to and including all of the Manasquan River (and all tributaries)
- ZONE 4 – Barnegat Bay North:  Southern bank of Manasquan River south to the Northern Border of Normandy Beach
- ZONE 5 – Mid Barnegat Bay A:  Northern border of Normandy Beach to Route 37 bridge
- ZONE 6 – Mid Barnegat Bay B:  Route 37 bridge to southern tip of Island Beach State Park
- ZONE 7 – Southern Barnegat Bay:  Southern tip of Island Beach State Park to Route 72 Bridge

SOUTH REGION
- ZONE 8 – Little Egg Harbor A:  Route 72 bridge to southern border of Beach Haven
- ZONE 9  – Little Egg Harbor B:  Southern border of Beach Haven to southern tip of Long Beach Island
- ZONE 10 – Great Bay:  Southern tip of Long Beach Island to northern border of Brigantine Inlet
- ZONE 11 – Southern Zone:  Northern border of Brigantine Inlet to the Delaware Memorial Bridge (Route 295), includes Atlantic (south of Brigantine Inlet), Cape May, Cumberland, and Salem (south of bridge) Counties.

Zones shall extend inland to the farthest extent of the tide surge for Superstorm Sandy as defined by FEMA at http://fema.maps.arcgis.com/home/index.html

(Interim High Resolution Surge Area – Field Verified November 11, 2012, New Jersey Interim High Resolution Surge Area)

Priority A:  Based on aerial reconnaissance, field observations and other information, the State anticipates that these areas will have the largest volumes of submerged and floating debris in the bay and the near shore areas of tidal streams (including sand) and that debris removal will have a high level of complexity.  The State has no information at this time about the nature, volume or locations of waterway debris in tidal streams farther inland.  The debris in the Zones will include, but not be limited to, the debris noted below,

- ZONE 4 - Barnegat Bay North:  In this area, 58 houses were destroyed in Mantoloking and approximately 45 houses were significantly damaged.  Debris from those houses is believed to be in Barnegat Bay, nearby streams and marshes.  In addition, 8 vehicles are missing from Mantoloking.  Further, breaches of the dunes resulted in deposition of sand from the beach/ocean into Barnegat Bay.  The volume of sand deposited in Barnegat Bay in this Zone is unknown, but could be close to 1,000,000 cubic yards.  The State anticipates that the submerged and floating debris in this Zone will consist of, without limitation, household contents, structural material, small to large size pieces of structures, whole structures, exterior residential contents (patio furniture, grills), docks, vessels, vehicles, telephone poles, vegetative debris and sand.

3

- ZONE 5 - Mid Barnegat Bay A:  In this area, structural damage was less severe than in Barnegat Bay North, but still substantial.  The State anticipates that the submerged and floating debris in this Zone will consist of, without limitation, household contents, structural material, small to large size pieces of structures, exterior residential contents (patio furniture, grills), docks, vessels, telephone poles, vegetative debris and sand.

- ZONE 8 – Little Egg Harbor A: At least 10 lagoons in the Tuckerton area have submerged debris (types unknown).  According to reports from FEMA, 32 homes are missing in this area and at least 10 homes are in the lagoons.  Additionally, approximately 7 lagoons in the Stafford Township area are known to have submerged debris (type unknown).

- ZONE 9 – Little Egg Harbor B:  Some towns in this part of Long Beach Island experienced significant structural damage (e.g., Holgate).

**Priority B**:  Based on aerial reconnaissance, field observations and other information, the State anticipates that this area will have moderate levels of submerged and floating debris in the bay and the near shore areas of tidal streams (including sand) and that debris removal will have a moderate degree of complexity.  For this Zone, the State anticipates that the submerged and floating debris in this Zone will consist of, without limitation, household contents, structural material, small to large size pieces of structures, exterior residential contents (patio furniture, grills), docks, vessels, vegetative debris and sand.  The State has no information at this time about the nature, volume or locations of waterway debris in tidal streams farther inland.

- ZONE 6 - Mid Barnegat Bay B

**Priority C**:  Based on aerial reconnaissance, field observations and other information, the State anticipates that these areas will have low/moderate levels of submerged and floating debris in the bay and the near shore areas of tidal streams (including sand) and that debris removal will have a moderate degree of complexity.  For each of these Zones, the State anticipates that the submerged and floating debris in each of the following Zones will consist of, without limitation, household contents, structural material, small to medium size pieces of structures, exterior residential contents (patio furniture, grills), docks, vessels, vegetative debris and sand.  The State has no information at this time about the nature, volume or locations of waterway debris in tidal streams farther inland.

- ZONE 2 - Raritan Bay
- ZONE 3 - Monmouth County Coastal Tidal Stream
- ZONE 7 - Southern Barnegat Bay

**Priority D**:  Based on aerial reconnaissance, field observations and other information, the State anticipates that these areas will have low/very low levels of submerged and floating debris in the bay and the near shore areas of tidal streams (including sand) and that debris removal will have the lowest degree of complexity.  For each of these Zones, the State anticipates that the submerged and floating debris in each of the following Zones will consist of, without limitation, household contents, structural material, exterior residential contents (patio furniture, grills), vessels, vegetative debris and sand.  The State has no information at this time about the nature, volume or locations of waterway debris in tidal streams farther inland.

- ZONE 1 – Metro
- ZONE 10 - Great Bay

- ZONE 11 – Southern Zone

The State is requiring that the debris removal and dredging projects be 75% completed **no later than June 1, 2013**.

## 1.2 PROPOSAL SUBMISSION

For bidders that would prefer to submit their proposal electronically, proposals must be submitted with the subject line **"Waterway Debris Removal and Dredging Services"** to:

**Jonathan Wallace**
Jonathan.Wallace@treas.state.nj.us

For bidders that would prefer to submit their proposal in hard copy, six (6) copies of the proposal (1 original, 4 copies, and 1 unbound copy) must be submitted marked **"Waterway Debris Removal Services"** and addressed to:

Attn: Jonathan Wallace
Proposal Receiving Room- 9th Floor
Division of Purchase and Property
Department of the Treasury
33 West State Street, P.O. Box 230
Trenton, NJ 08625-0230

**Proposals must be received by Friday, January 18, 2013 at 3:00 p.m. Eastern Standard Time.**

**All respondents must limit their proposals to 50 pages or less at no smaller than 12 point type.**

Proposals must include all appendices and required forms, which do not count against the 50 page limit. The forms required for submission with the proposal are set forth below. They may be downloaded from the Division of Purchase and Property's website, which is located at http://www.state.nj.us/treasury/purchase/forms.shtml   In the event that an RFQ/RFP number needs to be used on a form, please use "RFQ-WATERWAY DEBRIS".

- Ownership Disclosure Form
- Disclosure of Investigations and Other Actions Involving Bidder Form
- Disclosure of Investment Activities in Iran
- Certification of MacBride Principles and Northern Ireland Act of 1989
- Affirmative Action Employee Information Report or, in the alternative, supply either a New Jersey Affirmative Action Certificate or appropriate evidence that the bidder is operating under an existing federally approved or sanctioned affirmative action program (Letter of Federal Approval Program).
- Waivered Terms and Conditions for Services Contracts
- Subcontractor Utilization Plan
- Source Disclosure Certification Form
- Two-Year Chapter 51/EO 117 Vendor Certification and Disclosure of Political Contributions

5

- Certification of Non-Debarment (Attachment C)

**NOTE:** Bidders should also possess, or be in the process of applying for, a New Jersey Business Registration Certificate. A copy of a valid New Jersey Business Registration must be submitted prior to contract award.

Subsequent to bid submission, all information submitted by bidders in response to the solicitation is considered public information, except as may be exempted from public disclosure by the Open Public Records Act, N.J.S.A. 47:1A-1 et seq., and the common law.  Because the State proposes to negotiate and/or pursue a Best and Final Offer, proposals will not be made public until the contract award is approved by the Treasurer's office.

## 1.3 QUESTION AND ANSWER

The Procurement Bureau will accept questions electronically, pertaining to this RFQ, until **3:00 p.m. EST on Monday, January 14, 2013** from all potential bidders.  Questions shall be directed via email to:

**Jonathan Wallace**
Jonathan.Wallace@treas.state.nj.us

Communications with any other representatives of the State regarding this RFQ are prohibited during the submission and selection processes.  Failure to comply with these communications restrictions will result in rejection of a firm's proposal.

The State will not be responsible for any expenses in the preparation and/or presentation of the proposals or for the disclosure of any information or material received in connection with this RFQ.

The State reserves the right to reject any and all proposals received in response to this RFQ, when determined to be in the State's best interest, and to waive minor noncompliance in a proposal.  The State further reserves the right to make such investigations as it deems necessary as to the qualifications of any and all firms submitting proposals in response to this RFQ.  In the event that all proposals are rejected, the State reserves the right to re-solicit proposals.

## 2.0 DEFINITIONS

**Contract** – This RFQ, any addendum to this RFQ, including Questions and Answers, and the bidder's proposal submitted in response to this RFQ, as accepted by the State.

**Director** – Director, Division of Purchase and Property, Department of the Treasury.  By statutory authority, the Director is the chief contracting officer for the State of New Jersey.

**District Solid Waste Plan** – Solid waste management plan developed by one of the State's 22 Solid Waste Management Districts pursuant to the New Jersey Solid Waste Management Act (N.J.S.A. 13:1E-1 et seq.)

**Eligible Debris** – Waterway debris as a result of Superstorm Sandy, located within the State's area of legal responsibility or within waters overlying land owned by private entities and for which the State has obtained all necessary authorizations and approvals to enter the property and access the debris, and that meets FEMA requirements set forth at 44 C.F.R. 206.224

and applicable FEMA policy documents set forth at http://www.fema.gov/9500-series-policy-publications

**FEMA** – The Federal Emergency Management Agency, which administers Public Assistance grant funding for eligible expenditures pursuant to 41 USC §5121, et seq., 44 CFR, Parts 13 and 206 and other published guidance.

**Firm Fixed Price** – A price that is all-inclusive of direct cost and indirect costs, including, but not limited to, direct labor costs, overhead, fee or profit, clerical support, equipment, materials, supplies, managerial (administrative) support, all documents, permits, licenses, reports, forms, travel, reproduction and any other costs. No additional fees or costs shall be paid by the State unless there is a change in the scope of work.

**Offloading Sites** – Area identified and approved by NJDEP for use by Contractor to offload waterway debris collected onto trucks for transport to final disposal site.

**Shall or Must** – Denotes that which is a mandatory requirement. Failure to meet a mandatory material requirement will result in the rejection of a proposal as non-responsive.

**Should** – Denotes that which is recommended, not mandatory.

**State Contract Manager** – State employee responsible for the approval of all deliverables and the main point of contact for the Contractor.

**State Project Manager** – A private firm engaged by the State pursuant to a separate procurement to provide overall management services to the State for this project.

**Task Order-** Order sent from State to Contractor to activate resources to begin a specific waterway debris removal and/or dredging project.

**Transaction** - The payment or remuneration to the contractor for services rendered or products provided to the State pursuant to the terms of the contract, including but not limited to the following: purchase orders, invoices, hourly rates, firm fixed price, or commission payments.

## 2.1 ACRONYMS USED THROUGHOUT THIS RFQ

**ACM** – Asbestos Containing Materials

**ADMS** – Automated Debris Management System

**C&D** – Construction and Demolition

**EHP – Environmental and Historic Preservation**

**EPA** – Environmental Protection Agency

**FEMA** – Federal Emergency Management Agency

**NESHAP** - National Emission Standards for Hazardous Air Pollutants

**NIMS** – National Incident Management System

7

**NJDEP** – New Jersey Division of Environmental Protection

**NJMVC** – New Jersey Motor Vehicle Commission

**NJOEM** – New Jersey Office of Emergency Management

**OSHA** – Occupational Safety and Health Administration

**SBE** – Small Business Enterprise

**SHPO – State Historical Preservation Office**

**TDMA** – Temporary Debris Management Area

**ZOM -** Zone Operations Manager

## 3.0 RFQ SCOPE OF SERVICES

This project consists of removing and disposing or recycling of all eligible waterway debris within and around the bays and tidal rivers and the dredging, pumping, screening and redistribution of sand in affected waterways of the State of New Jersey. The Contractor shall remove Eligible Debris from waterways as directed by the State.

The State intends to execute up to three (3) waterway debris removal services contracts to perform FEMA-compliant Superstorm Sandy-related waterway debris removal in State-owned waters. The Contractor(s) holding a waterway debris removal services contract will serve as the General Contractor for the purpose of waterway debris removal and dredging operations, and will be able to use its own and subcontractor resources to meet the obligations of the contract. It is anticipated that the Contractor(s) will utilize subcontractors, with the expectation that those subcontractors will be members of the local workforce whenever possible. The Contractor(s) shall complete a Subcontractor Utilization Plan and will obtain Certifications of Non-Debarment from its subcontractors. (Attachment C). The Division strongly encourages the use of local subcontractors and has set a 25% goal for the use of subcontractors that are registered with the N.J. Division of Revenue as Small Business Enterprises (SBE). Contractors may search for registered SBEs at https://www6.state.nj.us/CEG_SAVI/jsps/vendorSearch.jsp

Debris removed from the waterway shall be sorted prior to or at the time it is removed from Contractor's boats/barges and placed on shore ("Offloading") for final disposal. Transport of waterway debris from the area of Offloading ("Offloading Site") to final disposal site shall be charged according to the debris classification.

Dredging of sand shall not commence until all Eligible Debris overlying the sand is removed.

Freon shall be removed for recycling from white goods prior to hauling to an approved landfill.

The Contractor shall exercise care to avoid destroying aquatic vegetation and shellfish beds when conducting operations pursuant to this Contract. Information about shellfish beds in New Jersey is available at http://www.nj.gov/dep/special/hurricane-sandy/wwdebris.htm Appropriate equipment shall be used to minimize damage to marshes, wetlands and aquatic vegetation. Debris shall be removed at low tide whenever feasible.

8

The Contractor shall be required to follow all applicable Federal, State and local requirements in dealing with the release of oil and/or hazardous substances, and the injury of natural resources. Before commencing any work in the water or in marsh areas, the Contractor shall have an NJDEP-approved plan for avoiding or minimizing physical injury to natural resources while removing debris; avoiding or minimizing releases of hazardous substances or oil while removing debris; characterizing and responding to releases of hazardous substances or oil occurring during debris removal; remediating the release of a hazardous substance or oil, if it occurs; characterizing injuries to natural resources and public use of those resources in the event of a hazardous substance or oil release;  identifying potential projects/measures to restore or compensate the public for demonstrated natural resource injuries; and rehabilitate oiled or injured wildlife. Please refer to Attachment D, *Oil and Hazardous Substance Release Response and Natural Resource Injury Assessment* for further guidance.

In responding to releases of hazardous substances, the Contractor must perform work in accordance with applicable federal, state and local law, The Contractor must notify the State immediately of any hazardous spill and must follow all EHP/SHPO requirements.

Nonvegetative debris is solid waste and, therefore, must be transported by A-901 licensed firms in compliance with District Solid Waste Plans. Debris may only be disposed or recycled at facilities authorized by the state in which they are located.

The Contractor shall be knowledgeable of the rules and regulations governing the transport of heavy equipment and oversized loads within New Jersey and across state boundaries.

An automated Debris Management System (ADMS) for managing the weight ticketing and accounting process may be utilized.  The State reserves the option of allowing or disallowing the use of any ADMS as a substitute for the paper ticketing process.

The Contractor, and any subcontractors or lessees, must comply with applicable District Solid Waste Plans, including any requirements set forth in the Plans to utilize designated solid waste disposal facilities or transfer stations.  The NJDEP or the County can waive District solid waste flow control requirements.   Summaries of District Solid Waste Plans are set forth at the NJDEP website: www.nj.gov/dep/dshw/recycling/03cplsum.htm

The Contractor must be duly licensed to perform the work in accordance with Federal and State statutes, regulations, guidance, and District Solid Waste Plans. The Contractor shall obtain all Federal, State and local permits and licenses necessary to complete the work prior to commencing work under this contract. The Contractor shall also be responsible for determining what additional permits are necessary to perform under the contract.

Payment will be made at the unit rates bid.

The Contractor shall be responsible for correcting any violations of applicable law that occur as a result of the Contractor's or any subcontractor's actions or operations during the performance of this Contract. Corrections for any such violations shall be at no additional cost to the State.

The Contractor shall be responsible for any damage to private or public property that results from its performance of work pursuant to this Contract.  Disagreements regarding damages and liability for damages will be settled through negotiations between the Contractor and the State Contract Manager. The Contractor shall repair damaged areas immediately after the damage

occurs. The affected area or item will be restored to equal or better than its original condition. The Contractor shall supply the State's Project Manager with weekly lists showing all damage claims that have been settled and all claim issues that remain outstanding.

The Contractor shall conduct the work so as not to interfere with the disaster response and recovery activities of federal, state, or local governments or agencies, or of any public utilities or other private Contractor(s).

All work must be performed and records must be maintained in compliance with FEMA law, regulations, guidance and policies, and applicable Federal, State and local law.

The Contractor shall ensure that wherever non-English-speaking crews are utilized, at least one crew supervisor must be fluent in English.

Within 24 hours of contract award by the State, the Contractor will be required to participate in a kick-off meeting with the NJDEP and other State agencies as necessary or prudent, prior to mobilization ("Contractor Kick-Off Meeting"). The Contractor will be required to furnish certain items to the State, including their performance and payment bonds, at this meeting. The initial Task Order will be issued at this meeting. The Contractor shall report on its project execution plans at the meeting and will work with the State Project Manager on supporting a comprehensive master plan for waterway debris removal in the State. The Contractor shall participate in any meetings requested by the State or the State Project Manager necessary to establish plans for execution of work under this Contract, including schedules; budgeting matters; debris estimates; personnel, subcontractor and equipment needs; identification of vessel aggregation areas, vehicle aggregation areas, debris staging areas, disposal/recycling facilities, docks and the like; environmental health and safety matters; and other matters as may be identified by the State or Project Manager.

## 3.1 CONTRACT ACTIVATION

The State Contract Manager will issue an initial Task Order and provide the Contractor with a prioritized list of debris to be removed by Zone. This Task Order will authorize the Contractor to begin mobilizing the personnel and equipment as necessary to perform the stipulated work and will provide the necessary cost estimate to the State's Project Manager.

Specific work authorizations by the State will be through written Task Orders. Task Orders will define, among other relevant items, the job to be accomplished, location of job, time frame for completion, and prices to be used. (Sample Task Order Form:  Attachment E).

The first Task Order from the State will be received by the Contractor at the Contractor Kick-Off Meeting as mentioned in Section 3.0 above. The Contractor shall provide an Operations Manager for each Zone for which the Contractor is performing work pursuant to this Contract ("Zone Operations Manager" or "ZOM"). The ZOM will coordinate all activities of the Contractor within the boundaries of the Zone and with State or the State's Project Manager. The ZOM must be on site within the boundaries of the specified Zone before any debris is removed.

The Contractor shall commence mobilization immediately upon receipt of the initial Task Order, meeting the following progress patterns: 24 hours—25%; 60 hours—75%; and 96 hours—100%, unless otherwise negotiated. This represents a minimum response schedule and does not restrict an earlier response. Subsequently, the State may issue additional Task Orders to define more precisely the work to be accomplished or to authorize additional work. The Contractor shall

perform in accordance with each Task Order. Each Task Order will be uniquely and sequentially numbered.

Sand displaced as a result of the storm and that is Eligible Debris is also within the scope of this Contract. The Contractor is responsible for determining the actual volume of sand within a Zone that meets the FEMA Eligibility Standards.

The Contractor shall obtain all necessary Right of Entry agreements prior to beginning any work.

All activity associated with debris loading and transporting in public areas shall be performed during visible daylight hours only, unless night transporting is authorized by NJDEP, N.J. Office of Emergency Management ("NJOEM") and/or FEMA ("Night Authorization"). The Contractor will be responsible for determining the method and manner of debris removal operations, consistent with this Contract.

The Contractor shall use only Offloading Sites that are approved by NJDEP. The Contractor shall obtain a list of approved Offloading Sites from the NJDEP prior to mobilization. If the Contractor determines that existing Offloading Sites are insufficient to handle anticipated volumes of debris within the boundaries of the Zone or are otherwise not adequate to support work under this Contract, the Contractor shall work with NJDEP to identify alternate or additional Offloading Sites. Any alternate or additional Offloading Sites must be approved by NJDEP.

The Contractor will be responsible for the lawful disposal and recycling of all debris and any debris reduction byproducts.

The Contractor shall manage debris pickup and offloading operations to coincide with transporting operations during daylight hours, 7 days per week or as defined in the Night Authorization. The Contractor shall be responsible for the mobilization, operations and demobilization at Offloading Sites established or utilized by the Contractor. The Contractor shall also be responsible for the remediation and restoration of Offloading Sites to their pre-use condition.

In the event that an observation tower is needed to monitor Contractor's operations, the Contractor shall utilize a hydraulic scissor lift or prefabricated tower and ensure its safe and proper utilization.

Once debris removal has been completed in a Zone or portion of a Zone, the Contractor must utilize side-scan sonar, LIDAR or other cost-effective and appropriate technology to ascertain that all eligible debris has been removed from the waterway. The Contractor shall provide the State Project Manager with written confirmation of such. Upon receipt of the confirmation, the State may issue a Task Order for sand redistribution in this area, provided that such operations will not interfere with ongoing waterway debris removal.

Some of New Jersey's waterways contain hazardous substances in bottom sediments and/or are sites of active remediation/removal of hazardous substances. Work performed under this Contract shall not interfere with any such remediation/removal work. Information on some of the stream contamination issues in New Jersey can be found at http://www.nj.gov/dep/special/hurricane-sandy/wwdebris.htm

Contractor shall notify the NJDEP at least 10 working days prior to commencing work in a stream, and shall comply with any restrictions on access to streams as may be required by the federal government or NJDEP.

## 3.2 ZONE OPERATIONS MANAGER ("ZOM")

The Contractor shall assign and provide a Zone Operations Manager ("ZOM") to report to the State or the State Project Manager for all regional contract coordination issues and to report to the State Project Manager for coordination of all Contractor activities under Task Orders issued in that Zone. The assigned ZOM must be knowledgeable of all facets of the Contractor's operations and have authority in writing to commit the Contractor. The ZOM shall be on call 24 hours per day, seven days per week, and shall have electronic linkage capability for transmitting and receiving relevant contractual information and making arrangement for on-site accommodations. This linkage shall provide immediate contact via cell phone, fax machine, and have Internet capabilities. The ZOM will participate in daily meetings and disaster exercises, functioning as a source to provide essential information. The ZOM shall be National Incident Management System ("NIMS") compliant and shall maintain records of such training and provide documentation to this effect. This position will not require constant presence; rather the ZOM will be required to be physically capable of responding to the State or the State Project Manager, within one hour of notification.

## 3.2.1 REQUIRED REPORTING

The Contractor shall provide the State Project Manager (and any other entity designated by the State or the State Project Manager) a daily report on each Zone in which the Contractor is performing work under this Contract. This report shall be in a format to be specified by the State. Content of daily reports shall be specified by the State, and at a minimum shall include sufficient data to determine (for each Zone and for all Zones combined) quantities of debris removed, by debris type, on a daily and cumulative basis, locations of disposal/recycling/staging of debris, number of crews working, types and numbers of equipment operating, and estimated completion date of debris removal, including closure of any Offloading Sites.

In addition, the Contractor shall report daily to the State Project Manager (and Manager (and any other entity designated by the State or the State Project Manager) on worker safety, including descriptions of any worker injuries, fatalities, and accidents, and the Contractor's response to such incidents.

The Contractor shall maintain all records related to transactions or services under this Contract for a period of five years from the date of final payment. Such records shall be made available to the New Jersey Office of the Comptroller for review and audit upon request pursuant to N.J.A.C. 17:44-2.2.

## 3.3 HEALTH AND SAFETY

The Contractor shall supervise and direct all work related to waterway debris removal, debris transport, management of Offloading Site(s), scanning services and dredging services, ensuring skilled labor and proper equipment for all tasks. Safety of the Contractor's personnel and equipment is the responsibility of the Contractor. The Contractor(s) shall designate in writing the individual responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the work to be performed.

The Contractor, and its subcontractor(s) and/or personnel, shall comply with all applicable Federal, State, County and local safety and health protection codes, laws, ordinances, and rules, and regulations of any public body having jurisdiction for the safety of persons or property or to protect them from damage, injury, or loss. The Contractor's duties and responsibilities for the safety and protection of the work shall continue until such time as the work is completed and final acceptance by the State has occurred.

When conducting waterway debris removal and/or sand redistribution and dredging operations, the Contractor shall provide a Health and Safety Officer in each Zone in which the Contractor is performing work under this Contract. This Zone Health and Safety Officer shall be certified in First Aid, CPR, OSHA HAZWOPER, 10-hour OSHA Construction Safety Class and use of an automated external defibrillator ("AED"). These certifications shall be furnished to the State at the Contractor Kick-Off Meeting. A Zone Health and Safety Officer may be used for one or more Zones only with the express authorization of the State Project Manager.

The Zone Health and Safety Officer shall have dedicated access to a small motorboat to perform oversight of waterway debris removal and dredging operations to ensure worker safety. A Zone Health and Safety Officer may be used for one or more Zones only with the express authorization of the State Project Manager.

The Contractor shall perform daily safety inspections. Identified safety and health issues and deficiencies, and the actions, timetable, and responsibility for correcting the deficiencies, shall be recorded on inspection forms.  The Contractor shall establish a safety and health deficiency tracking system lists and monitors the status of deficiencies in chronological order.  This list shall be updated daily and made available on site.

Accidents shall be investigated and reports completed by the immediate supervisor of the employee(s) involved and reported to the appropriate Federal, State, County and local authorities, including the NJDEP, State Project Manager and State Contract Manager.  All data reported must be complete, timely and accurate.  A follow-up report shall be submitted when the estimated lost time days differs from the actual lost time days.

## 3.4 LICENSES AND PERMITS

The Contractor shall obtain and maintain in full force and effect all required licenses, permits, and authorizations necessary to perform this Contract.

The Contractor must be duly licensed to perform all work in accordance with the statutory requirements of New Jersey.  The Contractor shall be responsible for determining what permits are necessary to perform the contract.  The Contractor shall obtain all permits necessary to complete the work and shall furnish these to the State on or before the data of the Contractor Kick-Off Meeting.

The necessary permits shall include an A-901 license pursuant to the requirements of N.J.S.A. 13:1E-128, 133, and 135. All marine vessel operators shall possess the requisite licenses and permits for their specific vessel. All costs associated with any such licenses, permits and authorizations are the responsibility of the Contractor. The Contractor's use of only A-901 licensed subcontractors is not sufficient to fulfill the Contractor's obligation to hold an A-901 license. A valid New Jersey Business Registration must be furnished to the State prior to contract award. The Contractor shall

apply for an A-901 within 48 hours of contract award. All other permits and licenses must be provided to the State Contract Manager before work can commence.

The Contractor shall also obtain any and all permits and approvals required by the New Jersey Air Pollution Control Act and the regulations promulgated thereunder, N.J.A.C. 7:27-1 et seq., for the operation of stationary equipment (e.g., cranes, grinders, chippers, shredders). Any stationary equipment operated in the performance of this work shall be located at a site to minimize air quality impacts on the surrounding community (e.g., diesel emissions, odor).

## 3.5 REPORTING AND DOCUMENTATION

The Contractor shall report daily to the State Project Manager, and any other entity designated by the State or the State Project Manager, on worker safety, including descriptions of any worker injuries, fatalities, and accidents, and the Contractor's response to such incidents.

The Contractor shall maintain all records related to transactions or services under this Contract for a period of five years from the date of final payment. Such records shall be made available to the New Jersey Office of the Comptroller for review and audit upon request pursuant to N.J.A.C. 17:44-2.2.

The Contractor shall provide and submit to the State Project Manager all reports and documents as may be necessary to adequately document the debris emergency response, management, and recovery services in accordance with FEMA and other Federal and State requirements.

The Contractor shall retain all records, documents, and communications of any kind (including electronic in disk or print form) that relate in any manner to the award and performance of this Contract.

The Contractor shall be responsible for providing protecting storage of daily or disaster-related documents and reports during the disaster event and shall be available to the State upon request.

## 3.6 REMOVAL OF WATERWAY DEBRIS

### 3.6.1 GENERAL REQUIREMENTS

The work shall consist of identifying and removing Eligible Debris from waterways as directed by the State. Every attempt should be made to sort debris by type prior to Offloading. The State will prescribe the specific schedule to be used for waterway debris removal.

The Contractor shall provide all equipment, operators, and laborers for the waterway debris removal operation, as well as personnel to supervise the operation. The Contractor shall provide all labor and materials necessary to fully operate and maintain (including fuel, oil, grease, and repairs) all equipment under this contract. All rates are to be fully costed, inclusive of the cost of protective clothing (to include hardhats and steel-toed boots), fringe benefits, hand tools, supervision, transportation, traffic control and any other costs. The Contractor shall determine the make-up of the removal crew, equipment and labor, for the work identified in this task order. The makeup of the removal crew will be dependent upon site conditions, safety, and the environmental sensitivity of the site. The Contractor shall provide all labor and materials necessary to fully plan, manage, operate and maintain all equipment required for this task order.

The Eligible Debris within the State waterways largely consists of sand, C&D materials, white goods, vessels, vehicles, and vegetative debris.  The areas from which this debris is to be removed are identified on the maps in the associated Resource Library at http://www.nj.gov/dep/special/hurricane-sandy/wwdebris.htm

The Contractor shall remove all Eligible Debris from waterways as directed by the State, inclusive of sand that has been redistributed as a result of the storm. The Contractor shall make every effort to separate and segregate the debris prior to offloading to land. The debris, once loaded, shall remain the property of the State, unless otherwise negotiated by the Contractor. Any revenue generated from the sale, recycling or disposal of Eligible Debris shall accrue to the State.

The Contractor shall remove storm-damaged vessels or vehicles, floating or submerged, that are identified as Eligible Debris. Upon removal, the Contractor shall deliver the vessels and vehicles to an aggregation site as specified by the State.

The State will make every effort to identify and provide access to Offloading Sites on public property where the debris removed from waterways can be safely removed and loaded into haul trucks for transport to a final disposal site. In the event that the State is unable to secure such access on public property, the Contractor shall pursue leasing options with owners of private property to obtain use as an Offloading Site. Any lease entered into by the Contractor must contain a "hold harmless" clause in favor of the State and federal government. The Contractor will operate the Offloading Sites and only Contractor vehicles and others specifically authorized by the State will be allowed to use the sites. Designated drop-off sites may also be established. The Contractor will be responsible for removing all debris from those sites daily.

### 3.6.1.1 ZONE WORK PLAN

Prior to commencing work, The Contractor shall submit a detailed debris removal and management "Zone Work Plan" for each Zone in which the contractor is tasked to perform work.  Contractor shall submit a "Zone Work Plan" that includes a defined Concept of Operations and Work Strategy, Work Flow, Organizational/Management Structure, Zone Safety Plan, Off Load Points, Dock Facilities and any other project specific items as required by the State Contract Manager or the State Project Manager. Each Zone Work Plan will be submitted to the State Contract Manager or the State Project Manager for approval prior to any debris removal or assessment work being performed. The Zone Work Plan should include a process that includes a detailed description of the projected division of work zones into smaller more manageable work zones and or sub-zones.

### 3.6.2 BRIDGE TO BRIDGE COMMUNICATIONS

Because this work will occur within a channel with heavy traffic, and in order that radio communication may be made with passing vessels, all tugs or salvage vessels that work under this contract shall be equipped with bridge-to-bridge radio telephone equipment. The radio equipment shall operate on a single channel of very high frequency (VHF) FM, on a frequency suitable for the working environment and having a communication range of approximately ten miles. The frequency has been approved by the Federal Communications Commission. Channels providing navigation communications must be monitored at all times.

### 3.6.3 HAZARDOUS MATERIAL RESPONSE PLAN

In the event that waterway debris removal operations result in the release of oil and/or hazardous substances into the waterway, Contractor shall immediately contact the State Project Manager, NJDEP and implement the Contractor's approved response plan. See Attachment D for further guidance.

### 3.6.4 QUALITY ASSURANCE AND MONITORING

The Zone Operations Manager will provide daily grid projections to the State Project Manager showing where work crews will be located. Each Quality Assurance (QA) monitor will be assigned grids and/or points. The assigned QA monitor will verify and document productivity and safety compliance. A Daily Quality Assurance Report will be completed to document work performed by the Contractor.

Other personnel from State and federal agencies may observe contractor crews at work and provide their input, through NJDEP, on quality, efficiency, effectiveness and completeness of the work in progress.

The NJDEP will perform random inspections of grids and points documented as complete by the contractor.

### 3.6.5 DEBRIS CLASSIFICATION

Once the Contractor has removed debris from a waterway, it will be sorted by type either prior to or at the time of offload to land. The types of debris as defined in N.J.A.C. 7:26-2.13 are shown in parentheses next to each debris category:

- Vegetative Waste (Type 23)
- Construction and Demolition ("C&D") Waste (Type 13C/Type 27A)
- White Goods/Household Appliances (Type 13)
- Scrap Metal
- E-waste

### 3.6.5.1 VEGETATIVE WASTE

The Contractor is responsible for the disposal of vegetative debris that has been removed from the waterway. Only vegetative debris that poses a threat to public safety shall be removed.

Vegetative debris that has been submerged and is not suitable for recycling may be disposed. Final recycling or disposal of vegetative debris will depend on market needs and opportunities for alternative use (e.g., biomass).

### 3.6.5.2 CONSTRUCTION AND DEMOLITION ("C&D") DEBRIS

Construction and Demolition ("C&D") debris collected from the waterway shall consist of debris resulting from structural damage to buildings, damage to roads and bridges, and will include items such as aggregate (asphalt, brick, concrete), wood (both clean and treated), roofing and siding materials, wallboard, metals, carpeting and flooring, insulation, glass, tile, window coverings, plastic pipe, heating and ventilating materials/components, air conditioning systems and their components, light fixtures, furnishings and fixtures.

Separate specifications are set forth below for scrap metal, aggregate waste (asphalt, brick, concrete) and white goods that can be separated from C&D debris.

Known or suspected asbestos containing material ("ACM") should be segregated from other debris and Contractor shall manage such material in compliance all applicable Federal, State and local laws.

### 3.6.5.3 AGGREGATE

Aggregate consists of asphalt, brick, and concrete.

The Contractor shall load, transport, and dump broken brick, block, concrete, and asphalt to a disposal facility authorized to accept such material or to an NJDEP approved Class B recycling facility, or if outside of New Jersey, to a facility authorized by the jurisdiction.

Concrete or other aggregate that has been contaminated by an oil or chemical spill as a result of the disaster event shall be prepared for disposal with other contaminated construction and demolition materials.

### 3.6.5.4 WHITE GOODS/HOUSEHOLD APPLIANCES

White Goods/Household Appliances are a category of scrap metal and include appliances such as stoves, refrigerators, freezers, dishwashers, washers, dryers, microwaves, air conditioners, other similar types of appliances. Many white goods contain ozone-depleting refrigerants, mercury, or compressor oils.

The Contractor shall comply with applicable Federal, State and local laws concerning refrigerants, mercury, or compressor oils. Documentation of proper disposal must be provided to the State Project Manager.

White goods removed from waterways may be staged at a temporary staging area approved by the State or transported directly to final recycling/disposal facility. The Contractor shall remove and recover Freon from any white goods at the Offloading Site or final recycling/disposal facility in accordance with all Federal, State, and local environmental and safety regulations and laws. Contractor shall load and transport from an Offloading Site for final recycling and/or disposal all white goods only after removal of Freon has occurred. Only a Contractor certified in accordance with 40 CFR Part 82, Sections 150 through 166 shall remove chlorofluorocarbon liquid (CFC). White goods shall be brought to a scrap metal recycling facility. The Contractor shall make a distinguishing mark on each white good indicating that the Freon has been removed and recovered. The Contractor shall maintain all licenses and records to perform and document said work.

### 3.6.5.5 SCRAP METAL

Scrap Metal refers to ferrous metals such as structural steel and steel framing members and non-ferrous metals such as wiring/conduit, plumbing (pipes and fixtures) and HVAC materials (ductwork, motors). White goods are considered as scrap metal, but are described separately herein. . The Contractor shall segregate scrap metal prior to or at the time of offload and may store it in a temporary staging area approved by the State or bring it directly to a scrap metal processor located in the state. Scrap metal containing motors shall be drained of all liquids

17

prior to transport to a disposal facility and managed appropriately. Revenues generated from recycling of scrap metal shall accrue to the State.

### 3.6.6 SAND

The Contractor shall remove sand from Superstorm Sandy that would constitute Eligible Debris. The State will issue task orders to the Contractor for sand removal, requiring that the depth of a navigable waterway be restored to a depth of the maximum draft of the largest vessel to traverse the waterway plus 2 feet. The State may require the Contractor to redistribute such sand

Sand that has been determined through analytical testing to be uncontaminated and is otherwise suitable for placement on beaches shall be restored (e.g., screened) by the Contractor to pre-storm beach quality. The Contractor may be directed by the State to transport the sand to a designated beach. The Contractor shall offload the sand onto the beach. Further action by the Contractor will be limited to rudimentary placement on the beach, either through spreading or placement in berms. Contractor shall be responsible for disposition of materials screened or otherwise removed from sand, and the State may designate locations for disposition of such material.

Sand that has been contaminated with silt and other deposits will be disposed of at an alternate disposal site as directed by the State.

Sand exhibiting visible or known traces of petroleum or chemical spills shall be placed in weather-tight containers, such as a covered and lined roll-off or inter-modal container. If these containers must be stored temporarily, they should be placed on an impervious surface, such as a concrete or asphalt parking lot. This material may be transported to a staging area until final disposal or reuse has been determined. If necessary, analytical testing shall be performed to determine if the material can be reused or must be disposed.

If sand in waterways has been impacted by a spill or other activity that results in the release of a pollutant into the underlying sediments, the Contractor shall sample the sand to characterize it for appropriate disposition as follows:

Depending on the volume of material to be dredged, one (1) core location shall be collected per each 1,000 cubic yards of material to be removed. The depth of the sample shall be to the proposed removal depth. For analytical purposes, a maximum of three (3) core locations may then be composited for analysis of the material for contaminant concentrations.

Each composite or individual core location (if total volume removed is less than 2,000 cubic yards) shall be analyzed for the following target analytes:

- Semi-volatile organics (Method 8270C)
- Metals (Method 6010B), Mercury (Method 7471)
- Pesticides (Method 8081A)

The Contractor must meet the sampling and data quality assurance/quality control guidance and reporting requirements as required by Appendix B of the Department's Dredging Technical Manual. See http://slic.njstatelib.org/slic_files/digidocs/r588/r5881997.html

Any sand or other sediment that has accumulated in barges or other vessels used to transport debris may be removed from the scow and placed in a temporary stockpile area on land. Said stockpile areas should be designed with all the necessary soil and sediment control features (hay

bales, silt fencing, etc,) to control the release of any free water from the dredged material. The following sampling plan should be utilized for the characterization of the material for management at an appropriate disposal facility.

Depending on the volume of material stockpiled, one (1) sample shall be collected per each 1,000 cubic yards of material on-site. Each sample shall be taken to the depth of the pile. For analytical purposes, a maximum of three (3) samples may then be composited for analysis of the material for contaminant concentrations.

Each composite or individual core location (if total volume removed is less than 2,000 cubic yards) shall be analyzed for the following target analytes:

- Semi-volatile organics (Method 8270C)
- Metals (Method 6010B), Mercury (Method7471)
- Pesticides (Method 8081A)

The designated contractor must meet the sampling and data quality assurance/quality control guidance and reporting requirements as required by Appendix B of the Department's Dredging Technical Manual. See http://slic.njstatelib.org/slic_files/digidocs/r588/r5881997.html

### 3.6.7 HUMAN REMAINS

If suspected human remains (defined as dead bodies, tissue and/or teeth and bones) are found during the debris removal process, the Contractor shall immediately stop all operations in the area where the remains were found and shall notify the ZOM. The ZOM shall notify the local police department and State Project Manager of the situation and shall coordinate any required actions by the Contractor in response to police department direction. The police, with support of the medical examiner, if necessary, will properly document the situation and collect the remains and other items deemed appropriate. Operations may resume once the police notifies the ZOM that the site has been cleared.

### 3.6.8 MATERIALS IMPACTED BY RELEASE OF HAZARDOUS SUBSTANCES

Such materials shall be managed pursuant to the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 et seq. (as amended) and the regulations promulgated thereunder, as well as applicable NJDEP guidance for addressing such materials.

The methods of handling and transporting these wastes from the site are the responsibility of the Contractor.

Except as otherwise required by applicable law, materials impacted by a release of hazardous waste or hazardous substances, once identified by private owners or State and local officials, must be segregated from other disaster-generated waste, stored separately, and ultimately transported to an appropriate permitted facility for treatment or disposition.

If hazardous or unknown materials such as lead, PCBs, solvents, pesticides, pool chemicals, industrial grade cleaning solutions, etc. are discovered during cleanup, the materials should be staged separately and with secondary containment to collect leaks and prevent further mixing with other hazardous waste or incompatible chemicals. To the extent possible, the Contractor will assist with segregating the material from the rest of the cleanup.

### 3.6.9 ELECTRONIC WASTE ("E-WASTE")

Electronic Waste (E-Waste) includes items such as stereos, televisions, VCRs, DVD players and computers and peripheral accessories, telephones, and other devices. The Contractor shall collect E-Waste and transport it to either a TDMA for segregation or directly to an E-Waste recycling facility.

### 3.6.10 VEHICLE REMOVAL

Vehicle Removal includes cars, trucks, motorcycles, and recreational vehicles.

The minimal holding periods established by N.J.S.A. 39:10A-1(b), N.J.S.A. 39:10A-1(c), and N.J.S.A. 12:7C-10 through -13 are subject to change upon notice by the Chief Administrator of the MVC to the Contractor.

The Contractor will coordinate with the N.J. Motor Vehicle Commission ("NJMVC") and/or NJDEP, in removing vehicles and shall comply with all State and local governmental regulations or protocols in removing vehicles from the waterway.

The Contractor shall issue work orders within 48 hours, containing all pertinent data supplied by the State, to the subcontracted licensed towing entities.

The licensed towing entities arriving on the scene will be responsible for evaluating environmental and safety issues. Should the towing entity find any major threats to health, safety or the environment, the vehicle shall not be moved from the Offloading Site, and the NJDEP and State Project Manager shall immediately be notified. Once all concerns are addressed, the vehicle shall be lifted, properly secured and transported to the assigned aggregation site using the safest and most direct route.

### 3.6.10.1 VEHICLE STORAGE AND REPORTING

Recovered vehicles shall be inspected by the Contractor within 24 hours of arrival at the aggregation site. The vehicles will be stored in a manner to allow access for inspection by the State and insurance company representatives and to allow for retrieval and reclamation by the vehicle owner when applicable.

The Contractor shall provide access to owners, lienholders, and their authorized agents or legal representatives, during, at a minimum, the hours of 8:00 a.m. to 5:00 p.m., at least five days a week, excluding holidays, for the purpose of identifying and/or inspecting vehicles in which they have a legal interest. The State, or authorized agents thereof, shall have immediate access to any storage facility or aggregation site at any time, upon notice to the Contractor.

The Contractor shall be responsible for complying with all provisions of New Jersey law pertaining to the disposition of vehicles deemed abandoned on public property (N.J.S.A. 39:10A-1, et seq.), as set forth in Attachment G (incorporated herein by reference). No vehicle shall be sold, junked or otherwise disposed of except as provided in this subsection.

In addition to the information required by N.J.S.A 39:10A-1 et seq., and N.J.S.A. 56:13-7, et seq., and the forms in Attachment H, the Contractor shall maintain, and provide to the NJMVC, without limitation:

- the date and time the vehicle was towed;
- the location from which the vehicle was towed;
- documentary proof of the results of the National Crime Information Center check for every vehicle in its possession;
- complete documentation of any sale or disposition of each vehicle, including documentation of all efforts to determine the identity and address of the owner and lienholder (if any), as well as copies of all notices sent to the owner and any lienholder; and
- if the vehicle was claimed by the owner, lienholder, or authorized agent, the date, time, and name of the person the vehicle was released to, as well as a complete listing of all charges and fees assessed.

The Contractor must collect all applicable fees, including the cost of recovery, transport and storage prior to releasing the vehicle to the owner, lienholder, or authorized agent and net the amounts from the bill to the State.

Vehicles that have been abandoned shall be managed in compliance with applicable law and guidance of the NJMVC.

## 3.6.11 VESSEL REMOVAL

Vessels recovered under this Contract shall be managed in compliance with the Abandoned or Sunken Vessels Disposition Law, N.J.S.A. 12:7C-7 et seq., and applicable regulations. Pricing for this section shall be provided in Exhibit A-1, Price Schedule Supplement for Vessel Removal Pricing. This supplemental schedule provides for different levels of pricing based on vessel length (in linear feet) as well as the travel distance.

The minimal holding periods established by N.J.S.A. 39:10A-1(b), N.J.S.A. 39:10A-1(c), and N.J.S.A. 12:7C-10 through -13 are subject to change upon notice by the Chief Administrator of the MVC to the Contractor.

## 3.6.11.1 VESSEL STORAGE AND REPORTING

The Contractor shall provide access to owners, lienholders, and their authorized agents or legal representatives, during, at a minimum, the hours of 8:00 a.m. to 5:00 p.m., at least five days a week, excluding holidays, for the purpose of identifying and/or inspecting vessels in which they have a legal interest.  The State and any authorized agents thereof, shall have immediate access to any storage facility or aggregation site at any time, upon notice to the Contractor.

The Contractor shall be responsible for complying with all provisions of New Jersey law pertaining to the disposition of vessels deemed abandoned under the Abandoned or Sunken Vessels Disposition Law (N.J.S.A. 12:7C-7, et seq.), as set forth in Attachment I (incorporated herein by reference).  No vessel shall be disposed of except as provided in this subsection.

In addition to the information required by N.J.S.A. 12:7C-7, et seq., and the forms in Attachment J, the Contractor shall maintain, and provide to the NJMVC:

- complete documentation of any sale or disposition of each vessel, including documentation of all efforts to determine the identity and address of the owner and lienholder (if any), as well as copies of all notices sent to the owner and any lienholder; and

21

- if the vessel was claimed by the owner, lienholder, or authorized agent, the date, time, and name of the person the vessel was released to, as well as a complete listing of all charges and fees assessed.

The Contractor must collect all applicable fees, including the cost of recovery, transport and storage prior to releasing the vessel to the owner, lienholder, or authorized agent and net the amounts from the bill to the State.

Contractor shall have recovery equipment and tow vehicles prepared to mobilize upon the first notification to recover vessels from waterways as directed by the State.

Recovery of vessels will begin with the Contractor identifying the vessel using GPS coordinates. Contractor shall inspect the vessel and make a record of the vessel location, description, registration number, and the type and extent of damage. Prior to offloading, Contractor shall mitigate any fluid leaks. Outboard motors shall be tilted to the utmost position. Batteries shall be disconnected; leaks shall be mitigated. Vessels will then be transported to the aggregation site safely and securely by Contractors' towing vehicles, trailers, and equipment. Vessels will be processed at the aggregation sites.

## 3.6.12 EQUIPMENT REQUIREMENTS

The Contractor is responsible for providing vessels, including experienced personnel, standard equipment and accessories, fuel required to provide verification to the State of waterway debris removal, using the most cost-effective technology.

All boats, barges, vessels, trucks, trailers, and equipment utilized to perform the work under this Contract must be in compliance with all applicable federal, state, and local rules and regulations.

Each truck and container (roll off containers, dumpsters) utilized to transport or collect solid waste must have a valid A-901 decal pursuant to N.J.A.C. 7:26-2.2(k) or other evidence of temporary authorization from NJDEP.

The Contractor shall submit to the State and/or State Project Manager and any debris monitor certifications indicating the type of vehicle or vessel, make and model, license plate number, equipment number, and measured maximum volume, in cubic yards, of the load bed of each piece of equipment utilized to transport debris. The measured volume of each piece of equipment shall be calculated from actual internal physical measurement performed and certified by the Contractor and approved by the State. Maximum volumes may be rounded to the nearest cubic yard. The reported measured maximum volume of any load bed shall be the same as shown on the signs fixed to each piece of equipment. The State and/or State Project Manager and any debris monitor shall have the right to re-measure trucks at any time to verify reported capacity.

Any equipment used to transport debris must be capable of rapidly dumping its load and be equipped with a tailgate that will effectively contain the debris during transport, permits the trucks to be filled to capacity, and facilitates dumping debris without becoming caught in the bed. Frameless, dump trailers are not acceptable. Sideboards or other extensions to the bed are allowed and, if installed, must be constructed of 2" x 6" boards or greater and may not extend more than 2 feet above the metal bedsides and must remain in place throughout the operation. All extensions to the bed, and any exceptions to the above requirements, must comply with law and are subject to acceptance or rejection by the State. It is the Contractor's responsibility to

report any adjustments of the sideboards to the State and the debris monitor and truck signage shall report revised cubic yard capacity. Truck loading shall comply with NJDOT rules and regulations including weight limitations and the covering of truckloads.

### 3.6.13 HAND-LOADED VEHICLES

For any hand loaded vehicles, debris monitors at the loading site will mark the load ticket to indicate hand-loaded vehicles. Debris monitors located at temporary or final debris disposal sites will reduce the observed capacity of each hand-loaded truck or trailer load by 50% because of the low compaction achieved by hand loading. For example, if a 40 cubic yard (CY) hand-loaded truck or trailer arrives at the debris management or disposal site and it appears to be 100% full, the actual quantity of debris in the truck or trailer will be recorded as 20 CY. In the same manner, if the truck or trailer appears half full, the load will be recorded as 10 CY. The maximum amount recorded for a hand-loaded vehicle will be 50% of its measured capacity.

### 3.6.14 SECURING DEBRIS

The Contractor shall be responsible for properly and adequately securing debris on each piece of equipment utilized in moving debris, including (without limitation) barges, boats, trucks, and roll-off containers. Prior to leaving the loading site, the Contractor shall ensure that each load is secure and trimmed so that no debris extends horizontally beyond the bed of the equipment in any direction. All loose debris shall be reasonably compacted during loading and secured during transport. Tarps shall be provided by the Contractor and utilized by all trucks to prevent materials from being blown from the bed during transportation on land. The overall maximum height of hauling equipment, including sideboards and debris, must comply with State and local law. The Contractor is not relieved of the responsibility for verifying clearance for all overhead bridges, overpasses, structures and wires.

### 3.6.15 EQUIPMENT SIGNAGE

Prior to commencing operations, the Contractor shall affix to each piece of equipment, signs or markings indicating the name of the owner/operator of the equipment and a unique equipment identification number. One sign shall be placed on each side of the equipment. For those trucks, trailers and other equipment intended to haul debris, the maximum volume, in cubic yards, of the load bed shall also be shown. Signs shall be maintained in an easily readable fashion for the duration of the work. Minimum letter size shall be 3 inches in height.

### 3.6.16 DEBRIS LOAD TICKETS

Debris load tickets shall be employed and completed in such a manner to allow accurate accounting of volumes, weights, origin and destination of debris. Payment for debris hauled will be based on the quantity of debris hauled in truck measured cubic yards and the distance hauled depending on where the debris is taken. Drivers will be given load tickets at the Offloading Site by an appointed Offloading Site monitor. The quantity of debris hauled will be estimated in cubic yards at the Offloading Site by an appointed monitor. The estimated quantity will be recorded on the load ticket. The appointed monitor will retain one copy of the load ticket and the driver will retain two copies of the load ticket. Debris being hauled to a final disposal or recycling facility will be paid based on cubic yards and the distance hauled recorded on an approved load ticket. (Attachment K, Sample Debris Load Ticket). Payment will be made against the Contractor's invoice once site monitor and Contractor load tickets and/or scale tickets

23

match. A minimally required load ticket is found at N.J.A.C. 7:26-3.5. The load ticket is the primary record for the monitoring and measuring of debris removal operations.

Any alternative debris load ticket proposed for use by the Contractor must be approved by the NJDEP and must comply with the requirements set forth in N.J.A.C. 7:26-2.13. In addition to the types of information commonly required on load tickets, the Contractor is advised that any attention substitute load tickets contain the following special provisions required for reimbursement processing:

- Load tickets delivered by the Contractor must be sequentially numbered with no duplication of numbers.
- Specific description of loading site location including street name and section.
- Identification of hand-loaded versus mechanically loaded vehicles.
- Identification of actual haul distance from Offloading Site to disposal/recycling facility, on route approved by the State.
- All entries will be printed legibly and all blank spaces will be filled in.

For purposes of this Contract the appointed monitors are the final authority on determining volume. For reference on deductions from a 100% full load that can be expected, see the diagrams provided in Attachment L.

## 3.6.17 PRIVATE PROPERTY ACCESS

The Contractor shall not seek or accept requests from private property owners to perform debris clearing or removal activities. It is anticipated that the Contractor will require access to private property, or permission to cross private property to fulfill the intent of this Contract. For such situations, the Contractor will obtain all necessary Right of Entry agreements and shall work with the State to comply with applicable FEMA requirements for Private Property Debris Removal

## 3.6.18 MISPLACED MATERIAL

Should the Contractor, during the progress of the work, lose, dump, throw overboard, sink, or misplace any material, plant, machinery, or debris, the Contractor shall recover and remove the same with utmost dispatch. The Contractor shall give immediate notice, with description and location of such obstructions, to the State or State Project Manager, and when required shall mark or buoy such obstructions until the same are removed. Should the Contractor refuse, neglect or delay compliance with the above requirements, such obstructions may be removed by the State and the cost of such removal will be deducted from any money due or to become due the Contractor, or will be recovered under his bond.

## 3.6.19 ASSESSMENT AND VERIFICATION OF DEBRIS REMOVAL

The Contractor is responsible for performing a pre-removal assessment, using the most cost-effective technology, to document waterway debris prior to commencing debris removal. The Contractor must present a plan to the State Contract Manager, or the State Project Manager, for approval indicating the areas in which it seeks to perform a pre-removal assessment. The plan must include specific areas to be scanned and supporting reasons for a scan of that area including, but not limited to, an explanation of tidal forces moving debris to particular areas.

The Contractor is responsible for providing verification of waterway debris removal, using the most cost-effective technology. This verification must be provided to the State Project Manager at the conclusion of work in a Zone and should include, but not be limited to, the following information:

- Pre-removal water depth;
- GIS coordinates of debris fields;
- Type(s) of debris found;
- Volume of debris found;
- Method of removing debris;
- Date of debris removal;
- Disposition of debris; and
- Post-removal water depth.

This information shall be supplemented with SONAR, LIDAR or other imaging and/or topographic maps of the waterway floor.

### 3.6.19.1 SIDE SCAN SONAR SERVICES

The Contractor shall provide vessels, including experienced personnel, fuel and other associated costs, and mobilization and preparation fees required for the performance of the contract. In addition, Contractor shall furnish any additional standard equipment and accessories normally supplied in the industry, as required by the State, in order to meet the requirements of these specifications.

### 3.6.19.1.1 SIDE SCAN SONAR TECHNICAL SPECIFICATIONS

The Contractor must provide side scan sonar results of 250 kHz or greater resolution, or of resolution adequate to identify a 50 cm diameter target. Reports must identify significant buildup of debris resulting from Superstorm Sandy in State-owned waters, including location via GPS coordinates, estimated size and type of debris, and water depth. The range may not exceed 100 meters or 328 feet.

Side scan sonar data will be corrected for slant range and layback. Contacts or targets will be located and reported in an electronic format. An image and coordinates of each contact with approximate dimensions will be produced in a simple report. A mosaic for each square mile will be produced to show the general location of the contacts or clear sea floor. The contact location method will be verified on known targets in the area, such as pilings or platforms with known locations.

All reports shall be delivered in Portable Document Format (PDF) and on a data device supplied by the Contractor.

### 3.7 OFFLOADING SITES, AGGREGATION SITES AND TDMAs

### 3.7.1 OFFLOADING SITE GENERAL REQUIREMENTS

The Contractor shall use only Offloading Sites designated and/or approved by the State. NJDEP permit(s) may be required for Offloading Sites (e.g., permits for siting, operation monitoring, closure, and post-closure care requirements). The Contractor shall comply with the terms and conditions of any such permits. Where closure is not completed properly or environment releases occur, post-closure care may be mandated.

The Contractor shall make every effort to Offload debris directly into roll-off containers, that will then be transported to a final disposal/recycling facility. Contractor shall minimize to the greatest extent possible use of temporary staging areas or temporary debris management areas. Prior to utilizing any temporary staging areas rather than direct-hauling to a disposal or recycling facility, Contractor must provide the State with evidence and analysis establishing the need for staging and processing of material at a temporary staging area rather than direct-hauling from the Offloading Site to a final disposal or recycling facility.

The Contractor shall supervise and direct the work, using skilled labor and proper equipment for all tasks. Safety of the Contractor's personnel and equipment is the responsibility of the Contractor. Additionally, the Contractor shall pay for all materials, personnel, taxes, and fees necessary to perform under the terms of this contract. The Contractor shall be responsible for control of pedestrian and vehicular traffic in the work area. In the event that an observation tower is needed to oversee the operations of an Offloading Site, the Contractor shall utilize a hydraulic scissor lift or prefabricated tower.

The Offloading Site foreman, provided by the Contractor, is responsible for management of all operations of the site to include, traffic control, off-loading operations, segregation of debris, and safety. The Offloading Site foreman will coordinate directly with the site monitor. The Offloading Site foreman will be responsible for documenting equipment and labor time, quantities of debris received, processed materials hauled away, and providing the daily operational report to the ZOM, for further delivery to the State Project Manager

The Contractor shall also provide an Offloading Site night foreman to manage any night operations approved by the State.

Once the State identifies the Offloading Site, the Contractor will provide a Site Management Plan to the State, which plan shall be satisfactory to the State and which shall address the following functions:

- Access to site
- Site preparation – clearing, stripping, hauling, fill placement, constructing/deconstructing processing pads, lime rock or crushed concrete access roads, sod replacement, and any other similar activity necessary to make the site usable for its intended purposes.
- Traffic control procedures
- Safety
- Segregation of debris
- Location of hazardous material containment area and Contractor work area
- Location of grinding operations (if required).
- Location of existing structures or sensitive areas requiring protection.
- Site close-out (activities to return the site to its original condition)

A copy of the approved Site Management Plan shall be kept readily available at the Offloading Site for review by all inspection personnel.

The Contractor shall use only offloading designated or approved by the State. NJDEP approval(s) are required for all Offloading Sites.

The Offloading Site will be periodically inspected for compliance with FEMA and OSHA safety criteria.

Contractor shall construct a household hazardous material containment area at each Offloading Site. The perimeter shall be lined with hay bales and staked in place. The area shall be lined with a heavy gauge plastic to provide a non-permeable barrier. A six-inch layer of sand will be added as an absorbent and to protect plastic from puncture or tear. Additional plastic sufficient to cover the ground area is required to prevent storm water from entering the containment area. The containment area shall have a non-permeable cover at all times and the Contractor must ensure that run off is managed in compliance with applicable law.

Site run-off must be redirected from the containment area by site grading.

Within 5 days of completion of all waterway debris removal work performed in a Zone, the Contractor shall remove all equipment and temporary structures and shall dispose of all residual debris from the Offloading Site at an approved final disposition site. The Contractor is responsible for the reclamation and remediation of the Offloading Site to its original state prior to use. Within 15 days of receipt of Notice to Proceed, Contractor shall submit to NJDEP for approval a plan detailing the procedures it proposes for closing temporary debris management areas, Vehicle Aggregation Areas and Vessel Aggregation Areas.

## 3.7.2 VEHICLE AND VESSEL AGGREGATION SITES

The Contractor shall establish Vehicle and Vessel Aggregation Sites which will include mobilization, build-out of site, operations at site, and demobilization. The State reserves the right to identify regional aggregation sites to be utilized by Contractor in accordance with procedures and requirements applicable to all vehicle aggregation sites.

Contractor will work with the State to secure sites where vehicles and vessels can be stored until demobilization. Sites should be level, clean, dry and have a firm surface and be accessible by recovery and remediation vehicles and equipment. Each site should be evaluated and prepared with regard to issues of ingress and egress, highway access, neighborhood concerns and soil conditions.

During mobilization, Contractor will supply and transport all necessary supplies, equipment, materials, and personnel to the aggregation sites, and make improvements to the site required for storage and remediation operations. If necessary, Contractor will obtain clearance from underground or overhead utilities and from property owners and State and local entities for the aggregation locations.

## 3.7.2.1 OPERATION OF VEHICLE AND VESSEL AGGREGATION SITES

Vehicles recovered under this Contract shall be managed in compliance with applicable law, procedures and guidance of the New Jersey Motor Vehicles Commission. http://www.state.nj.us/mvc/About/Forms.htm

Vehicle and vessel aggregation sites shall be secured with fencing and lighting as needed to secure according to applicable state regulations. Contractor must be prepared to operate the sites to receive vehicles and vessels up to twenty-four hours a day and up to seven days a week as required by the State. Vehicles and vessels will be stored in a manner to permit inspection by State authorities as required, or for reclamation by owners and/or their agents. Contractor shall also be prepared to provide his/her own 24-hour security if necessary.

### 3.7.2.2 RECEIPT OF VEHICLES AND VESSELS

Each site will be equipped with a hydraulic scissor lift or prefabricated observation tower manned by both an independent monitor and one of the Contractor's representatives in order to record the receipt of each vehicle and maintain accurate records. The Contractor is responsible for creating and maintaining a computerized tracking system. As the vehicle is accepted at the tower, it shall be checked into the aggregation site using the vehicle or vessel Year, Make, Model, License Plate State and Number, Vehicle Identification Number, extent and type of damage, and its location on the lot by row number, column letter and GPS location, and any other information that may be required by the New Jersey Motor Vehicles Commission. Contractor shall also record any identifying information or number(s) contained in markings or stickers affixed to the vehicle by authorities for purposes of the recovery operation. If the vehicles have been tagged with a bar code, the tag will be scanned and printed. A computerized tracking of the vehicle shall then be prepared and the condition of the vehicle and the processes that it goes through are then tracked. This ticket shall then become part of the pay documents for the recovery, preparation, and disposal. If necessary or required, Contractor shall mark the windshield of the vehicle with an identifying number for ease of future identification. Such numbers and tags then become unique and continuous identifiers to monitor the vehicle through each step. Contractor shall work with the NJMVC to facilitate identification of vehicle owners.

### 3.7.2.3 STORAGE OF VEHICLES AND VESSELS

The Contractor shall store vehicles in a manner that provides for ample access for inspection by State and/or municipal authorities and insurance company representatives and/or to allow for retrieval and reclamation by vehicle or vessel owner when applicable.

### 3.7.2.4 DEMOBILIZATION OF VEHICLE AND VESSEL AGGREGATION SITES

Once all vessels are removed, Contractor will remove all equipment, supplies, and nonhazardous trash from the aggregation site. Contractor should dispose of all trash and debris in a permitted disposal facility of landfill and repair and remediate any damage to the aggregation site caused by the storage and remediation operations and equipment as directed by the State. Within 15 days of receipt of Notice to Proceed, Contractor shall submit to NJDEP for approval a plan detailing the procedures it proposes for closing TDMAs, Vehicle Aggregation Areas and Vessel Aggregation Areas.

### 3.7.3 OPERATION OF TEMPORARY DEBRIS MANAGEMENT AREAS

The Contractor shall use only temporary debris management areas ("TDMA") designated and approved by the State. N.J. Department of Environmental Protection permit(s) are required for all TDMAs. DEP Emergency Permits include siting, construction, operation monitoring, closure, and post-closure care requirements. DEP Emergency Permit requirements must be met to ensure proper site operations and compliance may be a condition for reimbursement by FEMA. Where sites are not properly operated the emergency permit may be revoked. Where closure is not completed properly or environment releases occur, post-closure care may be mandated. The Contractor shall not assume that TDMA and landfills, located outside of the Zone, are available to the Contractor unless so specified in the Task Order.

Prior to utilizing or establishing TDMA(s) rather than direct-hauling to a disposal or recycling facility, Contractor must provide NJDEP and the State Contract Manager and/or Project Manager with evidence and analysis establishing the need for staging and processing of

material at a TDMA rather than direct-hauling from the Offloading Sites to a final disposal or recycling facility. (NJDEP Debris Removal Planning Sheet, Attachment M). Such analysis shall include, without limitation, costs to the State, timeliness of debris removal, environmental impacts, and other factors relevant to the issue. The State has the right to direct the Contractor to direct-haul instead of utilizing TDMAs.

The TDMA foreman is appointed by the Contractor and shall direct all operations at the TDMA and will coordinate removal of debris, and reduction byproducts to State approved landfills for subsequent disposal, or to recycling processors selected by the Contractor and approved by the State. Access to a TDMA is under the control of the State.

To the extent that any current contractor has contractual obligations to close-out TDMAs, the current contractor retains those obligations unless assigned to other persons or entities.

The Contractor shall supervise and direct the work, using skilled labor and proper equipment for all tasks. Safety of the Contractor's personnel and equipment is the responsibility of the Contractor. Additionally, the Contractor shall pay for all materials, personnel, taxes, and fees necessary to perform under the terms of this contract. Contractors should only utilize hydraulic scissor lifts or prefabricated observation towers if necessary.

The Contractor shall be responsible for control of pedestrian and vehicular traffic in the work area.

The TDMA foreman, provided by the Contractor, is responsible for management of all operations of the site to include, traffic control, off-loading operations, segregation of debris, and safety. The TDMA foreman will coordinate directly with the State's site monitor.

The TDMA foreman will be responsible for documenting equipment and labor time, quantities of debris received, processed materials hauled away, and providing the daily operational report to the ZOM, for further delivery to the State or State Project Manager.

The Contractor shall also provide a TDMA night foreman to manage any night operations approved by the State.

Once the State identifies the TDMA, the Contractor will provide a Site Management Plan to the NJDEP, which plan shall address following functions:

- Access to site
- Site preparation – clearing, stripping, hauling, fill placement, constructing/deconstructing processing pads, lime rock or crushed concrete access roads, sod replacement, and any other similar activity necessary to make the site usable for its intended purposes.
- Traffic control procedures
- Safety
- Segregation of debris
- Location of hazardous material containment area, Contractor work area, and inspection tower
- Location of grinding operations (if required).
- Location of existing structures or sensitive areas requiring protection.
- Site close-out (activities to return the site to its original condition)

A copy of the approved Site Management Plan shall be kept readily available at the TDMA for review by all inspection personnel.

Additional guidance on the procedures for TDMA setup, operation and closeout are provided in Attachment F. This exhibit includes subsections regarding:

- TDMA Setup, Operation and Closeout Guidelines
- Grinding Operations

TDMA operations and material processing shall be compensated in accordance with the unit prices provided in the Price Proposal Form. The Contractor shall provide equipment, operators, and laborers for TDMA operations as specified by Task Order. Unit prices provided shall include all labor and materials necessary to fully operate and maintain (including fuel, oil, grease, repairs, operator, mobilization, demobilization, overhead, profit, and insurance) all equipment under this contract.

All rates shall include the cost of protective clothing (to include hardhats and steel-toed boots), fringe benefits, hand tools, supervision, transportation, and any other costs.

The Contractor shall utilize a hydraulic scissor lift or prefabricate tower if requested by the State in order for the monitor to easily look down into the truck bed to fully view the debris load, establishing a volume. Lifts or towers shall be high enough to enable the monitor to fully view truck loads and shall be of a width and length to accommodate the work to be performed in the tower.

The TDMA will be periodically inspected for compliance with FEMA and OSHA safety criteria.

The work shall consist of managing the operations of a TDMA and performing debris reduction by grinding of vegetative debris and compaction of nonvegetative debris as directed by the State or State Project Manager, and/or recycling of marketable material by the Contractor as approved by the State.

Contractor shall construct a household hazardous material containment area at each TDMA. The perimeter shall be lined with hay bales and staked in place. The area shall be lined with a heavy gauge plastic to provide a non-permeable barrier. A six-inch layer of sand will be added as an absorbent and to protect plastic from puncture or tear. Additional plastic sufficient to cover the ground area is required to prevent storm water from entering the containment area. The containment area shall have a non-permeable cover at all times and the Contractor must ensure that run off is managed in compliance with applicable law.

Site run-off must be redirected from the containment area by site grading.

Within 10 days of completion of all debris management work for the State, the Contractor shall remove all equipment and temporary structures and shall dispose of all residual debris from the TDMA at an approved final disposition site. The Contractor is responsible for the reclamation and remediation of the TDMA to its original state prior to use. Within 15 days of receipt of Task Order, Contractor shall submit to NJDEP for approval a plan detailing the procedures it proposes for closing TDMAs, Vehicle Aggregation Areas and Vessel Aggregation Areas.

### 3.7.4 RECYCLING PROGRAMS

The Contractor shall recycle materials in construction and demolition (C&D) debris through material salvage, and recycling of clean, woody debris by mulching, composting or other recycling or beneficial use consistent with applicable law.

### 3.7.5 DISPOSAL PRICING

The State will be responsible for all tipping fees at authorized disposal facilities. Contractors owning landfills will not be able to dispose of debris in these facilities without the approval of the State and demonstration that disposal at these Contractor-owned facilities represents the State's most cost-effective site for debris disposal.

Debris will be pricing by the cubic yard only.

### 4.0 REQUIRED COMPONENTS OF THE RFQ PROPOSAL

Proposals in response to this RFQ must respond to each of the following requests <u>in the order indicated</u>.

### 4.1 TECHNICAL PROPOSAL

The bidder shall describe its approach and plans for accomplishing the work outlined above in 3.0 RFQ Scope of Services.  The bidder must set forth its understanding of the requirements of this RFQ and its ability to successfully complete the contract.

### 4.2 MANAGEMENT OVERVIEW

The bidder shall set forth its overall technical approach and plans to meet the requirements of the RFQ in a narrative format.  This narrative should demonstrate to the State that the bidder understands the objectives that the contract is intended to meet, the nature of the required work and the level of effort necessary to successfully complete the Contract.  This narrative should demonstrate to the State that the bidder's general approach and plans to undertake and complete the contract are appropriate to the tasks and subtasks involved.

Mere reiterations of RFQ tasks and subtasks are strongly discouraged, as they do not provide insight into the bidder's ability to complete the contract. The bidder's response to this section should be designed to demonstrate to the State that the bidder's detailed plans and proposed approach to complete the Scope of Services are realistic, attainable and appropriate and that the bidder's bid proposal will lead to successful contract completion.

### 4.3 CONTRACT MANAGEMENT

The bidder shall describe its specific plans to manage, control and supervise the contract to ensure satisfactory contract completion according to the required schedule.  The plan shall include the bidder's approach to communication with the State Project Manager including, but not limited to, status meetings, status reports, etc. The bidder shall also provide an overview of its plan to response to hazardous material and/or oil spills, or other emergency contingency operations.

### 4.4 CONTRACT SCHEDULE

The bidder shall include a contract schedule.  If key dates are a part of this RFQ, the bidder's schedule shall incorporate such key dates and shall identify the completion date for each task and sub-task required by the Scope of Services.  Such schedule shall also identify the associated deliverable item(s) to be submitted as evidence of completion of each task and/or subtask.

The bidder shall identify the contract scheduling and control methodology to be used and should provide the rationale for choosing such methodology.  The use of Gantt, PERT or other charts is at the option of the bidder.

The bidder should be mindful of the time-critical nature of the work associated with this contract and the Governor's mandate to have the New Jersey shore largely restored by the summer of 2013. Therefore, the State is requiring that the debris removal and dredging projects be 75% completed no later than June 1, 2013.

## 4.5 POTENTIAL PROBLEMS

The bidder shall set forth a summary of any and all problems that the bidder anticipates during the term of the contract, including those problems related to the completion of work by the summer of 2013.  For each problem identified, the bidder should provide its proposed solution.

## 4.6 ORGANIZATIONAL SUPPORT AND EXPERIENCE

The bidder shall include information relating to its organization, personnel, and experience, including, but not limited to, references, together with contact names and telephone numbers, evidencing the bidder's qualifications, and its ability to perform the services required by this RFQ.

The bidder should include a contract organization chart, with names showing management, supervisory and other key personnel (including subcontractor's management, supervisory or other key personnel) to be assigned to the contract.  The chart should include the labor category and title of each such individual.

## 4.7 RESUMES

Detailed resumes should be submitted for all management, supervisory and key personnel to be assigned to the contract.  Resumes should be structured to emphasize relevant qualifications and experience of these individuals in successfully completing contracts of a similar size and scope as this one.  Resumes should include the following:

- Clearly identify the individual's previous experience in completing similar contracts.
- Beginning and ending dates should be given for each similar contract.
- A description of the contract should be given and should demonstrate how the individual's work on the completed contract relates to the individual's ability to contribute to successfully providing the services required by this RFQ.
- With respect to each similar contract, the bidder should include the name and address of each reference together with a person to contact for a reference check and a telephone number.

## 4.8 EXPERIENCE OF BIDDER ON CONTRACTS OF SIMILAR SIZE AND SCOPE

The bidder shall provide a comprehensive listing of contracts of similar size and scope that it has successfully completed, as evidence of the bidder's ability to successfully complete the services required by this RFQ.  Emphasis should be placed on contracts that are similar in size and scope to the work required by this RFQ, including experience with other wet debris removal projects and projects subject to FEMA reimbursement. A description of all such contracts should be included and should show how such contracts relate to the ability of the firm to complete the

services required by this RFQ.  For each such contract, the bidder should provide two names and telephone numbers of individuals for the other contract party. Beginning and ending dates should also be given for each contract.

## 4.9 CAPABILITY OF BIDDER

The bidder shall include a description of resources of the firm (i.e., background, location, experience, staff resources, financial resources, other resources, etc.). The bidder shall include a list of equipment available for the removal of waterway debris. The bidder should also indicate whether this equipment is owned or leased.

## 4.10 LOCATION

The bidder should include the location of the bidder's office that will be responsible for managing the contract.  The bidder should include the name, telephone number, email address, and fax number of the individual to contact.

## 4.11 STATUTORY REQUIREMENTS

All documents listed in Section 1.2, *Proposal Submission*, must be completed and submitted with the bid proposal. A copy of a valid New Jersey Business Registration must be submitted prior to contract award.  If not already registered with the New Jersey Division of Revenue, registration can be completed on line at the Division of Revenue website: http://www.state.nj.us/treasury/revenue/index.html

In addition to maintaining compliance with FEMA statutes, regulations and guidance to ensure that work performed under this contract will be reimbursable to the State, the Contractor must perform work associated with this contract in compliance with the following State and federal statutes, regulations and guidance: Comprehensive Environmental Response and Compensation Liability Act of 1980 (CERCLA) P.L. 96-510, 42 U.S.C. §§9601 et seq.;  Oil Pollution Act of 1990 (OPA) P.L. 101-380, 33 U.S.C. §2701 et seq.;  Clean Water Act of 1972 (CWA) P.L. 92-500 33 U.S.C §§1251 et seq.;  Endangered Species Act of 1973 (ESA) P.L. 93-205, 7 U.S.C. §136; 16 U.S.C. §1531 et seq.;   New Jersey Spill Compensation and Control Act N.J.S.A. 58:10.11 et seq.;  New Jersey Water Pollution Control Act N.J.S.A. 58:11A-1 et seq.;  the US Coast Guard's Area Contingency Plans for Sector Delaware Bay and/or Sector New York Harbor; USDOI NRDA Regulations (CERCLA) "Type A" NRDA Regulations, 43 C.F.R. 11; USDOI NRDA Regulations (CERCLA) "Type B" NRDA Regulations, 43 C.F.R. 11;  National Contingency Plan (NCP) 40 CFR 300; NJDEP Technical Requirements for Site Remediation N.J.A.C. 7:26-E and associated guidance documents; NJDEP Field Sampling Procedures Manual 2005; and NJDEP Ecological Evaluation Technical Guidance Document 2012.

## 5.0 CONTRACT TERM

The term of the contract shall be for a period of **one (1) year**.

## 6.0 COST PROPOSAL

The price schedule is attached (Attachment A) to this RFQ.  Failure to submit all requested pricing information may result in the bidder's proposal being considered materially non-responsive. Bidders shall submit pricing for each price line for all zones.  Bidders should submit the price schedule under separate cover.

The bidder shall provide an all inclusive firm fixed price for each line item. This shall include all work described in RFQ Scope of Services. Bidders shall base their pricing on the Zone descriptions located in Subsection 1.1, *Background* and shall provide pricing by the cubic yard for each Zone.

The State anticipates that the contract will be divided into three regions, North, Central and South, with the North Region encompassing Zones 1-2, the Central Region encompassing Zones 3-7 and the South Region encompassing Zones 8-11. The Contractor shall not start work on any task until requested to do so by the State Contract Manager.

## 7.0 FORM OF COMPENSATION AND PAYMENT

Payments to the Contractor will be disbursed following approval by the State Project Manager or State Contract Manager in accordance with Section 6.0 above.

## 8.0 SELECTION PROCESS

All proposals will be reviewed to determine responsiveness. Non-responsive proposals will be rejected without evaluation. Responsive proposals will be evaluated by an Evaluation Committee. The following evaluation criteria categories, separate or combined in some manner, and not necessarily listed in order of significance, will be used to evaluate proposals received in response to this RFQ.

- The bidder's documented experience in successfully completing contracts of a similar size and scope to the work required by this RFQ.

- The qualifications and experience of the bidder's management, supervisory or key personnel assigned to the contract, including the candidates recommended for each of the positions/roles required. Evaluation will be on submitted resumes and how well they meet the required skill and education levels as well as on documented experience in successfully completing work on contracts of similar size and scope to the work required by this RFQ. The bidder should highlight contracts for FEMA-eligible and reimbursable work and outline results of Office of Inspector General audits related to those contracts, if applicable.

- The overall ability of the bidder to undertake and successfully complete the contract in a cost efficient yet timely manner. This judgment will include, but not be limited to, the following factors: the number and qualifications of management, supervisory and other staff proposed by the bidder to complete the contract, the availability and commitment to the contract of the bidder's management, supervisory and other staff proposed, the availability and amount of resources and equipment able to be immediately mobilized, and the bidder's contract management plan, including the bidder's contract organizational chart and compliance and contingency plans.

- The firm's cost proposal. Bidders shall submit pricing for each price line for all zones. Failure to submit all requested pricing information may result in the bidder's proposal being considered materially non-responsive.

- For evaluation purposes, bidders' price sheets will be evaluated and ranked based on an analysis of competitive range and cost reasonableness based on the price lines of all

35

responsive and responsible bidders.   In addition, these proposals will be evaluated using a weighted model based on data obtained from NJDEP.

## 8.1 NEGOTIATION AND BEST AND FINAL OFFER (BAFO)

After evaluating bid proposals, the evaluation committee may enter into negotiations with each bidder in the competitive range, unless there are too many highly rated proposals to evaluate efficiently.   In this situation, the State may limit the competitive range to the number of proposals that will permit efficient competition among the most highly rated proposals.   The primary purpose of negotiations is to maximize the State's ability to get the best value, based on the requirements and evaluation criteria set forth in the RFQ.   Negotiations may involve the identification of significant proposal weaknesses, ambiguities and other deficiencies that could limit a bidder's award potential, including price.  More rounds of negotiations may be held with one bidder in the competitive range than with another.   Negotiations will be structured to safeguard information and ensure that all bidders in the competitive range are treated fairly.

When the evaluation committee determines to conclude negotiations, all bidders in the competitive range will be so notified and advised of the time and place for submission of best and final offers.  The best and final offer can modify any aspect of the bid proposal, provided mandatory RFQ requirements continue to be satisfied and further provided that the revised price proposal is not higher than the original price proposal.  Any revised price proposal that is not equal to or lower in price than the original price proposal will be rejected as non-responsive.

Evaluation of the best and final offers will be on the basis of price and the evaluation criteria set forth in the RFQ.  If, after review of the best and final offers, clarification is required, it may be sought from the bidders.   If further negotiation is desired after evaluation of the revised proposals, it will be followed by another BAFO opportunity.   The State reserves the right to reassess the competitive range before proceeding with a subsequent round of negotiations and BAFO submissions and to remove from the competitive range any proposal that is no longer considered to be a leading contender for award.

After evaluation of the final BAFO submissions, the evaluation committee will recommend to the Director for award the responsible bidder whose bid proposal, conforming to the RFQ, is most advantageous to the State, price and other factors considered. The Director may accept, reject or modify the recommendation of the Evaluation Committee. The Director may negotiate further reductions in price with the selected bidder.

**Negotiations will only be conducted in those circumstances where they are deemed by the State to be in the State's best interests and to maximize the State's ability to get the best value.  Therefore, bidders are advised to submit their best technical and price proposals in response to this RFQ, because the State may, after evaluation, make a contract award based on the content of these initial submissions, without further negotiation with any bidder.**

All contacts, records of initial evaluations, any correspondence with bidders related to any request for clarification, negotiation or BAFO, any revised technical and/or price proposals, the Evaluation Committee Report and the Award Recommendation, will remain confidential until a Notice of Intent to Award a contract is issued.

## 8.2 STATE CONTRACT MANAGER

The State Contract Manager is the State employee responsible for the overall management and administration of the Contract.

The State Contract Manager for this project will be identified at the time of execution of contract. At that time, the Contractor will be provided with the State Contract Manager's name, department, division, agency, address, telephone number, fax phone number, and e-mail address.

## 8.3 STATE PROJECT MANAGER

The State Project Manager is responsible for the oversight of the work performed pursuant to this Contract.

The State Project Manager will serve as the liaison between the Contractor and the State Contract Manager and is responsible for coordinating the use of the Contract and resolving minor disputes between the Contractor and any component part of the State Contract Manager's Department. The State Project Manager shall be the central coordinator of the use of the Contract.

The State Project Manager for this project will be identified at the time of execution of contract. At that time, the Contractor will be provided with the State Project Manager's name, address, telephone number, fax phone number, and e-mail address.

## 8.4 BID, PERFORMANCE AND PAYMENT BOND

All bidders must submit a bid guarantee equivalent to $3,000,000. This bid guarantee shall consist of a properly executed individual bid bond issued by an insurance or security company authorized to do business in the State of New Jersey, a certified or cashier's check drawn to the order of the Treasurer, State of New Jersey, or an irrevocable letter of credit drawn naming the Treasurer, State of New Jersey as beneficiary issued by a federally insured financial institution as assurance that the bidder will, upon acceptance of his bid, execute such contractual documents as may be required within the time specified.

The State will hold all bid bonds during the evaluation process. As soon as is practicable after the completion of the evaluation, the State will:

    (a) Issue an award notice for those offers accepted by the State;

    (b) Return all bond securities to those who have not been issued an award notice.

All bid security from contractors who have been issued an award notice shall be held until the successful execution of all required contractual documents and bonds (performance bond, insurance, etc). If the contractor fails to execute the required contractual documents and bonds within thirty (30) calendar days after receipt of award notice, the contractor may be found in default and the contract terminated by the State. In case of default, the State reserves all rights inclusive of, but not limited to, the right to purchase material and/or to complete the required work in accordance with the New Jersey Administrative Code and to recover any actual excess costs from the contractor. Collection against the bid security shall be one of the measures available toward the recovery of any excess costs.

The successful Contractor(s) shall furnish a performance bond to secure fulfillment of all the Contractor's obligations under this Contract, including those obligations under Task Orders issued by the State. The performance bond shall be in the form of a properly executed individual performance bond issued by an insurance or security company authorized to do business in the State of New Jersey, a certified or cashier's check to the order of the Treasurer, State of New Jersey, or an irrevocable letter of credit drawn naming the Treasurer, State of New Jersey as beneficiary issued by a federally insured financial institution.

The performance bond amounts are as follows:
- North Region (Zones 1-2): $100,000,000
- Central Region (Zones 3-7): $100,000,000
- South Region (Zones 8-11): $100,000,000

The successful Contractor(s) shall furnish a payment bond to assure payment as required by law of all persons supplying labor and materials in the execution of the work provided for in the Contract, including work performed under Task Orders issued by the State.

The payment bond amounts are as follows:
- North Region (Zones 1-2): $100,000,000
- Central Region (Zones 3-7): $100,000,000
- South Region (Zones 8-11): $100,000,000

The Performance and Payment Bonds must be submitted to the State at the Contractor Kick-Off Meeting.

## 8.4 PROFESSIONAL LIABILITY INSURANCE

The contractor shall carry Errors and Omissions, Professional Liability Insurance and/or Professional Liability Malpractice Insurance sufficient to protect the contractor from any liability arising out the professional obligations performed pursuant to the requirements of the contract. The insurance shall be in the amount of not less than $5,000,000 and in such policy forms as shall be approved by the State. If the Contractor has claims-made coverage and subsequently changes carriers during the term of the contract, it shall obtain from its new Errors and Omissions, Professional Liability Insurance and/or Professional Malpractice Insurance carrier an endorsement for retroactive coverage.

## 8.5 PROGRAM EFFICIENCY ASSESSMENT

The State Using Agencies shall be charged an assessment equal to one-quarter of one percent (0.25%) of the value of all transactions under this contract. This assessment is authorized by N.J.S.A. 52:27B-56 and N.J.A.C. 17:12-1.5, to maintain the State's procurement system at a level to meet industry standards of efficiency.

# Index to Attachments

| | |
|---|---|
| Attachment A | Price Proposal Form |
| Attachment B | Waterway Debris Management Zones |
| Attachment C | Certification of Non-Debarment |
| Attachment D | Oil and Hazardous Substance Release Response and Natural Resource Injury Assessment |
| Attachment E | Sample Task Order |
| Attachment F | TDMA Operation Guidelines |
| Attachment G | Abandoned Motor Vehicles Guide |
| Attachment H | Motor Vehicle Forms |
| Attachment I | Abandoned Vessels Disposition Law Guide |
| Attachment J | Abandoned Vessels Forms |
| Attachment K | Debris Load Ticket |
| Attachment L | Load Capacity Estimator |
| Attachment M | NJDEP Debris Removal Planning Sheet |

# Attachment A:

## Price Proposal Form

# FINAL ATTACHMENT A - PRICE PROPOSAL FORM - DATED JANUARY 16, 2013

| Line # | Description | Units | Quantity Tier | Measure of Distance | NORTH REGION | | | CENTRAL REGION | | | | | | SOUTH REGION | | | | | STATE TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | ZONE 1 (A) | ZONE 2 (B) | REGION TOTAL (A)+(B) | ZONE 3 (C) | ZONE 4 (D) | ZONE 5 (E) | ZONE 6 (F) | ZONE 7 (G) | REGION TOTAL SUM (C) THRU (G) | ZONE 8 (H) | ZONE 9 (I) | ZONE 10 (J) | ZONE 11 (K) | REGION TOTAL SUM (H) THRU (K) | SUM (A) THRU (K) |
| 1 | Vegetative Waste - vegetative debris removal from waterway and transport for a prescribed distance from offload to TDMA | CY per mileage intervals | 1 - 10,000 CY | 0-15 miles | | | | | | | | | | | | | | | |
| 2 | | | | 16-30 miles | | | | | | | | | | | | | | | |
| 3 | | | | 31-60 miles | | | | | | | | | | | | | | | |
| 4 | | | | 60+ miles | | | | | | | | | | | | | | | |
| 5 | Vegetative Waste - vegetative debris removal from waterway and transport for a prescribed distance from offload to TDMA | CY per mileage intervals | 10,001 - 25,000 CY | 0-15 miles | | | | | | | | | | | | | | | |
| 6 | | | | 16-30 miles | | | | | | | | | | | | | | | |
| 7 | | | | 31-60 miles | | | | | | | | | | | | | | | |
| 8 | | | | 60+ miles | | | | | | | | | | | | | | | |
| 9 | Vegetative Waste - vegetative debris removal from waterway and transport for a prescribed distance from offload to TDMA | CY per mileage intervals | Above 25,000 CY | 0-15 miles | | | | | | | | | | | | | | | |
| 10 | | | | 16-30 miles | | | | | | | | | | | | | | | |
| 11 | | | | 31-60 miles | | | | | | | | | | | | | | | |
| 12 | | | | 60+ miles | | | | | | | | | | | | | | | |
| 13 | Vegetative Waste - vegetative debris removal from waterway and transport for a prescribed distance from offload to final disposal site | CY per mileage intervals | 1 - 10,000 CY | 0-15 miles | | | | | | | | | | | | | | | |
| 14 | | | | 16-30 miles | | | | | | | | | | | | | | | |
| 15 | | | | 31-60 miles | | | | | | | | | | | | | | | |
| 16 | | | | 60+ miles | | | | | | | | | | | | | | | |
| 17 | Vegetative Waste - vegetative debris removal from waterway and transport for a prescribed distance from offload to final disposal site | CY per mileage intervals | 10,001 - 25,000 CY | 0-15 miles | | | | | | | | | | | | | | | |
| 18 | | | | 16-30 miles | | | | | | | | | | | | | | | |
| 19 | | | | 31-60 miles | | | | | | | | | | | | | | | |
| 20 | | | | 60+ miles | | | | | | | | | | | | | | | |
| 21 | Vegetative Waste - vegetative debris removal from waterway and transport for a prescribed distance from offload to final disposal site | CY per mileage intervals | Above 25,000 CY | 0-15 miles | | | | | | | | | | | | | | | |
| 22 | | | | 16-30 miles | | | | | | | | | | | | | | | |
| 23 | | | | 31-60 miles | | | | | | | | | | | | | | | |
| 24 | | | | 60+ miles | | | | | | | | | | | | | | | |
| 25 | C&D - C&D debris removal from waterway and transport for a prescribed distance from offload to TDMA | CY per mileage intervals | 1 - 10,000 CY | 0-15 miles | | | | | | | | | | | | | | | |
| 26 | | | | 16-30 miles | | | | | | | | | | | | | | | |
| 27 | | | | 31-60 miles | | | | | | | | | | | | | | | |
| 28 | | | | 60+ miles | | | | | | | | | | | | | | | |
| 29 | C&D - C&D debris removal from waterway and transport for a prescribed distance from offload to TDMA | CY per mileage intervals | 10,001 - 25,000 CY | 0-15 miles | | | | | | | | | | | | | | | |
| 30 | | | | 16-30 miles | | | | | | | | | | | | | | | |
| 31 | | | | 31-60 miles | | | | | | | | | | | | | | | |
| 32 | | | | 60+ miles | | | | | | | | | | | | | | | |
| 33 | C&D - C&D debris removal from waterway and transport for a prescribed distance from offload to TDMA | CY per mileage intervals | Above 25,000 CY | 0-15 miles | | | | | | | | | | | | | | | |
| 34 | | | | 16-30 miles | | | | | | | | | | | | | | | |
| 35 | | | | 31-60 miles | | | | | | | | | | | | | | | |
| 36 | | | | 60+ miles | | | | | | | | | | | | | | | |
| 37 | C&D - C&D debris removal from waterway and transport for a prescribed distance from offload to final disposal site | CY per mileage intervals | 1 - 10,000 CY | 0-15 miles | | | | | | | | | | | | | | | |
| 38 | | | | 16-30 miles | | | | | | | | | | | | | | | |
| 39 | | | | 31-60 miles | | | | | | | | | | | | | | | |
| 40 | | | | 60+ miles | | | | | | | | | | | | | | | |
| 41 | C&D - C&D debris removal from waterway and transport for a prescribed distance from offload to final disposal site | CY per mileage intervals | 10,001 - 25,000 CY | 0-15 miles | | | | | | | | | | | | | | | |
| 42 | | | | 16-30 miles | | | | | | | | | | | | | | | |
| 43 | | | | 31-60 miles | | | | | | | | | | | | | | | |
| 44 | | | | 60+ miles | | | | | | | | | | | | | | | |
| 45 | C&D - C&D debris removal from waterway and transport for a prescribed distance from offload to final disposal site | CY per mileage intervals | Above 25,000 CY | 0-15 miles | | | | | | | | | | | | | | | |
| 46 | | | | 16-30 miles | | | | | | | | | | | | | | | |
| 47 | | | | 31-60 miles | | | | | | | | | | | | | | | |
| 48 | | | | 60+ miles | | | | | | | | | | | | | | | |
| 49 | Transport of Reduced Vegetative and C&D Debris from TDMA to final disposal site | CY per mileage intervals | 1 - 10,000 CY | 0-15 miles | | | | | | | | | | | | | | | |
| 50 | | | | 16-30 miles | | | | | | | | | | | | | | | |
| 51 | | | | 31-60 miles | | | | | | | | | | | | | | | |
| 52 | | | | 60+ miles | | | | | | | | | | | | | | | |
| 53 | Transport of Reduced Vegetative and C&D Debris from TDMA to final disposal site | CY per mileage intervals | 10,001 - 25,000 CY | 0-15 miles | | | | | | | | | | | | | | | |
| 54 | | | | 16-30 miles | | | | | | | | | | | | | | | |
| 55 | | | | 31-60 miles | | | | | | | | | | | | | | | |
| 56 | | | | 60+ miles | | | | | | | | | | | | | | | |
| 57 | Transport of Reduced Vegetative and C&D Debris from TDMA to final disposal site | CY per mileage intervals | Above 25,000 CY | 0-15 miles | | | | | | | | | | | | | | | |
| 58 | | | | 16-30 miles | | | | | | | | | | | | | | | |
| 59 | | | | 31-60 miles | | | | | | | | | | | | | | | |
| 60 | | | | 60+ miles | | | | | | | | | | | | | | | |
| 61 | White Goods Removal to final disposal site | Unit | 1 - 100 Units | N/A | | | | | | | | | | | | | | | |
| 62 | White Goods Removal to final disposal site | Unit | Above 100 Units | N/A | | | | | | | | | | | | | | | |

## FINAL ATTACHMENT A - PRICE PROPOSAL FORM - DATED JANUARY 16, 2013

| Line # | Description | Units | Quantity Tier | Measure of Distance |
|---|---|---|---|---|
| 63 | Electronic Waste - removal of "e-waste" that contains hazardous materials. Includes computer monitors and televisions | Unit | 1 - 100 Units | N/A |
| 64 | Electronic Waste - removal of "e-waste" that contains hazardous materials. Includes computer monitors and televisions | Unit | Above 100 Units | N/A |
| 65 | Freon Management - freon management and recycling | Unit | 1 - 100 Units | N/A |
| 66 | Freon Management - freon management and recycling | Unit | Above 100 Units | N/A |
| 67 | Sand Collection - removal of displaced sand from waterway | CY | 1 - 50,000 CY | N/A |
| 68 | Sand Collection - removal of displaced sand from waterway | CY | 50,001 - 100,000 CY | N/A |
| 69 | Sand Collection - removal of displaced sand from waterway | CY | Above 100,000 CY | N/A |
| 70 | Uncontaminated Sand Transport - screening of sand to restore to "beach quality", transport and rudimentary placement on beach, and proper disposal of screening byproducts | CY per mileage intervals | 1 - 50,000 CY | 0-15 miles |
| 71 | | | | 16-30 miles |
| 72 | | | | 31-60 miles |
| 73 | | | | 60+ miles |
| 74 | Uncontaminated Sand Transport - screening of sand to restore to "beach quality", transport and rudimentary placement on beach, and proper disposal of screening byproducts | CY per mileage intervals | 50,001 - 100,00 CY | 0-15 miles |
| 75 | | | | 16-30 miles |
| 76 | | | | 31-60 miles |
| 77 | | | | 60+ miles |
| 78 | Uncontaminated Sand Transport - screening of sand to restore to "beach quality", transport and rudimentary placement on beach, and proper disposal of screening byproducts | CY per mileage intervals | Above 100,000 CY | 0-15 miles |
| 79 | | | | 16-30 miles |
| 80 | | | | 31-60 miles |
| 81 | | | | 60+ miles |
| 82 | Contaminated Sand Transport and Disposal - removal of contaminated sand and disposal at site to be determined by State | CY per mileage intervals | 1 - 50,000 CY | 0-15 miles |
| 83 | | | | 16-30 miles |
| 84 | | | | 31-60 miles |
| 85 | | | | 60+ miles |
| 86 | Contaminated Sand Transport and Disposal - removal of contaminated sand and disposal at site to be determined by State | CY per mileage intervals | 50,001 - 100,00 CY | 0-15 miles |
| 87 | | | | 16-30 miles |
| 88 | | | | 31-60 miles |
| 89 | | | | 60+ miles |
| 90 | Contaminated Sand Transport and Disposal - removal of contaminated sand and disposal at site to be determined by State | CY per mileage intervals | Above 100,000 CY | 0-15 miles |
| 91 | | | | 16-30 miles |
| 92 | | | | 31-60 miles |
| 93 | | | | 60+ miles |
| 94 | Vehicle Removal - removal of vehicles from waterway and transport to aggregation site | Unit | 1 - 10 Units | N/A |
| 95 | Vehicle Removal - removal of vehicles from waterway and transport to aggregation site | Unit | 11 - 25 Units | N/A |
| 96 | Vehicle Removal - removal of vehicles from waterway and transport to aggregation site | Unit | Above 25 Units | N/A |
| 97 | Vessel Removal - removal of vessel from waterway and transport to aggregation site | Per Linear Foot | 1 - 50 Vessels | 0-19 feet |
| 98 | | | | 20-29 feet |
| 99 | | | | 30-39 feet |
| 100 | | | | over 40 feet |
| 101 | Vessel Removal - removal of vessel from waterway and transport to aggregation site | Per Linear Foot | 51 - 100 Vessels | 0-19 feet |
| 102 | | | | 20-29 feet |
| 103 | | | | 30-39 feet |
| 104 | | | | over 40 feet |
| 105 | Vessel Removal - removal of vessel from waterway and transport to aggregation site | Per Linear Foot | Above 100 Vessels | 0-19 feet |
| 106 | | | | 20-29 feet |
| 107 | | | | 30-39 feet |
| 108 | | | | over 40 feet |
| 109 | Pre-removal Assessment of Debris - use of cost-effective technology, including site scan sonar to provide identification and assessment of debris locations | Price per acre | | 0-100 acres |
| 110 | | | | 101-300 acres |
| 111 | | | | 301-600 acres |
| 112 | | | | 601-1000 acres |
| 113 | | | | 1001 + acres |

Additional columns (all blank on this page): ZONE 1 (A), ZONE 2 (B), ZONE 3 (C), REGION TOTAL (A)+(B), ZONE 4 (D), ZONE 5 (E), ZONE 6 (F), ZONE 7 (G), REGION TOTAL SUM (C) THRU (G), ZONE 8 (H), ZONE 9 (I), ZONE 10 (J), ZONE 11 (K), REGION TOTAL SUM (H) THRU (K), STATE TOTAL SUM (A) THRU (K)

## FINAL ATTACHMENT A - PRICE PROPOSAL FORM - DATED JANUARY 16, 2013

| Line # | Description | Units | Quantity Tier | Measure of Distance | ZONE 1 (A) | ZONE 2 (B) | REGION TOTAL (A)+(B) | ZONE 3 (C) | ZONE 4 (D) | ZONE 5 (E) | ZONE 6 (F) | ZONE 7 (G) | REGION TOTAL SUM (C) THRU (G) | ZONE 8 (H) | ZONE 9 (I) | ZONE 10 (J) | ZONE 11 (K) | REGION TOTAL SUM (H) THRU (K) | STATE TOTAL SUM (A) THRU (K) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 114 | Verification of Debris Removal - use of cost-effective technology, including side scan sonar to provide verification to State that debris has been removed and waterway depth has been restored | Price per acre | | 0-100 acres | | | - | | | | | | - | | | | | - | - |
| 115 | | | | 101-300 acres | | | - | | | | | | - | | | | | - | - |
| 116 | | | | 301-600 acres | | | - | | | | | | - | | | | | - | - |
| 117 | | | | 601-1000 acres | | | - | | | | | | - | | | | | - | - |
| 118 | | | | 1001 + acres | | | - | | | | | | - | | | | | - | - |
| 119 | Operation of Vehicle/Vessel Aggregation Site - operation of vehicle and vessel aggregation site, includes all phases of operation, including tower equipment, security, staffing and restoration of site to pre-use condition | Per Day | | Daily | | | - | | | | | | - | | | | | - | - |
| 120 | Operation of Temporary Debris Management Area- operation of TDMA, includes all phases of operation, including tower equipment, security and staffing and restoration of site to pre-use condition | Per Day | | Daily | | | - | | | | | | - | | | | | - | - |

Total State Price is the single price that Bidder would offer, per price line, for all 11 zones in the State.

## Attachment B:

### Zone Map



# Attachment C:

## Certification of Non-Debarment

## CERTIFICATION OF NON-DEBARMENT

Disaster Debris Removal Services

STATE OF NEW JERSEY    }
                        }ss.
COUNTY OF _____}

**The Bidder (or Subcontractor) hereby certifies to the best of its knowledge and belief and under penalty of perjury under the laws of the United States and the State of New Jersey:**

I am _____of the firm of _____,__ (the "Contractor"), which has been awarded the referenced contract (the "Contract") and that I execute said Contract with full authority to do so;

  A.  That neither the Bidder (or Subcontractor) nor its principals:

      1)   are currently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from bidding or contracting by any agency of government including but not limited to federal, state, regional, county or local government agency, in this or any other state including any department, division, commission, authority, office, branch, section and political subdivision or other governmental or quasi-governmental entity;

      2)   have, within a three-year period preceding this bid, been convicted or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain or performing a public federal, state or local contract; violation of federal or state antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property;

      3)   are currently indicted for or otherwise criminally or civilly charged by a governmental entity (federal, state or local) with commission of any of the offenses enumerated in paragraph (B) of this certification; and

      4)   have, within a three-year period preceding this bid, had one or more public contracts (federal, state or local) terminated for cause or default.

  B.  If awarded a contract, the Contractor certifies that it shall immediately notify the State Contract Manager if any director, partner, officer, employee of the Contractor or any shareholder owning 5% or more of the Contractor's stock:

      1)   Is the subject of investigation involving any violation of criminal law or other federal, state, or local law or regulation by any governmental agency; or

      2)   Is arrested, indicted or named as an unindited co-conspirator in any indictment or other accusatory instrument; or

3)  Is convicted of any crime under state or federal law, or of any disorderly persons offense or misdemeanor involving a business related offense.

Sworn and subscribed to before me
This __day of _____, 20__.

_____
Signature of Principal

Notary Public of _____

My commission expires: _____, 20__.

_____
Print or Type Name

_____
Signature of Notary Public

_____
Title

# Attachment D:

## Oil and Hazardous Substance Release Response and Natural Resource Injury Assessment

### Oil and Hazardous Substance Release Response and Natural Resource Injury Assessment

The proposal shall provide NJDEP a plan for:

1) Avoiding or minimizing physical injury to natural resources while removing debris;
2) Avoiding or minimizing releases of hazardous substances or oil while removing debris;
3) Characterizing and responding to the release of hazardous substances or oil during debris removal, if it occurs;
4) Remediating the release of a hazardous substance or oil, if it occurs;
5) Characterizing injuries to natural resources and public use of those resources in the event of a hazardous substance or oil release;
6) Identifying potential projects/measures to restore or compensate the public for demonstrated natural resource injuries;
7) Rehabilitate oiled or injured wildlife.

The Contractor shall demonstrate how work will conform with the following:  the US Coast Guard's Area Contingency Plans for Sector Delaware Bay and/or Sector New York Harbor; USDOI NRDA Regulations (CERCLA) "Type A" NRDA Regulations, 43 C.F.R. 11;  USDOI NRDA Regulations (CERCLA) "Type B" NRDA Regulations, 43 C.F.R. 11;  National Contingency Plan (NCP) 40 CFR 300; NJDEP Technical Requirements for Site Remediation N.J.A.C. 7:26-E and associated guidance documents;  NJDEP Field Sampling Procedures Manual 2005;  NJDEP Ecological Evaluation Technical Guidance Document 2012.

The Contractor must perform work in accordance with the following statutes:

Comprehensive Environmental Response and Compensation Liability Act of 1980 (CERCLA) P.L. 96-510, 42 U.S.C. §§9601 et seq.;  Oil Pollution Act of 1990 (OPA) P.L. 101-380, 33 U.S.C. §2701 et seq.;  Clean Water Act of 1972 (CWA) P.L. 92-500 33 U.S.C §§1251 et seq.; Endangered Species Act of 1973 (ESA) P.L. 93-205, 7 U.S.C. §136; 16 U.S.C. §1531 et seq.; New Jersey Spill Compensation and Control Act N.J.S.A. 58:10.11 et seq.;  New Jersey Water Pollution Control Act N.J.S.A. 58:11A-1 et seq.;

# Attachment E:

## Sample Task Order

## SAMPLE TASK ORDER

TO_____
Task Order No. _____

In accordance with _____ (Contractor) contract, with the _____
_____, Agreement No. _____ for Hurricane/Disaster Debris Removal,
Reduction, and Disposal dated _____ the _____ hereby requests and authorizes the
service to be performed on the project as described below:
**Project**: _____

**Specific Work to be performed**:
_____
_____
_____
_____
_____
_____
_____

**Duration of Work (Include Start Date, End Date and Total Calendar Days)**:
_____
_____
_____

**Method of Payments**:
_____
_____
_____

Contractor Signature: _____    Date: _____
Authorized Signature: _____    Date: _____
Estimated Cost of This Task Order: $ _____

**COMMONWEALTH/AGENCY USE ONLY**
_____ Monitor: _____    Date: _____
_____ Director: _____    Date: _____
Vendor No.:_____ Account No.:_____ Project: _____
Purchasing: _____ Budget: _____ Accounting: _____

# Attachment F:

## TDMA Operation Guidelines

## TEMPORARY DEBRIS MANAGEMENT AREA
## (TDMA) SETUP, OPERATION AND CLOSEOUT GUIDELINES

**Temporary Debris Management Area (TDMA) Setup**

The topography and soil/substrate conditions shall be evaluated to determine best site layout. When planning site preparation, the CONTRACTOR shall incorporate restoration measures. For example, if the local soils are very thin, the topsoil can be scraped to bedrock and stockpiled in perimeter berms. Upon site closeout, the uncontaminated soil can be spread to preserve the integrity of the tillable soils.

The following site baseline data checklist shall be used to evaluate a site before the CONTRACTOR begins operations and used during and after to ensure that site conditions are properly documented.

**TDMA Baseline Data Checklist. As directed by the AGENCY, the CONTRACTOR may be required to:**

Before activities begin:

> Take ground or aerial video/photographs
> Note important features, such as structures, fences, culverts, and landscaping
> Take random soil samples, **if required**
> Take random groundwater samples, **if required**
> Take water samples from existing wells, **if required**
> Check the site for volatile organic compounds, **if required**
> Comply with all Federal, State and Local permit conditions, as applicable

After activities begin:

> Establish groundwater-monitoring wells
> Take groundwater samples
> Take spot soil samples at household hazardous waste, ash, and fuel storage areas
> Maintain construction entrance
> Perform dust control, if required
> Progressive updates:
> - Update videos/photographs
> - Update maps/sketches of site layout
> - Update quality assurance reports, fuel spill reports, etc.

**TDMA Operations**

Lined temporary storage areas shall be established for ash, household hazardous waste, fuels, and other materials that may contaminate soils and groundwater. Plastic liners shall be placed under stationary equipment such as generators and mobile lighting plants with addition of a six-inch sand layer or other absorbent material. These actions shall be included as a requirement in the contract scope of work. If the site is also an equipment storage area, fueling and equipment repair shall be monitored to prevent and mitigate spills of petroleum products and hydraulic fluids.

The CONTRACTOR shall be aware of and lessen the effects of operations that might irritate occupants of neighboring areas. Establishment of a buffer zone can abate concerns over smoke, dust, noise, and traffic.

The CONTRACTOR shall consider on-site traffic patterns and segregate materials based on planned volume reduction methods and approved material recycling programs. Operations that modify the landscape, such as substrate compaction and over excavation of soils when loading debris for final disposal, will adversely affect landscape restoration.

Debris removal/disposal shall be viewed as a multi-staged operation with continuous volume reduction. There shall be no significant accumulation of debris at a TDMA. Instead, debris shall be constantly flowing to burners and grinders, or recycled with the residue and mixed construction and demolition materials going to a landfill.

The CONTRACTOR shall advise the AGENCY of all recycling plans that involve use of a TDMA. Any marketable materials such as: timber suitable for lumber and chips/mulch suitable for boiler fuel or landscaping will be controlled separately from all reduced debris that will be hauled to a landfill. Such recycling products will be measured in quantity and reported to the AGENCY.

**TDMA Closeout Inspection**

Each site shall be eventually emptied of all material and be restored to its previous condition and use unless otherwise agreed upon. The CONTRACTOR is required to remove and dispose of all mixed debris, construction and demolition debris, and debris residue to approved landfills. Appropriate AGENCY inspectors will monitor all closeout activities to ensure that the CONTRACTOR complies with this Contract. Additional measures may be necessary to meet local, State, and Federal environmental requirements because of the nature of the TDMA operation. It should be noted that the New Jersey Department of Environmental Protection Emergency Permits include closure and site restoration standards. DEQ Emergency Permit requirements must be met to ensure proper site closure and compliance will be a condition for reimbursement by FEMA and Federal Highway funding sources. Where sites are not properly closed or environmental releases occur, post-closure care may be mandated.

**TDMA Closeout Planning**

The CONTRACTOR must assure the AGENCY that all TDMA are properly remediated. There will be significant costs associated with this operation as well as close scrutiny by the local press and environmental groups. Site remediation will go smoothly if baseline data collection and site operation procedures are followed.

**TDMA Remediation**

During the debris removal process and after the material has been removed from each of the TDMA, environmental monitoring is required to close each of the sites. This is to ensure that no long-term environmental contamination remains on the site. The monitoring shall be done on three different media: ash, soil, and groundwater.

- **Ash:** The monitoring of the ash shall consist of chemical testing to determine the suitability of the material for either agricultural use or as a landfill cover material.
- **Soil:** Monitoring of the soils shall be by portable inspection methods to determine if any of the spoils are contaminated by volatile hydrocarbons. The CONTRACTOR is required to perform this inspection if it is determined that hazardous material, such as oil or diesel fuel was spilled on the site. This phase of the monitoring shall be performed after the stockpiles are removed from the site, if required.
- **Ground Water:** The monitoring of the groundwater shall be done to determine the probable effects of rainfall leaching through either the ash areas or the stockpile areas, if required.

**TDMA Closeout Coordination**

The CONTRACTOR shall coordinate the following closeout requirements through the AGENCY staff:

- Coordinate with local and State officials responsible for construction, real estate, contracting, project management, and legal counsel regarding requirements and support for implementation of a site remediation plan.

- Establish an independent testing and monitoring program. The CONTRACTOR responsible for environmental restoration of both public and leased sites. The CONTRACTOR shall also remove all debris from sites for final disposal at landfills prior to closure.
- Reference appropriate and applicable environmental regulations. Prioritize site closures.
- Schedule closeout activities.
- Determine separate protocols for ash, soil and water testing.
- Develop decision criteria for certifying satisfactory closure based on limited baseline information. Develop administrative procedures and contractual arrangements for closure phase.
- Inform local and State environmental agencies regarding acceptability of program and established requirements. Designate approving authority to review and evaluate CONTRACTOR closure activities and progress.
- Retain staff during closure phase to develop site-specific remediation for sites, as needed, based on information obtained from the closure checklist shown below.

**Temporary Debris Management Area (TDMA) Closure Checklist**

- Site number and location
- Date closure complete
- Household hazardous waste removed
- CONTRACTOR equipment and temporary structures removed
- CONTRACTOR petroleum spills remediated
- Ash piles removed
- Comparison of baseline information to conditions after the CONTRACTOR has vacated the temporary site
- Appendices
- Closure documents Contracting status reports
- Contract
- Testing results
- Correspondence
- Narrative responses

# Attachment H:

## Motor Vehicle Forms



## New Jersey
## Motor Vehicle Commission

**State of New Jersey**
225 East State Street
P.O. Box 017
Trenton, NJ 08666-0017

1-888-486-3339 ext. 5069

## Public Agency's Guide to Abandoned & Unclaimed Vehicles

### General Information

Pursuant to N.J.S.A 39:10A-1 through 39:10A-7, a vehicle abandoned on public property must either be offered for sale at public auction or junked. A **junk** title will only be issued if the vehicle is inoperable or cannot be put in safe operational condition except at a cost in excess of the value of the vehicle.

The vehicle must have been abandoned and unclaimed for more than 20 business days, if requesting a standard title, or 15 business days if requesting a junk title. License plates must be removed before the auction and surrendered to the Motor vehicle Commission (MVC).

*In order to keep processing time to a minimum, it is highly recommended that you forward requests on a frequent basis rather than allowing requests to build up and mailing them all at once.*

### A. Junk Title Instructions

Report possession of an abandoned vehicle and request a Junk Title Certificate to be issued in the name of the Public Agency by completing the following steps:

1. Complete a check with the National Crime Information Center (NCIC) to determine whether the vehicle is stolen.

2. Complete Form OS/SS-87 – "Report of Possession of Abandoned Vehicle by Public Agency and Request for a Junk Title. This must also be signed by an authorized representative of the Public Agency.

    a. Pursuant to N.J.S.A 39:10A-1, the Public Agency must perform an NCIC check, and, within three business days, notify the owner of record and lienholder (if applicable).  The public agency shall also, within three business days, notify the person storing the abandoned vehicle.  Upon receipt of the notice from the Public Agency, the person storing the abandoned motor vehicle shall notify the owner of record and any lienholder. If the OS/SS-87 form is not properly filled out reflecting this information, the request will be rejected.

    b. If the vehicle has a digital odometer, and the key is not available to start the vehicle, please mark the word "DIGITAL" on the OS/SS-87 Form.

3. The Public Agency must also report possession of an abandoned vehicle to the National Insurance Crime Bureau. The Public Agency can prepare the OS/SS-87 Form in duplicate and stamp the duplicate copy "NICB". The duplicate copy is to be filed with: NICB, 145 Pinelawn Rd, Suite 310 South, Melville, N.Y. 11747, ATTN: Michael Fella.

4. Mail required documents along with a $2.00 check or money order (payable to NJMVC) to the MVC at the above listed address.

---

**Note**: The below listed documents are available from our website at *www.njmvc.gov/biz*.

➢ Form OS/SS-87 – "Report of Possession of Abandoned Vehicle & Request for Junk Title"
➢ Form OS/SS-89 – "Report of Possession of Abandoned Vehicle"
➢ Public Agency's Guide to Abandoned & Unclaimed Vehicles
➢ Checklist for acquiring title for abandoned vehicles
➢ Sample bill of sale.

*Any questions? Please call the Abandoned Unit at 888-486-3339 x5069 prior to submitting your request.*

---

**B. Standard Title Instructions**

1. Complete a check with the National Crime Information Center (NCIC) to determine that this is not a stolen vehicle.

2. Give notice of the sale at auction by certified mail, to the owner, if his name and address are known and to the lienholder of any security interest filed with the Chief Administrator.

3. Fully complete Form OS/SS-89 – "Report of Possession of Abandoned Vehicle by Public Agency". This must also be signed by an authorized representative of the Public Agency. If the vehicle has a digital odometer, and the key is not available to start the vehicle, please mark the word "DIGITAL" on the OS/SS-89 Form.

   a. Pursuant to N.J.S.A 39:10A-1, the Public Agency must perform an NCIC check, and, within three business days, notify the owner of record and lienholder (if applicable).  The public agency shall also, within three business days, notify the person storing the abandoned vehicle.  Upon receipt of the notice from the  Public Agency, the person storing the abandoned motor vehicle shall notify the owner of record and any lienholder.  If the OS/SS-87 form is not properly filled out reflecting this information, the request will be rejected.

4. Mail the original OS/SS-89 Form to the MVC to the address listed on Page 1.

5. The Public Agency must also report possession of an abandoned vehicle to the National Insurance Crime Bureau. The Public Agency can prepare the OS/SS-89 Form in duplicate and stamp the duplicate copy "NICB". The duplicate copy is to be filed with: NICB, 145 Pinelawn Rd, Suite 310 South, Melville, N.Y. 11747, ATTN: Michael Fella.

6. Upon receipt and approval of documentation, the MVC will issue the "Application to Title Abandoned Vehicle by Public Agency and Sold at Public Sale" (Form OS/SS-88) and it will be mailed to the Public Agency. This form contains an assignment, which when executed, will result in issuance of a Certificate of Title to the purchaser.

7. Upon receipt of the OS/SS-88 Form, the Public Agency must publish a notice at least 5 days before the date of the auction in one or more newspapers published in this state and circulating in the municipality in which the motor vehicle is held.

8. Hold public auction. When, *and if, the vehicle is sold, the Public Agency must supply the purchaser with the following items:

   ▪ A fully completed and signed OS/SS-88 Form
   ▪ A certified affidavit of newspaper publication
   ▪ A bill of sale from the Public Agency. The bill of sale must contain the sale price, sale date, purchase name, address and signature, and the public agency name, address, authorized representative's name and signature. A sample is available on-line at _www.njmvc.gov/biz._

9. The purchaser must then mail the above documents with a $3.00 check or money order made payable to NJMVC, 7% sales tax on the purchase price of the vehicle, and a photocopy of the purchaser's driver's license. Mail documents to the MVC at the address list on the reverse side.

*<u>Special Note</u>: If the price bid for a motor vehicle is less than the minimum bid established by the public agency for the motor vehicle, or if no bid is made, then the public agency may withdraw the vehicle from auction and apply for title to the vehicle. The MVC will only honor requests for titles in the name of the public agency if the request is accompanied by a certification, on public agency letterhead, signed by the auctioneer and authorized agency representative. The certification must verify that the vehicle was indeed offered for sale a public auction and that either an unacceptable bid was offered or no bid was received. The certification also must include the following information:

   ▪ Year, make, model, and vehicle identification number (VIN) of the vehicle,
   ▪ Date of auction, Amount of bid,
   ▪ Printed names and signatures of auctioneer and agency representative including signatures and date.

OS/SS-322 (R4/10)

 **New Jersey**
**Motor Vehicle Commission**

225 East State St.
P.O. Box 017
Trenton, NJ 08666-0017

STATE OF NEW JERSEY
1-888-486-3339 ext. 5069 (in state)

2/23/2010

## NOTICE - PUBLIC AUCTION OF ABANDONED VEHICLES – EFFECTIVE 4/1/2010

**To All Public Agencies:**

A recent review of procedures pertaining to the public auction of abandoned vehicles has revealed that not all statutory requirements are being met by applicants. Based on the review and the recommendation of the Motor Vehicle Commission's Security & Investigations Unit, the Commission will begin requiring strict compliance with all statutory provisions, effective April 1, 2010. Any application with incomplete or incorrect information will be rejected. Please note that, upon the sale of any vehicle for which no junk title certificate shall have been issued, the Public Agency shall execute and deliver to the purchaser a **bill of sale and application for certificate of ownership**. A sample bill of sale has been created and is enclosed for your use. Please produce a bill of sale on your Public Agency letterhead.

➢ Additionally, the Motor Vehicle Commission (MVC) will issue a title for an abandoned vehicle in the name of the public agency if the vehicle in question was offered for sale at public auction and at this auction either no acceptable bid was obtained or no bid at all was obtained. In either case, the Public Agency must submit a certification on agency letterhead to the MVC attesting to the following:

  1. The vehicle was offered for sale at public auction. A certified copy of the newspaper advertisement must be included.

  2. That no acceptable bid or no bid at all was obtained at the time of the auction.

  3. That because of the circumstances the public agency is seeking to title the vehicle in the agency's name.

  The certification must be signed by the auctioneer and an authorized representative of the Public Agency.

  > **NOTE:** Once the vehicle is titled in the Public Agency's name the agency is free to use or dispose of the vehicle in any manner that is consistent with the agency's policies and procedures.

➢ The MVC has provided a checklist to ensure that the Public Agency has completed and submitted all required documents accurately. This checklist is not required to be returned to the MVC.

➢ The MVC has provided a Public Agency's Guide to Abandoned & Unclaimed Vehicles. These instructions list, in detail, the steps the Public Agency must follow depending on whether the Public Agency is requesting a Standard or Junk Title.

➢ The Application for Certificate of Title – Abandoned Vehicle Sold at Public Sale by Public Agency (Form OS/SS-88) will only be valid for one year following its issuance.

The following forms have also been revised and must be used effective April 1, 2010:

➢ *Form OS/SS-87* "Report of Possession of Abandoned Vehicle & Request for Junk Title Certificate" **(ENCLOSED)**

➢ *Form OS/SS-89* "Report of Possession of Abandoned Vehicle by Public Agency" **(ENCLOSED)**

➢ *Form OS/SS-88* "Application for Certificate of Title - Abandoned Vehicle Sold at Public Sale by Public Agency" (Note: This form should always contain a raised seal. If it does not, call the Abandoned Unit immediately).

> **NOTE:**   For electronic versions of the Abandoned Public Agency documents *(including instructions, forms, a checklist, and a sample bill of sale)*, please visit our website at www.njmvc.gov/biz and navigate to the Abandoned page under the Titles section.

Notice Public Agency
Effective 4/1/2010

*On the Road to Excellence*
www.njmvc.gov
*New Jersey is an Equal Opportunity Employer*

Page 2 of 2

# Attachment I:

## Abandoned Vessels Disposition Law Guide

*N.J. Stat. § 39:10A-1* (2010)

§ 39:10A-1. Public auction of abandoned motor vehicles; notices required

a. When the State or any county, county park commission, municipality or any authority created by any thereof, hereinafter referred to as a "public agency," shall have taken possession of a motor vehicle found abandoned, such taking of possession shall be reported immediately to

(1) The Chief Administrator of the Motor Vehicle Commission on a form prescribed by the administrator, for verification of ownership and

(2) The National Insurance Crime Bureau.

(3) Upon receipt of verification of ownership of the vehicle from the administrator, the public agency shall within three business days provide notice of possession of the vehicle to the owner of record and the holder of any security interest filed with the administrator by telephone, mail, facsimile or electronically. The public agency may assess the person claiming the vehicle, be it the owner of record or the holder of any security interest, for the actual costs of providing the notice required under this paragraph.

(4) The public agency shall also within three business days notify the person storing the abandoned motor vehicle. The notice shall be given in the same manner as in the case of notification of the owner of record and the security interest holder and shall include the name and address of the owner of record and the holder of any security interest in the stored motor vehicle.

(5) Upon receipt of the notice required by paragraph (4) of this subsection, the person storing the abandoned motor vehicle shall provide notice to the owner of record and to any security interest holder.

(a) The notice shall be by first class mail, with a certificate of mailing, and shall include a schedule of the costs imposed for storing the motor vehicle and instructions explaining how the owner of record or the security interest holder may claim the stored motor vehicle.

(b) Except as provided in subparagraph (c) of this paragraph, if the person storing the motor vehicle fails to provide this notice to the owner of record and to the security interest holder within 30 days of the date on which the storer of the vehicle received the notice required under paragraph (4) from the public agency, the maximum amount that person may charge the owner of record or the security interest holder for storing that motor vehicle shall be $ 750, provided that the owner of record or security interest holder submits a proper claim for the vehicle not later than the 30th day following the date the notice is delivered from the public agency to the person storing the motor vehicle.

(c) When a vehicle is abandoned due to the death or incapacitation of the driver or any passenger, the person storing the vehicle shall charge the owner of record or the security interest holder no more than $ 100 for the first 72 hours after the vehicle is placed on the premises.

(d) If the owner of record or security interest holder fails to submit a proper claim for the vehicle on or before that 30th day, the person storing the motor vehicle may charge the security interest holder reasonable costs for the removal and storage of the motor vehicle. If the notice is properly provided by the person storing the motor vehicle, that person may charge the owner of record or the

security interest holder reasonable costs for the removal and storage of the motor vehicle from the date the person removed and stored the motor vehicle.

(e) The public agency may assess the person storing the abandoned motor vehicle, and the person storing the abandoned motor vehicle may assess the security interest holder, for the actual costs of providing the notices required under paragraphs (4) and (5) of this subsection.

b. When such motor vehicle which has been ascertained not to be stolen and to be one which can be certified for a junk title certificate under section 3 of P.L.1964, c.81 (*C.39:10A-3*) shall have remained unclaimed by the owner or other person having a legal right thereto for a period of 15 business days, even if at that time the owner has not been identified as a result of efforts to make identification by the public agency or the Motor Vehicle Commission, the same may be sold at auction in a public place. If the certified motor vehicle is sold at auction prior to identification of the owner, the public agency shall document the condition of the motor vehicle in writing and with photographs prior to the sale; document the amount obtained from the sale of the motor vehicle; and notify the owner, if his name and address are identified after the sale, of the actions taken by the public agency to dispose of the motor vehicle.

c. When a motor vehicle which cannot be certified for a junk title certificate under section 3 of P.L.1964, c.81 (*C.39:10A-3*) remains unclaimed by the owner or other person having a legal right thereto for a period of 20 business days, the motor vehicle may be sold at auction in a public place, but shall be sold no later than 90 business days after the public agency takes possession of the vehicle, except that a waiver of the 90-day limit may be obtained for good cause from the Division of Local Government Services in the Department of Community Affairs.

d. The public agency shall give notice of a sale conducted pursuant to subsection b. or c. of this section, by certified mail, to the owner, if his name and address be known and to the holder of any security interest filed with the administrator, and by publication in a form to be prescribed by the administrator by one insertion, at least five days before the date of the sale, in one or more newspapers published in this State and circulating in the municipality in which such motor vehicle is held.

### *N.J. Stat. § 39:10A-2* (2010)

§ 39:10A-2. Reclaiming possession; payment of costs and penalties

At any time prior to sale the owner or other person entitled thereto may reclaim possession of the motor vehicle upon payment of the reasonable costs of removal and storage of the vehicle and any fine or penalty and court costs assessed against him for a violation which gave rise to the seizure or taking possession of such vehicle.

1. A person can retain title to a towed vehicle by paying the towing and storage charges at anytime prior to the public sale.

*N.J. Stat. § 39:10A-3 (2010)*

§ 39:10A-3. Issuance of junk title certificate; grounds

If the public agency taking possession of a motor vehicle pursuant to this act shall, in its report thereof to the director, certify on an application prescribed by him that such motor vehicle is incap- able of being operated safely or of being put in safe operational condition except at a cost in excess of the value thereof, the division shall, without further certification or verification, issue to the pub- lic agency for a fee of $ 2.00 a junk title certificate thereto, with proper assignment thereon, which shall be assigned and delivered to the purchaser of the vehicle at public sale.

*N.J. Stat. § 39:10A-4 (2010)*

§ 39:10A-4. Execution and delivery of application for certificate of ownership; issuance of certifi- cate; fee

Upon the sale of any motor vehicle for which no junk title certificate shall have been issued, the public agency shall execute and deliver to the purchaser an application for certificate of ownership prescribed by the director in the same form and manner as provided in Revised Statutes *39:10-15*, which shall also contain the name and address, if known, of the former owner. Such application shall be accepted by the director for issuance of a certificate of ownership for a fee of $ 3.00.

*N.J. Stat. § 39:10A-5 (2010)*

§ 39:10A-5. Sale as barring claims of interest; remission of proceeds of sale

Upon the sale of a motor vehicle pursuant to the provisions of this act all claims of interest therein shall be forever barred and the proceeds realized therefrom after payment of the expenses of posses- sion and sale, shall be remitted to the treasury of the public agency as its sole property.

*N.J. Stat. § 39:10A-6 (2010)*

§ 39:10A-6. Rules and regulations

The Director of the Division of Motor Vehicles may make and promulgate rules and regulations to implement the provisions of this act.

*N.J. Stat. § 39:10A-7 (2010)*

§ 39:10A-7. Additional remedy

This act is intended to provide an additional remedy and shall not be construed to supersede procedures provided under any other act.

# Attachment J:

## Abandoned Vessels Form



**New Jersey
Motor Vehicle Commission**

State of New Jersey
P.O. Box 017
Trenton, NJ 08666-0017
1-888-486-3339 x5069

## Report of Possession of Abandoned Vehicle by Public Agency and Request for Junk Title Certificate

*Date      of      Request:*

The undersigned authorized representative of the below named Public Agency hereby certifies that the following described motor vehicle was found abandoned within our jurisdiction and further certifies, in accordance with N.J.S.A. 39:10A-3, that such vehicle is incapable of being operated safely or of being put in safe operational condition except at cost in excess of the value thereof.

**Note**: Before submitting this application you are required to first check with National Crime Information Center (NCIC) to determine if this may be a stolen vehicle.

| In accordance with the provisions of N.J.S.A. 39:10A-1, the following requirements have been completed *(check all that has been completed)*. | | |
|---|---|---|
| **Public Agency** | | **Storage Facility** |
| ☐ -NCIC Checked | ☐ -Public Agency Notified Storage Facility | ☐ - Storage Facility Notified Owner |
| ☐ -Public Agency Notified Owner | | ☐ - Storage Facility Notified Lienholder |
| ☐ - Public Agency Notified Lienholder | ☐ -NICB Notified | |

**Vehicle**

| Vehicle Identification Number | | Body Type | |
|---|---|---|---|
| Year | Make | Model | Mileage (No tenths) |

Pursuant to N.J.S.A. 39:10A-1 et seq., the undersigned submits the above information to the Chief Administrator of the Motor Vehicle Commission in order to obtain a Junk Title Certificate for assignment to the purchaser at public sale.

**Public Agency**

| Name of Agency | | 15 Digit NJ Corpcode | |
|---|---|---|---|
| Street Address | City | | State    Zip |
| Signature of Authorized Representative | | Date | |

**Information**

| Name & Address of Owner | Registration Plate Number |
|---|---|
| Name & Address of Lienholder | |

*Mail Completed Form To:*  **NJ Motor Vehicle Commission
Special Titles/Abandoned Unit
225 East State St.
P.O. Box 017
Trenton, NJ 08666-0017**

OS/SS-87 (R2/10)



## Motor Vehicle Commission

**State of New Jersey**
P.O. Box 017
Trenton, NJ 08666-0017
1-888-486-3339 x5069

### Report of Possession of Abandoned Vehicle by Public Agency

*Date of Request:* _____

The undersigned authorized representative of the below named Public Agency hereby certifies that the following described motor vehicle was found abandoned within our jurisdiction and, in accordance with the provisions of N.J.S.A. 39:10A-1 et seq, we have taken possession of same and hereby request verification of ownership and issuance of an application for certificate of ownership. **Note**: Before submitting this application you are required to first check with the National Crime Information Center (NCIC) to determine if this may be a stolen vehicle.

**In accordance with the provisions of N.J.S.A. 39:10A-1, the following requirements have been completed** *(check all that has been completed).*

| Public Agency | | Storage Facility |
|---|---|---|
| ☐ -NCIC Checked | ☐ -Public Agency Notified Storage Facility | ☐ - Storage Facility Notified Owner |
| ☐ -Public Agency Notified Owner | | ☐ - Storage Facility Notified Lienholder |
| ☐ - Public Agency Notified Lienholder | ☐ -NICB Notified | |

**Vehicle**

Vehicle Identification Number                              Body Type

Year            Make            Model            Mileage (No tenths)

**Public Agency**

Name of Agency                              15 Digit NJ Corpcode

Street Address            City            State            Zip

**Signature of Authorized Person**                              **Date**

**Information**

Name & Address of Owner            Registration Plate Number

Name & Address of Lienholder

Name & Address of Storage Facility/Tower

### Title Requirements - For Informational Purposes Only

Pursuant to N.J.S.A. 39:10A-1, when a motor vehicle remains unclaimed by the owner or other person having a legal right thereto for a period of 20 days, and the vehicle cannot be certified for a junk title certificate, it may be sold at auction in a public place. When a motor vehicle remains unclaimed by the owner or other person having a legal right thereto for a period of 15 days and the vehicle can be certified for a junk title certificate, it may be sold at auction in a public place. Notice of the sale must be given by certified mail, return receipt requested, to the owner, if known, and to the holder of security interest, if any. **The public agency must provide notice** of sale by publication, in a form prescribed by the Chief Administrator of the Motor Vehicle Commission by one insertion at least 5 days before the date of sale in one or more newspapers published in this state and circulating in the municipality in which such motor vehicle is held. Pursuant to N.J.S.A. 39:10A-2, at any time prior to sale the owner or other person entitled to thereto may reclaim possession of the motor vehicle upon payment of the reasonable costs of removal and storage of the vehicle and any fine or penalty and court costs assessed against him for a violation which gave rise to the seizure or taking possession of such vehicle. If the person storing the vehicle fails to provide notice to the owner of record and to the security interest holder within 30 days of the date on which the storage facility received the notice from the public agency, the maximum amount that person may charge the owner of record or the security interest holder for storing the vehicle shall be $750, provided that the owner of the vehicle or security interest holder submits a proper claim for the vehicle not later than the 30th day following the date the notice is delivered from the public agency to the person storing the vehicle.

OS/SS-89 (R4/10)

**New Jersey**
**Motor Vehicle Commission**

P.O. Box 017
Trenton, NJ 08666-0017

STATE OF NEW JERSEY
1-888-486-3339 ext. 5069 (in state)
1-609-292-6500 ext. 5069 (out of state)

## Instructions to Implement the Abandoned Vessel Disposition Law

*** Please note that each case is unique and additional documents may be required upon request.***

### Purpose and Authority:

These instructions implement the Abandoned Vessel Disposition Law (N.J.S.A. 12:7C-7 et seq.,) which provides property owners with a mechanism for legal acquisition and disposition of vessels abandoned upon their property; however, this is not a substitute for the settlement of disputes between the property owner and vessel owner.

### Provisions:

Pursuant to N.J.S.A. 12:7C-9, it is unlawful for any owner to abandon any vessel to or upon public land or waters of this State, including any municipal waterway, to or upon any municipally-owner land, or upon any private property, or the water immediately adjacent thereto without the consent of the official designated by law to have jurisdiction over such public land or waterway, or the owner or other person in charge of the private property except when an emergency exists.

A vessel which has remained moored, grounded, docked, or otherwise attached or fastened to or upon any public land or waterway or any private property without such consent for a period of more than 30 days, or which is submerged partially or completely into the water for a period of time, shall be deemed abandoned and may be impounded if an official authorized by statute or ordinance to enforce regulations related to municipal waterways or a law enforcement officer having enforcement authority has reason to believe that the vessel has been abandoned.

The vessel may be removed from a municipal waterway by, or at the direction of, the municipality or harbor commission and may be impounded and removed to a storage space, and its registration plates seized.

The owner shall be responsible for the cost of the removal, transportation, storage or disposal, and any other incidental costs associated with the impounded vessel.

Whenever a vessel is removed, the official designated by law to have jurisdiction over the municipal waterway shall file an incident report with the New Jersey Motor Vehicle Commission (MVC).

Pursuant to N.J.S.A. 12:7C-10, if the owner of the vessel fails to claim the impounded vessel and pay the reasonable costs of removal and storage by midnight of the 30th day following impoundment, it shall be prima facie evidence of abandonment and shall establish a rebuttable presumption that the vehicle is abandoned. A landowner, his lessee, or his agent or a municipality or harbor commission, in the case of a municipal waterway, may institute proceedings to acquire title to any abandoned vessel on his land or the water immediately adjacent thereto in the case of a landowner, his lessee, or his agent, or which has become abandoned in a municipal waterway, in the case of a municipality or harbor commission. The acquisition of title divests any other person and any other legal entity, including lienholders, of any interest in the vessel.

At any time prior to the final acquisition of title by the landowner, his lessee, his agent, or a municipality or harbor commission, the owner or a lessor or holder of a lien on the vessel may reclaim possession of it upon payment of the reasonable costs of removal and storage of the vessel and any outstanding penalties and court costs assessed against him; provided, however, that if it is a lessor or the holder of a lien who is reclaiming the vessel, he may reclaim the vessel without payment for the storage but shall pay the costs of removal. In such cases, the owner of the vessel shall be liable for all outstanding costs, fines and penalties, and the municipality shall have a lien against the property and income of that violator for the total amount of those outstanding costs, fines, and penalties if the vessel has been abandoned in a municipal waterway or on municipally-owned land.

OS/SS-66 (R3/12)

## Procedure and Requirements to Acquire Title:

**1**

**If the abandoned vessel has a New Jersey boat registration number,** the applicant must furnish a "Vehicle Registration Application Request" Form DO-11A along with a $15.00 check or money order made payable to "NJMVC" (no cash). Mail documents to the following address: NJ Motor Vehicle Commission (MVC), Data Output, 225 E. State Street, Trenton, NJ, 08666.

Upon receipt of registration information from the MVC, the applicant must determine whether the vessel was used for commercial or non-commercial purposes.

**If the Registration Code (Reg Code) on the Registration Application is a Code 81** the vessel was used for *non-commercial purposes*. In this case, the applicant must contact the County Recording Officer of the county in which the registered owner resides and request a certificate of search pertaining to lienholders on the vessel. The applicant shall comply with the procedures and fees of the County Officer. <u>Note</u>: Some counties may require the applicant to utilize title search companies.

**If the Registration Code (Reg Code) on the Registration Application is <u>anything other</u> than Code 81,** the vessel was used for *commercial purposes*. In this case, the applicant must contact the Secretary of State, Division of Commercial Recording, P.O. Box 303, Trenton, NJ, 08625 and request the Secretary of State to supply him/her with a certificate of search pertaining to lienholders on the vessel.

**If the abandoned vessel has a boat registration number from a state other than New Jersey or does not have a boat registration number** or other obvious owner identification (e.g. papers, identification documents aboard, etc.), a search must be made for a vessel documentation number on the main beam of the vessel. If a number is found, the applicant must contact the U.S. Coast Guard, National Vessel Documentation Center, 2039 Stonewall Jackson Drive, Falling Waters, West Virginia, 25419, and request that the Coast Guard furnish him/her with the name(s) and address of the owner and lienholder, if any.

**2**

The applicant must also request a lien search with the New Jersey MVC. Lien Search Application (DO-22) with a $15 check or money order payable to "NJ MVC" is required to be submitted. If there is no record in New Jersey, we will perform an additional search, and if a record is found you will be notified. If no records are found, a certified search from the Motor Vehicle Authority of New York, Delaware, Pennsylvania, Connecticut and Maryland will be required.  Submit your lien search request with one of the documents listed in step 3.

**3**

**If the vessel was abandoned on <u>private property</u>,** a notarized statement is required stating how and when you came into possession of the vessel. The statement must contain a complete description of the vessel, the applicant's name and address, the current date, and the applicant's signature.

**If the vessel was abandoned at a <u>marina</u>** and the marina owner entered into a storage contract with the vessel owner, a copy of the contract(s) is/are required if in existence. In cases where the marina owner has made repairs to the vessel, a copy of the repair bill(s) is/are required.



Do Not Continue until you receive a response regarding steps 1 & 2. For assistance, call the telephone number listed on Page 1 of this procedure.

**4**

Upon receiving the certificate of search, the applicant must notify the vessel owner and any secured party or assignee thereof by mailing "Abandoned Vessel Notice" Form OS/SS-64. The notice must be sent United States Postal Service Certified Mail, Return Receipt requested. If the registered owner responds that the vehicle was sold or transferred to another person, the applicant shall then redirect the notice to the new owner. If no owner can be identified, or no secured party appears on the records of the Secretary of State, County Recording Officer, Motor Vehicle Commission, or the U.S. Coast Guard, the "Abandoned Vessel Notice" Form OS/SS-64 does not need to be sent. A copy of this notice and the signed return receipts are required to be submitted to this office. If returned undeliverable, the original, unopened envelope is required.

OS/SS-66 (R3/12)

## Procedure and Requirements to Acquire Title: *(continued)*



5   At the same time as step 4, the applicant must place a notice in a newspaper that is published and circulated within the county and/or municipality where the vessel is located. The newspaper advertisement must

Number-HIN and/or Registration Number). Publication must also state that if the vessel is not claimed and removed within 30-days after the publication date, the applicant will apply for title in the applicant's name in accordance with the Abandoned Vessel Disposition Law, N.J.S.A. 12:7C-7 et seq. An affidavit of newspaper publication is required to be submitted to this office. Copies must be certified.

**Note**: The newspaper publication and letter (steps 4 & 5) shall not contain any statements conditioning the release of the vessel upon the payment of overdue repairs or storage costs with respect to the vessel.



6   If the vessel is not claimed and removed within 30 days after the publication date of the notice, the person, entity, municipality, or harbor commission desiring to acquire title shall apply to the MVC for transfer of title to the vessel.



7   The applicant may apply to the MVC for title to the vessel in his name by submitting a completed and notarized "Application for Title to an Abandoned Vessel" Form OS/SS-65 and a $60.00 check or money order (no cash) made payable to: NJMVC. You may mail documents to the below address. Note: No title shall be issued if there is any dispute between the applicant and the owner of the vessel.



8   After review of your documents, the MVC may find it necessary for the vessel to have the Hull Identification Number (HIN) inspected by the NJ Marine State Police. If a HIN inspection is required, you will be contacted prior to issuance of the Certificate of Ownership. You must have the ISM/SS-10A completed by the Marine State Police.



9   After review and approval of all required documents, the MVC may issue the applicant title to the vessel in the form of a Certificate of Ownership. The acquisition of title to the vessel by the applicant divests any other person of any interest in the vessel.

*After making copies for your records,
mail required documents to:*

     Motor Vehicle Commission
     ᴄⱼᴇcial Title/Abandoned Unit
     225 East State Street
     P.O. Box 017
     Trenton, New Jersey 08666-0017

*On the Road to Excellence*
www.njmvc.gov
*New Jersey is an Equal Opportunity Employer*

OS/SS-66 (R3/12)                                                     Page 3 of 3



## New Jersey
## Motor Vehicle Commission

NJ MVC/Abandoned Unit
P.O. Box 017
Trenton, NJ 08666-0017

STATE OF NEW JERSEY
1-888-486-3339 ext. 5069 (in state)
1-609-292-6500 ext. 5069 (out of state)

Date of Application: _____

## Application for Title to an Abandoned Vessel

| Last Name | First Name | Middle Initial |
|---|---|---|

| Street Address | City | State | Zip |
|---|---|---|---|

NJ Driver License No. (if Business-Corpcode)

**Identi** (sidebar)

Name, *if any* | Hull Identification Number (HIN)

State Boat Registration Number | U.S. Coast Guard Documentation Number, *if any*

| Year | Make | Length | Hull Material |
|---|---|---|---|

| Type (Cabin, open, etc.) | Fuel Used (Gasoline, diesel, etc.) | Propulsion (Inboard, outboard, i/o, etc) |
|---|---|---|

Date Vessel Abandoned without Permission | Location Vessel Abandoned

**Ownership of Vessel** (sidebar)

Owner Name (Last, First)

Owners Address

Ascertained Ownership Information From *(check and complete statements as necessary)*:

☐ -Boat registration information from the NJ MVC or the State of: _____ (attach copies).

☐ -A vessel documentation check by the U.S. Coast Guard (attach copy).

☐ -Through the following means in the absence of the foregoing, or based upon ownership information received: *(Describe in full, what you did and attach letters or other substantiating data as appropriate. Use extra sheets if necessary.)*

_____

_____

_____

_____

_____

OS/SS-65 (R3/12)

Applicant Last Name:

**Ascertained Lienholder Information From** *(check and complete statements as necessary)*:

☐ -The Secretary of State of New Jersey responded that a lien is held on this commercially used vessel by: _____

_____
*Name & Address of Institution or Individual*                    *(If not applicable or none, so state)*

☐ -The recording officer of _____ County in the State of _____ , wherein the
                            *County*                          *State*

registered Vessel owner resides, responded that a lien is currently held on this pleasure used vessel by: _____

_____
*Name & Address of Institution or Individual*                    *(If not applicable or none, so state)*

☐ -The Authorities of the State of _____ have responded that a lien is held on this vessel by:
                                *State*

_____
*Name & Address of Institution or Individual*                    *(If not applicable or none, so state)*

Date Notice Appeared in Newspaper

Name and Address of Newspaper

County & City in which Newspaper Circulates

**Notification to Owner & Lienholder,** *if applicable* **(Form OS/SS-64)**
*(check and complete statements as necessary)*

☐ -I mailed a registered "Abandoned Vessel Notice" Form OS/SS-64 to the owner and lienholder (if applicable), in accordance
with the provisions of the Abandoned Vessel Disposition Law (N.J.S.A. 12:7C-7, et seq.). The notice was mailed
on: _____ . Further, I am unaware of any dispute by the vessel owner or lienholder.
        *Date Notice Mailed*

☐ -I was unable to ascertain the owner and lienholder (if applicable); therefore, I could not send the registered letter.

## State of New Jersey
## County of _____

**BEFORE ME**, the undersigned Notary, _____

*[name of Notary before whom affidavit is sworn]*, on this _____ *[day of month]* day of

_____ *[month]*,   20_____,   personally   appeared

_____ *[name of affiant]*, known to me to be a credible

person and of lawful age, who being by me first duly sworn, on _____ *[his or her]* oath, deposes and says:

1.  I submit this application to obtain a New Jersey title for the above-described vessel, which was impounded after remaining on public land or waterway, or private property, without the consent of the person in control of the property or waterway, for a period of more than thirty (30) days. The owner of the vessel failed to claim the vessel by midnight of the thirtieth day.

2.  On _____, I placed notice in the above newspaper, describing the vessel, its location of abandonment, any identifying number, and stating that if the vessel is not claimed and removed within thirty (30) days after the publication date of the notice, I would apply for title to the vessel in my name under the Abandoned Vessel Disposition Law (N.J.S.A. 12:7C-7, et seq.). To date, there has been no response to my public notice.

3.  Check one:

_____ On _____, I mailed a registered Abandoned Vessel Notice (OS/SS-64) to the owner and to the vessel lienholder (if applicable), stating that if ownership is not claimed and the vessel not removed within thirty (30) days, title to the vessel will be applied for in my name.  To date, there has been no response to my registered notice(s);

____The owner has responded; See response.

____I was unable to ascertain the owner (or lienholder) and I could not send a registered letter requesting removal of the vessel.

4.  To the best of my knowledge, this vessel is not the subject of any court action in which ownership, unpaid storage or repair bills are in dispute.

5.  Accordingly, having complied with all applicable provisions of the law governing the disposition of abandoned vessels within the waters of the State of New Jersey, I hereby request that title to the vessel abandoned for more than thirty days, as described herein, be issued to me.


_____

[signature of affiant]


_____

[typed name of affiant]


_____

[address of affiant, line 1]


_____

[address of affiant, line 2]


Subscribed and sworn to before me, this _____ [day of month]

day of _____ [month], 20_____.

 [Notary Seal:]


_____

[signature of Notary]


_____

[typed name of Notary]

        NOTARY PUBLIC

        My commission expires: _____, 20_____.

OS/SS-65 (R3/12)

Applicant Last Name: _____

## Abandoned Vessel Checklist

Use the below checklist as a guide as it may be useful to ensure that you have met all the requirements of the Abandoned Vessel Procedure. To ensure your request is processed in a timely manner, please only submit complete and accurate documents. If you have any questions or concerns, please contact the telephone number listed prior to submitting your request. **This checklist must be submitted with your completed request.**

**Please Note**: Each case is unique and is handled on an individual basis. Additional documents may be required upon request.

☐ - Boat ownership information furnished by the NJ MVC or the State of _____.

☐ - U.S. Coast Guard Documentation Number Certification (if applicable).

☐ - Certificate of Search, State of New Jersey (if applicable).

☐ - Certificate of Search, County of _____.

☐ - Affidavit of Newspaper Publication with actual Newspaper Publication (a clipping).

☐ - Original registered Abandoned Vessel Notice(s) (Form OS/SS-64) sent to the Owner and Lienholder (if applicable) AND the original signed return receipts. If envelope was returned as undeliverable, the original, unopened envelope with US Postal Service notation is required.

☐ - If applicable, A Copy of Contract and/or Repair-Storage Bill(s).

☐ - *If abandoned on Private Property,* a notarized letter stating how the applicant came into possession of the vessel.

☐ - Check or money order in the amount of $60.00 made payable to: NJ MVC.

☐ - Application for Certificate of Vessel or Hull Ownership (Form OS/SS-27).

☐ - Application for Title to Abandoned Ve

☐ - Hull Identification Number (HIN) Investigation Report, Form OS/SS-10A (if applicable).

# Attachment K:

## Debris Load Ticket

NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION–DIVISION OF SOLID AND HAZARDOUS WASTE

## SOLID WASTE ORIGIN AND DISPOSAL FORM

**A. Transporter Section**  *(To be completed by the Transporter prior to transport to the disposal site)*

1. Name of Registered Transporter:

2. NJDEP Registration No.:

3. Type of Transporter Registration: (Check One) ☐ A-901 Licensed   ☐ Registered self-generator   ☐ Registration Exempt   4. Waste Self-Generated: (Check One) ☐ YES   ☐ NO

Phone No.

5. Name of LESSOR if the solid waste vehicle is leased:

| 6. Decal No. | Type | License Plate No. | Capacity | Leased – Yes or No |
|---|---|---|---|---|
| | Cab or Single Unit | | | |
| | Container | N/A | | |
| | Trailer | | | |

7. A.  Waste Types (Please circle)
ID 10   ID 13   ID 13C   ID 23
ID 25   ID 27   ID 27A   ID 27I
Other:

B. Source Separated Recyclables: (Please circle)
Paper / Corrugated / Glass / Metal / Plastics
Concrete / Asphalt / Wood / Yard Material
Other:

8. Transporter to complete waste origin information.

| Municipality (ies) | County(ies) | State | % of Total Load |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

\* Sending Facility: *(If solid waste is transported from a solid waste intermodal, transfer, or material recovery facility, list the facility name in the Municipality column, ID # in the County column and the State in which the sending facility is located in the State column.)*

9. Date Waste Collected:

10. Transporter's Certification: *I CERTIFY THAT THE INFORMATION PROVIDED ON THIS FORM IS TRUE TO THE BEST OF MY KNOWLEDGE.*

PRINT DRIVER'S NAME          SIGNATURE          DATE

**B.  Disposal Destinations**

11. Final Disposal Facility Name & State (Transporter Completes 11 & 12):

12. Non Hazardous Manifest # or Bill of Lading # or Pull Ticket #:

13. In State weigh location (Weigh master completes 13 through 16):

14. GROSS WT.:          NET WT. *(IN STATE DISPOSAL ONLY):*          15.  SCALE TICKET No. *(IN STATE DISPOSAL ONLY):*

16. Weigh master's Certification:  *I CERTIFY THAT THIS FORM HAS BEEN COMPLETED BY THE REGISTERED TRANSPORTER IDENTIFIED ABOVE, AND THAT THE GROSS WEIGHT FIGURE IS TRUE AND ACCURATE FOR LOADS GOING OUT OF STATE.*

SIGNATURE:          DATE:

**C.  In State Disposal Facility Section**  *(To be completed by facility operator for loads disposed of in State only)*

17. New Jersey Receiving Facility Operator Certification:  *I CERTIFY THAT THIS FORM HAS BEEN COMPLETED BY THE REGISTERED TRANSPORTER IDENTIFIED ABOVE, AND THAT THE WASTE AS IDENTIFIED BY THE TRANSPORTER IS PERMITTED TO BE DISPOSED OF AT THIS FACILITY*

Receiving Facility Permit or ID#:          DATE          TIME          OPERATOR'S STAMP OR SIGNATURE

## Instructions for completing NJDEP Solid Waste Origin And Disposal Form

1. **Name of Registered Transporter and Phone Number:** The transporter must use the registered trade name of the transporter as identified on the NJDEP Solid Waste Transporter Registration along with the appropriate telephone number (including area code) of the company. Nicknames, aliases and abbreviations are not acceptable.

2. **NJDEP registration No.:** The correct NJDEP Solid Waste Transporter Registration Number must be filled out. This number appears on the registration certificate which must be carried with the vehicle.

3. **Type of Transporter Registration:** The appropriate box must be checked depending on whether the transporter is licensed, is a self generator exempted from licensing requirements, or the vehicle is not subject to NJDEP registration requirements.

4. **Waste Self Generated:** The appropriate box must be checked to disclose whether the waste was self generated by the entity performing the transportation.

5. **Name of LESSOR if the solid waste vehicle is leased:** The name of the lessor as indicated on the lease must be filled in if the vehicle is leased. The lease must be carried in the registered vehicle.

6. **Decal No., Type, License Plate No., Capacity, and Leased:** The decal number must be filled in for the appropriate type of registered equipment (i.e. container, trailer, cab, etc.). The License plate must also be filled in for the appropriate equipment along with the capacity (i.e. 30 cubic yard container). Yes or No must be filled in next to the appropriate type of equipment to indicate if it is leased.

7. **Waste Types and Source Separated Recyclables:** The transporter must indicate the type(s) of waste being transported by circling the appropriate waste types. An example of "other" would be non hazardous bulk liquid (type 72) for example. If a load consists of source separated recyclables the transporter must circle the appropriate material. If the load consists of more than one co-mingled type of recyclable, "co-mingled" must be indicated under the "Other" section along with the approximate percentages (i.e. co-mingled paper 25%, metal 50%, plastics 25%)

8. **Municipality, County State, % of Load:** The transporter must identify the waste origin by municipality, county, and state along with the respective percentage of each waste origin. In the event waste is transported from one solid waste facility to another (for example from a transfer station to a landfill for disposal) the transporter must indicate the sending facility's name in the municipality column, the facility permit # in the County column, and the State in which the sending facility is located in the State column, in addition to the waste origin(s). The percentage of waste sent from a single solid waste facility such as a transfer station should be recorded as 100%.

9. **Date Waste Collected:** The transporter must fill in the actual date the solid waste was collected.

10. **Transporter's Certification:** The driver representing the transporter must print and sign his/her name and date to certify the information in the Transporter Section was completed accurately.

11. **Final Disposal Facility Name & State:** The transporter must fill in the final disposal facility name and State in which the facility is located.

12. **Non Hazardous Manifest # or Bill of Lading # or Pull Ticket #:** The transporter must identify the appropriate manifest or bill of lading number for loads being transported for out of State disposal. The pull ticket number must be recorded for all loads where such a document is generated.

13. **In State weigh location:** The weigh master must complete the location of the weighing facility. For most instances of in State disposal this is the same location as the disposal facility, however in cases involving loads being transported out of State, the weigh location may be designated to be a location other than a disposal facility.

14. **Gross Wt. And Net Wt.:** The weigh master must complete the gross weight for all vehicles transporting waste and recyclables into solid waste facilities within this State. The gross weight must also be completed for all loads destined for out of State waste disposal facilities. The net weight must be recorded for all loads being disposed of in this State.

15. **Scale ticket #.** The weigh master must record the appropriate scale ticket # generated for loads received for disposal within this State.

16. **Weigh master's Certification:** The weigh master must certify the information he or she recorded is accurate.

17. **New Jersey Receiving Facility Operator Certification:** The person responsible for recording information for loads received at New Jersey solid waste facilities must fill in the facility number the date and time and stamp or sign the form to certify the form was completed by the transporter and that the waste identified by the transporter is permitted to be accepted at the facility for disposal.

Failure to carefully follow these instructions in accurately completing the Solid Waste Origin and Disposal Form can lead to enforcement action including penalties.

Waste Type ID 10 = municipal solid waste
Waste Type ID 13 = bulky solid waste
Waste Type ID 13C = construction & demolition debris
Waste Type ID 23 = vegetative waste
Waste Type ID 25 = animal and food processing waste
Waste Type ID 27 = dry industrial waste
Waste Type ID 27A = asbestos containing waste
Waste Type ID 27I = incinerator ash

# Attachment L:

## Load Capacity Estimator



# Attachment M:

## NJDEP Debris Removal Planning Sheet

## NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION
## EMERGENCY DEBRIS PLANNING FACT SHEET

Recent natural disasters, such as Hurricane Irene, the October 2011 Nor'easter, and the June 2012 Derecho, have challenged New Jersey municipalities and counties to safely and timely collect, stage, and transport offsite the large amount of vegetative and waste debris generated by these events. These and other recent disasters point out the need for local and county agencies to review regularly and revise, if necessary, their emergency debris management plans.   The Department believes all debris management plans at a minimum should address the following areas:

- General Debris Handling and Waste Prioritization
- Pre-Approved Temporary Staging Areas for Vegetative and Waste Debris
- Emergency Debris Removal & Transportation Contracts
- Communications and Information Resources for local officials, residents & businesses
- Personnel Training

In addition to the information provided below, FEMA has numerous municipal debris removal guidance documents at the following web site:
http://www.fema.gov/government/grant/pa/debris_main.shtm

## A.  General Debris and Waste Handling & Prioritization

Depending on the severity of the disaster, it will not be possible to address the pickup and disposal of all generated debris in a timely manner in addition to regular garbage pick up activities.  Every municipal and county debris management plan should, therefore, focus first on clearing the debris that hinders immediate lifesaving and emergency response actions and that poses an immediate threat to health and safety.   Once such debris is addressed, other debris can be removed, segregated, temporarily staged (if necessary), and then transported to a disposal facility. County/Municipal debris management plans should consider the order in which this non-emergency waste will be collected and alert residents of any expected delay in garbage collection (see also "Garbage Delay Fact Sheet included).

Residents need to be advised that waste materials should be separated by type to facilitate prompt removal.  It is especially important to properly separate out and bag putrescible materials (for example, food wastes and other waste that cause odors and/or attract insects, rodents and other animals) so that they may be picked up on a priority basis.  Additionally, household hazardous waste and e-waste (for example TVs and computers) must be separated from other wastes so that they may be handled in an environmentally safe manner.  Lastly, waste and debris should not be placed in the road, block mailboxes, electric and water meters, fire hydrants, storm drains, or areas prone to flooding.  Residents should also be made aware that during the debris removal process they may experience increased traffic and noise.

Waste separation at the debris management area is important to minimize odors and rodent or other vector problems, and to protect the workers and the public who may come in contact with waste materials. Coordination with the county Office of Emergency Management (OEM), county

household hazardous waste program, and county & local health departments is essential and all parties should participate in the planning process.

In addition, materials which can be recycled such as tree branches, certain construction and demolition debris, and white goods should be separated from those that must be disposed of as waste. This will facilitate the flow of these materials to recycling facilities and reduce the burden on solid waste disposal operations. Separation of waste by type may also reduce costs, as generally waste disposal costs more than recycling.

## B. Debris Management Areas

Municipalities and counties should identify in advance of an emergency appropriate debris management areas that can be used to stage and/or process excess materials. Please be aware that the use of such areas must comply with FEMA requirements in order to receive FEMA reimbursement, including NJDEP approval of those areas. NJDEP has a pre-approval process to assist towns and counties to select the appropriate sites in advance of emergencies, which is explained in the next section, "Obtaining Pre-Approval of Debris Management Areas." Identification of debris management areas should be appended to both the municipal and county OEM planning documents for reference. This will allow post-emergency/recovery clean-up efforts to begin early and proceed in an efficient manner. For towns with no appropriate areas for managing debris or towns with small populations, it is essential to identify appropriate regional debris management areas that can be used and agreed upon by all parties before an emergent situation arises.

Debris management areas should only be located at sites which can be secured and under no circumstance should they be located within a flood hazard area. Prior approval from the local Office of Emergency Management, the local Fire Marshall, and the Pinelands Commission, if applicable, are necessary for a debris management area to be approved by the Department. Additional considerations for siting a debris management area are as follows:

-Putrescible solid waste debris, some types of construction and demolition debris (such as wallboard, gypsum, and sheetrock),hazardous waste debris, including household hazardous waste, and e-Waste must be stored on a paved area or in containers. The entire debris staging area does not have to be paved, but the areas for staging/storing these types of solid waste and hazardous waste debris must be paved;

- Vegetative debris, white goods (ie refrigerators, washers and dryers), masonry debris (concrete, brick, and block), and construction and demolition wood waste do not need to be stored on a paved area;

- Avoid managing waste in other environmentally sensitive areas and historic/archeological sites;

- Avoid choosing debris management areas near residences, schools, and hospitals. Local tolerance of impacts from noise, dust, and traffic significantly diminish over time;

- Use public lands first to avoid costly leases. Use private land only if public sites are unavailable;

- Look for sites with good ingress/egress to accommodate heavy truck traffic and that have a site configuration that will allow for an efficient layout;

- Consider siting a debris management area on a closed municipal landfill, if available. Please note that additional approvals may be necessary from the Bureau of Landfills & Hazardous Waste Permitting; and

- Conduct a baseline environmental survey before debris operations begin so the site can be returned to those conditions at the conclusion of the debris operations. The baseline environmental survey should document physical features, historic significance, and environmental sampling (soil and water). Digital photos can be helpful and are recommended.

## C. Obtaining Pre-Approval of Debris Management Areas

The temporary storage of debris (waste and vegetative) may not be conducted without approval from the Department's Solid and Hazardous Waste Management Program. Therefore the DEP recommends seeking an approval for a debris management area in advance of a storm event.

To obtain a pre-approval of a debris management area, the following information must be provided:

- Location of the site, including street address and what the site is normally used for
- Certification that the areas used to stage/store putrescible solid waste debris, wallboard, gypsum, and sheetrock, and hazardous waste debris (including household hazardous waste and e-waste) are paved. Areas used for staging vegetative debris, white goods, masonry debris, and construction and demolition wood waste do not need to be paved.
- Certification that the Debris Management Area is secured and not located within a flood hazard area or a Pinelands Management Area. If the staging area is to be located within a Pinelands Management Area, prior approval from the Pinelands Commission must be obtained.
- Anticipated height of debris storage and maximum volume of storage area
- A description of the processing activities that will be conducted at this site. Processing (ie chipping and shredding) of vegetative debris is permitted at debris management areas provided all processing equipment has a valid Air Pollution Control Permit and the municipality or county has a dust management plan containing measures to be implemented if dust is generated during processing. Processing, with the exception of non-mechanized processing systems, of solid waste or household hazardous waste is not permitted at debris management areas. Removal of refrigerants from white goods is allowed at debris management areas, in accordance with applicable regulations.
- Documentation of endorsement by the county Office of Emergency Management
- Approval by the local Fire Marshall

- For properties not owned by the county or municipality, documentation of an agreement with the property owner for use of the property.
- Contact information for the individual responsible for the debris management area

The above information should be sent to the following address:

Mary Jo Aiello, Director
Solid and Hazardous Waste Management Program
P.O. Box 420
Mail Code 401-02C
Trenton, NJ 08625
(609) 633-9839 (fax)

Use of a debris management area can only occur when both an Executive Order has been signed by the Governor declaring a state of emergency in the county in which the debris management area is located and an Administrative Order has been signed by the Department's Commissioner allowing the relaxation of certain Solid Waste Management Rules.  Without these documents, use of a debris management area constitutes an illegal solid waste disposal facility under the Solid Waste Management Rules and subjects the county or municipality to appropriate enforcement action.

Upon signature of the above documents, counties and municipalities with pre-approved debris management areas may begin using them to manage debris generated by the emergency in accordance with their Department approval. They need only notify the Department prior to starting debris management operations at the site. This notification may take the form of an e-mail to solidwasteemergencies@dep.state.nj.us or a fax to (609) 984-0565 *and must include* an estimate of the length of time the debris management area will be in operation.  Since time is of the essence during an emergency event, there is no need to wait for acknowledgement of your notification from the Department prior to using a pre-approved debris management area.  The Department will follow-up in a timely manner with each county or municipality that provides a notification.

If a county or municipality does not obtain pre-approval of a debris management area and needs to temporarily manage debris subsequent to an emergency event, the above information must be submitted to the Department and written approval must be obtained <u>prior</u> to the debris management area being utilized.  Under no circumstances can debris be managed at a site without Departmental approval.

Due to the nature of putrescible solid waste, pre-approved debris management areas used for the storage of putrescible solid waste may only be operated for an initial period of 7 days. Additional operational time beyond the initial 7 day pre-approval may be requested of the Department.

Debris management areas for vegetative debris, white goods, masonry debris, construction and demolition wood waste, e-waste, and hazardous waste may be operated under a pre-approval for a period of 60 days.   At the end of the 60 day period, all debris and waste must have been

removed to an appropriate recycling or disposal facility.   If additional storage time is required, approval from the Department must be obtained prior to the expiration of the 60 day pre-approved period.  Debris management areas that are allowed to operate beyond the initial 60 day pre-approved period may be required to implement storm water control measures such as containerizing certain wastes, covering non-containerized wastes, and containment and perimeter controls (i.e. sediment fencing, hay bales, absorbent booms, etc.) for the entire site.

### D.  Debris Removal & Transportation Contracts

It is often necessary during an emergency that generates significant quantities of debris to utilize additional transportation equipment and/or debris removal services.   A municipality or county should inventory its governmental vehicles that can be put into service to assist in debris removal and disposal.  Additionally, contracts with emergency debris contractors for removal services should be reviewed and amended if necessary to ensure that such services will be available, especially if the emergency event is regional in nature. Contracts covering waste transportation should only be made with companies that use or are licensed solid waste transporters. This is not required for contracts for recyclable materials transport.  Lastly, it is important to know if the contractor is also obligated to assist other municipalities or counties to determine if they will have adequate capacity to respond to all calls for assistance during an emergency.

The Department maintains a list of licensed solid waste transporters that is available on the Licensing and Registration web site http://www.nj.gov/dep/dshw/hwr/regislic/lru.htm.  Choose the report titled "Report - Registered Solid Waste Transporters and Capabilities" from the drop-down listing of available resources at the bottom of the web page.

### E.  Communications and Information Resources

Municipal/county debris management plans should address how communication between all levels of government and emergency responders will be handled and where additional information can be obtained.

It is especially important to consider how information will be shared with residents during the initial stage of debris response.  Such communication is necessary to alert residents of possible delays in garbage collection and the need for separation of and proper placement of debris.

The Department's Solid and Hazardous Waste Management Program maintains an e-mail account for solid and hazardous waste emergencies.   Any correspondence with the Solid and Hazardous Waste Management Program can be conducted via that e-mail account at solidwasteemergencies@dep.state.nj.us.  All official correspondence from the Department concerning relaxation of rules during an emergency event will be sent out from this e-mail address.  In addition, all information regarding an emergency event will be posted on the Department's web page at www.state.nj.us/dep.

**F. Personnel Training**

All personnel conducting debris operations must be trained, at a minimum, on items such as identification of hazards and proper use of personal protective equipment.  Additional training specific to the job duties of all personnel must be conducted to ensure the health and safety of the staff and residents using the site.

**G. Recordkeeping**

To be reimbursed by FEMA you must maintain records of the amount of debris removed and the facilities it was sent to.   FEMA will not reimburse without information regarding the destination facilities, including identification numbers.  In addition, you must be able to provide FEMA with documentation of approval from the Department for your debris management operations.

<u>Electronic Questions and Answers</u>

<u>General</u>

*Question: In order to price the jobs effectively my firm would like to have our project manager drive around and get a visual of the debris. How might a potential bidder obtain a permit to get into the affected areas to assess the damage?*

Answer: Bidders should contact Jonathan Wallace, Division of Purchase and Property, at 609-341-2976 to request access to restricted areas from the State Police.

*Question: Are there any TDMA sites identified yet? Or, will this be the contractor's obligation to identify and receive permission to use prior to start of work?*

Answer: No TDMA sites for waterway debris removal have been identified as of this time. The Department of Environmental Protection (NJDEP) has identified some potential sites along the coast.

*Question: How far offshore do the debris removal zones extend?*

Answer: This RFQ does not apply to off-shore areas.

*Question: Permits should be the responsibility of the Owner. Will this be changed?*

Answer: No, this will not be changed.

*Question: What are the expected distances from the dredge areas to the placement areas for purposes of pricing logistics?*

Answer: The NJDEP anticipates that most sand will be dredged from back bay areas and will be placed on beaches. In those cases, the distance between dredge sites and placement areas likely will be less than 1 mile. If the NJDEP selects inland areas for placement of sand, then the maximum distance would be approximately 3 miles.

*Question: When does the sand material become the property of the Owner?*

Answer: The State of New Jersey owns all storm-related debris in waters of the State.

*Question: Is this a prevailing wage contract? If so, please provide the wage rates.*

Answer: No, this is not a prevailing wage contract.

*Question: Please define damage to private or public property that the Contractor shall be responsible for as a result from its performance of work pursuant to this Contract. If existing structure were damaged by Sandy, then how is the existing damage going to be documented in order for the Contractor to avoid being penalized for previous damage?*

Answer:  The State's debris monitor and/or Project Manager will document conditions prior to debris removal.

*Question:  Please provide the approximate designated water depths for the waterways inside the various debris removal zones.*

Answer:  Prior to the storm, Barnegat Bay depths ranged from less than 1 foot to over 30 feet, with the majority of the Bay in the range of 3 to 8 feet.  The NJDEP estimates that prior to the storm, over 80% of the Bay was less than 5 feet deep.

The State has not designated water depths for either dredging or debris removal.  Debris removal and dredging will comply with FEMA eligibility requirements, including any requirements relating to depth.

*Question:  How soon after submitting a proposal will the Contractor be notified if they have been selected to submit a best and final proposal?*

Answer:  The State cannot provide a firm date by which it may select Bidders to submit Best and Final Offers.

*Question:  Are there any requirements / restrictions on the type of dredge equipment utilized?*

Answer:  Use of side-casting dredge equipment is prohibited unless approved in advance in writing by the NJDEP.  For dredge equipment that is typically used in New Jersey, please refer to the NJDEP's Dredging Technical Manual referenced in Paragraph 3.6.6 of the RFQ.

*Question:  Who will make the final determination of what debris is removed?*

Answer:  The State of New Jersey shall make such determinations in collaboration with the Contractor, the debris monitor, FEMA and the State's Project Manager.

*Question:  What is the process for determining which debris is removed in which manner?*

Answer:  The process for determining which debris will be removed will be established by the State's Project Manager.  The Contractor is responsible for determining the method and manner of debris removal operations.  See Paragraph 3.1 of the RFQ.

*Question:  What is the Contractor's responsibility for identifying debris to be removed?*

Answer:  The Contractor's responsibility for identification of debris is set forth in the RFQ at paragraph 3.6.1 (General Requirements).

*Question:  When will the Contractor be notified of the location of all the debris to be removed?*

Answer:  Once the Contractor is given notice to initiate work within a Zone the Contractor will mobilize to the Zone and assess waterway debris utilizing, among other things (e.g., shorelines surveys, side-scan sonar) information available in the RFQ and the NJDEP's Waterway Debris Resources webpage, the Contractor will present the State's Contract Manager with a plan for debris removal in the Zone.  The Contractor is responsible for identifying debris to removed.

*Question:  The RFQ states that "The State Contract Manager will issue an initial task order and provide the contractor with a prioritized list of debris to be removed by Zone."  Please clarify.*

Answer:  The State Project Manager or the State Contract Manager will issue an initial task order and will direct the Contractor in debris removal priorities.

*Question:  Please state the process in which the Contractor receives final acceptance for debris removal and sand screening / placement items.*

Answer:  See Section 3.6.18 of the RFQ (page 24) – Verification of Debris Removal.

*Question:  Will there be a variation in estimated quantities clause?*

Answer:  The State is not estimating quantities as part of this RFQ.

*Question:  Can you specify the navigable waterways in which the debris removal Contractor will be operating?*

Answer:  The RFQ is not limited to waterways that used for particular purposes.

*Question:  Can the resumes be counted as required documents instead of being counted as part of the 50 pages of the proposal?*

Answer:  Resumes can be included in an Appendix and will not count toward the 50 page limit.

*Question:  Can you provide a current list of Approved NJDEP offloading sites?*

Answer:  The NJDEP has not yet approved any Offloading Sites.  The State is currently focusing its effort on publicly-owned boat ramps and marinas as Offloading locations. Information on publicly-owned boat ramps and marinas is available on the NJDEP Waterway Debris Resources website at:  http://www.nj.gov/dep/special/hurricane-sandy/wwdebris.htm

*Question: Can you provide the total square miles or acres for each zone and miles of total shore line?*

Answer: Estimated acreage of each Zone is set forth below. These numbers are only estimates and are subject to change.

| Zone Name | Zone Number | Acres |
|---|---|---|
| Metro | 1 | 18,777 |
| Raritan Bay | 2 | 33,087 |
| Monmouth County Tidal Streams | 3 | 2,103 |
| Barnegat Bay North | 4 | 4,758 |
| Mid Barnegat Bay A | 5 | 6,073 |
| Mid Barnegat Bay B | 6 | 24,809 |
| Southern Barnegat Bay | 7 | 12,927 |
| Little Egg Harbor A | 8 | 14,597 |
| Little Egg Harbor B | 9 | 20,346 |
| Great Bay | 10 | 19,295 |
| Southern Zone | 11 | 60,875 |

The areas were calculated by GIS. In estimating area, the following delineations were made:

Zone 1:  For purposes of estimating area, the NJDEP computed the area of inland waterways.

Zone 2:  For purposes of estimating area, the NJDEP drew a random boundary from the northern tip of Sandy Hook due west.

Zone 3:  For purposes of estimating area, the NJDEP computed the area of the Manasquan River watershed.

Zones 4-10:  For purposes of estimating area, the NJDEP computed the area of inland waterways for each Zone.

Zone 11:  For purposes of estimating area, the NJDEP computed the area of inland waterways on the eastern shore, the area of inland waterways along Delaware Bay and the area from the Delaware Bay coast line to a distance of 1000 feet into the Bay (randomly selected).

*Question: The RFP states removal of debris from coastal and tidal waters, does this include removal of debris from the Atlantic side of the zones, and if so, how far out from the coast line?*

Answer: The RFQ does not include removal of debris from the Atlantic Ocean.

*Question:  There are a number of regulated areas that will be encroached upon to facilitate the debris removal (CAFRA, Coastal Wetlands, Waterfront Area, etc.), can we assume that all of the debris removal work (including temporary staging areas) will be performed using a combination of Emergency Permits or has that requirement been waived by the State?*

Answer:  The NJDEP will issue emergency permits.

*Question:  If Emergency Permits are to be used, will the selected contractor be required to file the "post issuance" permit applications?*

Answer:  Yes.

*Question:  Which of the many Bureaus at NJDEP will be responsible for reviewing and approving the plan for avoiding and minimizing impacts/injury to natural resources?*

Answer:  Office of Dredging and Sediment Technology (with input from the Division of Fish & Wildlife and State Historic & Preservation Office), Division of Land Use Management (Bureau of Tidelands Management), and Solid & Hazardous Waste Program.

*Question:  Are the sand berms on the beaches in Ortley Beach, Seaside Heights, Seaside Park, Mantoloking, Lavallette, and the like, included in this contract?  If so, what are you going to do with all the sand?  Will it be screened and placed back on the beach?  If it's part of another contract, which one?*

Answer:  It is not clear what the bidder is asking.  Removal of sand from beaches is not included in this RFQ.

*Question:  What will be done with the sand washed up on private property?*

Answer:  This RFQ does not apply to removal of terrestrial debris.

## Section 1

Reference: Paragraph 1.1, Pages 2-4
Issue: On pages 2-3 the RFQ states, "Zones are described below in order of decreasing priority." Then the zones are listed as follows: North Region- Zones 1 and 2; Central Region- Zones 3, 4, 5, 6, and 7; and South Region- Zones 8, 9, 10, and 11. On pages 3-4 the RFQ lists Priorities and groups Zones as follows: Priority A- Zones 4, 5, 8, and 9; Priority B- Zone 6; Priority C- Zones 2, 3, and 7; and Priority D -Zones 1, 10, and 11. These two descriptions seem to conflict with each other.

*Question: Can the State please clarify the priority of zones?*

Answer:  The description of the Regions and Zones set forth on pages 2-3 lists the zones in geographical order only (north to south).

The description of the Zones set forth in the list on pages 3-4 lists the Zones in order of priority.

Reference: Side Scan Sonar.
Issue: Utilization of this equipment in areas that are relatively small in size.

*Question: Will the State accept an alternative "daily rate" for Sonar Vessels in areas that are "small" i.e., 500 acres or less?*

Answer: No.

Reference: Side Scan Sonar
Issue: Progress

*Question: Will there be a "waiting period" after the waters have been through the Side Scan Sonar process before vessel(s) can be removed?*

Answer: The State has not designated a waiting period.

Reference: Side Scan Sonar
Issue: Post construction sonar survey

*Question: Will a post construction sonar survey be required; and if so are we to include it in our yardage price?*

Answer: See Paragraph 3.6.18 of the RFQ.

Reference: N/ A
Issue: Priority

*Question: Will the State set "Priority areas" for vessel removal operations? If so how will this be accomplished, i.e., targets, grids, waterways?*

Answer: The State's debris removal priorities are set forth in Paragraph 1.1 of the RFQ. The State has not established priorities for types of waterway debris removal, but the State Project Manager may do so in collaboration with the NJDEP and the Contractor after the contract is awarded.

Reference: Pricing
Issue: Partially submerged vs. fully submerged vessels

*Question: It appears the expectation is for the Contractor to not differentiate a price between partially submerged and fully submerged vessels, is this correct?*

Answer: Yes, that is correct.

Page **6** of **14**

Reference: Private Property
Issue: Vessels stranded on private property.

*Question: In the 11 zones identified, what percentage of the waterway debris, wreckage, vessels & vehicles is located on privately owned submerged land?*

> Answer:  At this time, the NJDEP has not quantified the percentage of waterway debris that is located in waters of the State that overlies lands that the State has transferred to private parties pursuant to riparian grants.  State law allows the State to remove abandoned vessels from public land or waterways or private property.  N.J.S.A. 12:7C:9(b)(1).

Reference: Private Property
Issue: Right of Entry

*Question: What methods will NJDEP use to inform the contractor of privately held submerged land parcels that cannot be entered?*

> Answer:  To the extent that this is required, the State Contract Manager or State Project Manager will notify the Contractor in writing.

Reference: Private Property
Issue: Right of Entry

*Question: Does the NJDEP have approved eligibility for removal and disposal of debris, wreckage, vessels and vehicles from FEMA for all privately owned areas of submerged land?*

> Answer:  State law allows the State to remove abandoned vessels from public land or waterways or private property.  N.J.S.A. 12:7C:9(b)(1).  With respect to other types of waterway debris, the State does not have approved eligibility.

Reference: Private Property
Issue: Right of Entry

*Question: Will the NJDEP secure Right of Entry/Hold Harmless forms from all private owners of submerged land in the 11 zones before work commences?*

> Answer:  State law allows the State to remove abandoned vessels from public land or waterways or private property.  N.J.S.A. 12:7C:9(b)(1).  With respect to other types of waterway debris, the State is working with FEMA to ensure that the State has authorization to enter privately-owned submerged tidelands.

Reference: Private Property
Issue: Hold Harmless

*Question: Will the awarded contractor(s) be included in the Hold Harmless document from actions other than negligence brought by private owners of submerged lands in the 11 zones?*

      Answer: No.

Reference: Private Property
Issue: The zones extend inland to the extent of the FEMA produced New Jersey Interim High Resolution Surge Areas, which will include many thousands of privately held land parcels.

*Question: Does the NJDEP intend for this contract to remove all debris and wreckage from the included privately held parcels and if so will the NJDEP secure the Right of Entry/Hold harmless forms from all private land owners prior to the commencement of work?*

      Answer: The State intends to remove waterway debris that is Eligible Debris (as defined in the RFQ). State law allows the State to remove abandoned vessels from public land or waterways or private property. N.J.S.A. 12:7C:9(b)(1). With respect to other types of waterway debris, the State is working with FEMA to ensure that the State has authorization to enter privately-owned submerged tidelands.

*Question: Referring to RFQ, page 10, Section 3.1; the State seems to be looking for cost estimates after tasking, which contradicts the intent of the Cost Proposal Form. Please clarify? Would the State consider an alternative price proposal which provides daily or hourly equipment and personnel rates?*

      Answer: Bidders are to bid the prices on the attached Price Proposal Form. When the State issues a Task Order for a prioritized list for debris removal within a Zone, the contractor will provide a cost estimate for the actual work based on its bid prices.

      No, the State is not seeking hourly equipment or personnel rates. Payments based on time and material costs are limited to work performed during the first 70 hours of actual work following a disaster event.

Reference: Section 3.2
Issue: Zone Operations Manager (ZOM)

*Question: Does the state wish to have the Contractor(s) assign a separate ZOM to each of the 11 zones?*

      Answer: Yes.

Reference: RFQ Section: 3.6.5 and subsections, Pages 16-17
Issue: Section 3.6.5 lists debris categories as Vegetative Waste, Construction and Demolition ("C&D") Waste (Type 13C/Type 27A), White Goods/Household Appliances (Type 13), Scrap Metal, and E-waste. However, the subsections to RFQ Section 3.6.5 (i.e., 3.6.5.1, 3.6.5.2, 3.6.5.3, 3.6.5.4, and 3.6.5.5) don't match. They are as follows: 3.6.5.1 Vegetative Waste, 3.6.5.2 Construction and Demolition r'c&D") Debris, 3.6.5.3 Aggregate, 3.6.5.4 White Goods/Household Appliances, and 3.6.5.5 Scrap Metal.

*Question: Are their requirements missing from the RFQ that must be addressed in our proposal response to this section (e.g., E-waste)?*

> Answer:  The State has added Section 3.6.9 to the RFQ to include E-waste and has renumbered the following sections in the RFQ.  In addition, a price line has been added to the revised Price Proposal Form to include E-waste.

## Attachment A (Price Proposal Form)

*Question:  Waterway debris can be removed by two methods which carry significant different costs, either by land based equipment or by water based equipment. Would you consider breaking the line items down to account for these different operations?*

> Answer:  No, Bidders must bid the price lines in the Price Proposal Form.

Issue: Sand Collection, Line 11

*Question: What method of dredging is preferred for the removal of displaced sand from the waterway?*

> Answer:  Use of side-casting dredge equipment is prohibited unless approved in advance in writing by the NJDEP.  Other than that prohibition, the State has no preference for dredging methods.  Dredging methods utilized must be cost-effective.

Issue: Sand Collection, Line 11

*Question: Will the units of measure be calculated by Side Sonar Scanning (Lines 25-29), volumes showing before and after scan, for this line item?*

> Answer:  For sand that is being placed on a beach, the volume will be measure in cubic yards (CY) and will be determined based on actual physical measurements.  For sand that is pumped into marsh areas, the volume will be measured in CY and will be determined by before/after side-scan sonar.

*Question:  Price Proposal Form, Line 11- Sand Collection - How is sand collection measured and calculated for payment?*

Answer:  The sand collection is measured by cubic yards and miles.

Question:  How does a contractor propose "all-inclusive, firm-fixed" pricing for debris that could be in significantly different water depths or marshlands within any particular zone?

Answer: Bidders should refer to the documents on the NJDEP Waterway Debris Resources website at:  http://www.nj.gov/dep/special/hurricane-sandy/wwdebris.htm and answers to relevant questions posted herein.

## Attachment F (TDMA Operation Guidelines)

Reference: TDMA Guidelines (Attachment F, aka Attachment 13)
Issue: Standards and/or Protocols. There are no specific protocols or standards mandated for soil or groundwater sampling, groundwater-monitoring wells or hazardous waste, ash, fuel storage areas sampling/monitoring.

*Question: What are the specific protocols and/or standards that are to be followed according to the NJDEP for the abovementioned sampling/monitoring operations?*

Answer:  If groundwater and soil testing is required, testing shall comply with NJDEP technical guidance at http://www.state.nj.us/dep/srp/guidance.

*Question:  Can a list of interested bidders be provided?*

Answer:  The State will not know the bidders until the proposals are submitted.

*Question:  What is the expected timeframe for this contract to be awarded?*

Answer:  The State cannot provide a specific date for anticipated contract award but the State intends to award the contract(s) as soon as possible after the proposal submission date.

Reference: Pricing Issue: Partially submerged vs. fully submerged vessels

*Question: It appears the expectation is for the Contractor to not differentiate a price between partially submerged and fully submerged vessels, is this correct?*

Answer:  Yes, this is correct.

*Question:  Referring to RFQ, page 10, Section 3.1; the State seems to be looking for cost estimates after tasking, which contradicts the intent of the Cost Proposal Form.  Please clarify?*

Answer:  Bidders are to bid the prices on the attached revised Price Proposal Form. When the State issues a Task Order for a prioritized list for debris removal within a Zone, the contractor will provide a cost estimate for actual work based on its bid prices.

*Question:  Would the State consider an alternative price proposal which provides daily or hourly equipment and personnel rates?*

Answer:  No, Bidders are referred to the answer to the previous question.

Reference: Section 3.2
Issue: Zone Operations Manager (ZOM)

*Question: Are resumes required for Zone Operations Manager(s) and if so will the resumes count against the 50 page restriction?*

Answer:  Bidders should submit a resume for the Zone Operations Manager(s) under Section 4.7 of the RFQ.  Any resumes submitted by a Bidder can be placed in an Appendix will not count in the 50 page limit restriction.

## Section 8

*Question:  On page 35 of RFQ, Section 8.3 – State Project Manager – Is this a possible typo? Should first and second paragraphs be the State **Project** Manager rather than the State **Contract** Manager?*

Answer:  Yes, this is an error.  The first and second paragraphs of Section 8.3 should refer to the State Project Manager.

## Attachments

Issue: The index of attachments key does not match the actual letter of the specific attachment in all cases.

*Question: Can you supply a revised Index of attachments that corresponds exactly to each specific attachment?*

Answer:  The State will provide a revised Index of Attachments with corrected references to the specific documents.

*Question:  Within the RFQ reference is made to Attachment A "Price Proposal Form", but when I downloaded the form from your website, The Price proposal form is labeled as "Attachment 1". Is this the correct form which consists of just one page?*

Answer:  The Price Proposal Form labeled "Attachment 1" is the same Form as "Attachment A."  The State is providing a revised Index of Attachments.

*Question:  The Price proposal form appears to be customized for previous land based type of debris removal contracts but doesn't appear to allow for a contractor to be all encompassing in his potential pricing that might be experienced when assigned a task order. Would the State*

Page **11** of 14

*consider throwing out this particular form and create a more detailed form or eliminate this requirement all together or allow the contractor to propose his own form that captures costs of his owned or leased equipment?*

      Answer:  No, Bidders are required to use the Price Proposal Form included in the Attachment package.

Issue: Missing Line Items?

*Question: Line Items 1-9 only request rates for removal and transport from the Offload to the Final Disposal location. Did the State inadvertently leave off line items for the removal & transport of vegetative and C&D debris from the water and loading it on a transporter in order to get it from the water to the Offloading location?*

      Answer:  The State is issuing a revised Price Proposal Form including more price lines for removal and transport of vegetative and C&D debris.

Question:  The Price Proposal form does not include any provision for mobilization, demobilization and equipment characterization.  How does a contractor propose pricing for such mobilization, demobilization, and equipment utilization for a presently unknown quantity of work in a large geographic zone?

      Answer: Bidders should refer to the documents on the NJDEP Waterway Debris Resources website at:  http://www.nj.gov/dep/special/huricane-sandy/wwdebris.htm and answers to relevant questions posted herein.

*Question:  Would the State consider an auditable, cost reimbursable, indirect quantity-indirect delivery, level of effort type contract for the efforts contemplated under the RFQ?  Such contract arrangements already exist between the private sector and the U.S. Navy, and the U.S. Coast Guard.*

      Answer:  No, the State will not consider a level of effort type contract for this RFQ.

*Question:  Under the Price Proposal Form, lines #9, "White Goods Removal to Disposal Site" and #10, "Freon Management"; within units, it shows costs required to be proposed on a unit basis.  What is considered as "the unit"?  Absent knowing where the unit is located (i.e. dry, submerged, marshland); how does the contractor propose pricing?*

      Answer:  Bidder is referred to Section 3.6.5.4 of the RFQ defining the types of appliances considered "white goods."  Bidders are to provide pricing for removal from waterways, not dry land.

*Question:  Is attachment 1, Price Proposal Form limited to land transportation costs for lines 1-29, and that all incidental costs will be negotiated separately at the time of a specific task order?*

Answer:  No, Bidders are to bid all-inclusive prices for the quantities noted on the revised Price Proposal Form.

*Question:  Can a contractor only propose pricing for all zones within one or two of the geographic regions?  Is a bid for less than three geographic regions unresponsive?*

Answer:  A Bidder must bid all lines for all Zones or be deemed nonresponsive.

Issue: Line 30 Operation of a vehicle/vessel aggregation site.

*Question: Would the State consider adding to the Unit description "Per day and per unit" i.e. per vessel/vehicle per day as using per day only does not cover the varying requirements based on the number of vessels/vehicles recovered?*

Answer:  No, the State will not adding consider a per day usage description to the revised Price Proposal.

Issue: There is no haul out pricing for any of the line items.

*Question: Will the state consider adding a line item to load and transport from the TDMA to the final disposal site?*

Answer:  Yes, the State is issuing a revised Price Proposal Form.

Issue: Transport sand from TDMA back to beach 3.6.6 SAND Sand that has been determined through analytical testing to be uncontaminated and is otherwise suitable for placement on beaches shall be restored (e.g., screened) by the Contractor to pre-storm beach quality. The Contractor may be directed by the State to transport the sand to a designated beach.

*Question: There is no line item to transport sand from the TDMA back to beach; how will this cost be covered?*

Answer:  Bidder is referred to Price Lines 12 to 15 entitled "Uncontaminated Sand Transport."

*Question:  Price Proposal Form, Measure of Distance - Is the distance just measured for transportation by road, or does this include distance via marine transportation also?*

Answer:  Bidder is referred to the price lines in which the distances noted are defined

*Question:  Price Proposal Form, Verification of Debris Removal - Will there be a line item for Identification of Debris to be removed?*

Answer:  Yes, Bidders are referred to revised Section 3.6.18 of the RFQ and the revised Price Proposal Form for information regarding Pre-Removal Assessment.

Page 13 of 14

*Question:  If TDMA is required, I do not see pricing from offloading site to TDMA, and then from TDMA to final disposal?*

Answer:  The State is issuing a revised Price Proposal Form with additional price lines.

*Question:  On Attachment 1:  Pricing Proposal Form, at the bottom of the page it refers to "Total State price is the single price that bidder would offer, per price line, for all Zones in the State".  I do not see where a column for "single state price" has been added to the price proposal form?*

Answer:  The State has added a column for a "single state price" to the revised Price Proposal From.

*Question:  On the Pricing Proposal Form, line item 1-8, this price is broken down by distance from offloading site to final disposal.  Shouldn't this be from debris location to final disposal?  We have not been given the exact area or length of each zone, therefore we do not know how far the debris will have to travel over the water to the offloading site.  Therefore, line items 1-8 should be total distance the debris has traveled from original debris removal location to final disposal.*

Answer:  Bidder is referred to the revised Price Proposal Form which has the following distance measures:  Offload to TDMA; TDMA to final disposal and Offload to final disposal.

*Question:  Will the pre-sonar services to identify debris be included in this RFP as a required task, and if so, will they be paid by the acre under pricing line items 25-29?  Or does this need to be included in the cubic yard rate for debris removal?*

Answer:  The State is issuing a revised Price Proposal Form with additional price lines for Pre-Removal Assessment.

*Question:  Under pricing line items 25-29, Verification of Debris Removal, will this be paid by the acre?  If this will not be paid by the acre, will it be included in the cubic yard rate for debris removal?*

Answer:  Bidder is referred to the revised Price Proposal Form pricing lines 25-29 in which price per acre is the stated unit.

# FINAL BIDDER CHECKLIST

## Dated January 16, 2013

### RFQ FOR WATERWAY DEBRIS REMOVAL SERVICES
### DUE DATE: FRIDAY, JANUARY 18, 2013 AT 3:00 P.M.

THIS CHECK LIST IS DESIGNED TO HELP A BIDDER PREPARE A COMPLETE, RESPONSIVE PROPOSAL. **IT IS THE BIDDER'S RESPONSIBILITY TO ENSURE THAT ALL REQUIREMENTS OF THE RFQ HAVE BEEN MET.**

| YES | PROPOSAL MUST INCLUDE THE FOLLOWING DOCUMENTATION OR THE PROPOSAL WILL BE DEEMED NON-RESPONSIVE: |
|---|---|
| ☐ | $3,000,000 bid security provided as required in Section 8.3 of the RFQ |
| ☐ | Prices supplied on all price lines in Final Attachment A – Price Proposal Form **Dated January 16,2013** |
| ☐ | Reviewed and Signed Waivered Terms and Conditions for Services Contracts at: http://www.state.nj.us/treasury/purchase/forms/wtermss.pdf |
| ☐ | Completed and signed Ownership Disclosure Form at: http://www.state.nj.us/treasury/purchase/forms/StandardRFPForms.pdf |
| ☐ | Completed and signed Disclosure of Investigations and Other Actions Involving Bidder Form at: http://www.state.nj.us/treasury/purchase/forms/StandardRFPForms.pdf |
| ☐ | Completed and signed Disclosure of Investment Activities in Iran at: http://www.state.nj.us/treasury/purchase/forms/StandardRFPForms.pdf |
| ☐ | Completed Certification of MacBride Principles and Northern Ireland Act of 1989 at: http://www.state.nj.us/treasury/purchase/forms/MacBride.pdf |
| ☐ | Affirmative Action Employee Information Report/New Jersey Affirmative Action Certificate/other AA/EEO evidence at: http://www.state.nj.us/treasury/purchase/forms/AA_%20Supplement.pdf |
| ☐ | Completed and signed Source Disclosure Form at: http://www.state.nj.us/treasury/purchase/forms/sdcert.pdf |
| ☐ | Completed and signed Subcontractor Utilization Plan at: http://www.state.nj.us/treasury/purchase/forms/SubContracting.pdf |
| ☐ | Completed and signed Ch. 51/EO 117 Vendor Certification & Disclosure of Political Contributions at http://www.state.nj.us/treasury/purchase/forms/eo134/c51_eo117_cd_02_10_09.pdf |
| ☐ | Completed and signed Certification of Non-Debarment (Attachment C) |
| **YES** | **THE FOLLOWING DOCUMENTATION MUST BE PROVIDED AT TIME OF CONTRACT AWARD:** |
| ☐ | New Jersey Business Registration Certificate |