UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH PALMISANO, JAY HAJESKI, SEAN WALL, WALTER EVERETT, and MATTHEW MANIBUSAN individually and on behalf of all other similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>CROWDERGULF, LLC, BIL-JIM CONSTRUCTION CO., INC., MAPLE LAKE, INC., R. KREMER AND SON MARINE CONTRACTORS, LLC, ABC CORPORATIONS (1-100), DEF CORPORATIONS (1-500), and JOHN DOES (1-10), et al.,<br><br>*Defendants*.<br><br>BIL-JIM CONSTRUCTION CO., INC.,<br>*Third-Party Plaintiff*,<br>v.<br><br>TOWNSHIP OF BRICK,<br>*Third-Party Defendants* | Civil Action No.<br>3:17-cv-9371 (PGS)(TJB)<br><br>**MEMORANDUM AND ORDER** |

This case is before the Court on Defendants' motion to exclude the testimony of Plaintiffs' damages expert, Kristin K. Kucsma ("Kucsma") (ECF Nos. 116 and 117). The Court has not heard oral argument on these motions.

1

Plaintiffs retained Kucsma to develop a model to assess class damages (Kucsma Report) (ECF No. 116-5).[1]  Kucsma estimates 100 workers for the Municipal Project and 150 works for the State Project.  Kucsma furthers there is "information in the record documents to the Class definition, and including all workers for whom payroll information exists to confirm membership in the class." (ECF No. 116-5, p. 6).  Kucsma notes that "the vast amount of workers . . . are already identified." (ECF No. 116-5, p. 6).  However Kucsma also found that there are 25-30 subcontractors that worked on both the Municipal and State projects and "not all" of the subcontractors provided payroll records "meaning that there are likely additional members of the class that cannot currently be identified without payroll records."  Kucsma writes that her report "articulates . . . feasible methods for identifying potential additional class members . . . [and] additional hours of work performed." (ECF No. 116-5, p. 7).

In order to calculate damages for an "identifiable member," the following records are necessary:

1. Pay stubs or payroll records and time cards including hours worked, hourly pay rates, date of work or pay period, and project codes; and

2. The trade classification and the equipment operated in that capacity (if needed); and

---

[1] There is only one argument asserted in this motion to exclude Kucsma's testimony as unreliable.  As such, this memorandum discusses same.

2

> 3. The relevant published prevailing wage rate determinations for the time frame.

(ECF No. 116-5, p. 10). "Workers who are entitled to prevailing wage rates receive pay enhancements under certain circumstances." *Id.* To calculate pay enhancements, in addition to the information outlined above, the following evidence is necessary:

> Pay stubs or payroll records and time cards providing the date and day of the shift and the start time and end time of each shift.

(ECF No. 116-5, p. 10). With the above information, Kucsma calculated damages utilizing the following formula:

*Hours worked (regular/overtime) x Prevailing Wage Rate (regular/overtime)*

*+ Wage Enhancements (Potential) = Total Projected Wages*

*– Actual wages received = Total wages owed.*

(ECF No. 116-5, p. 7).

Confronting the issue that there may be "potential additional class members," Kucsma reviewed invoices provided by various subcontractors who did not provide corresponding payroll records. Based on "hours, loads, volume of material, etc.," Kucsma could "confirm total hours of work performed by a specific subcontractor based on payroll records and invoices they provided." (ECF No. 116-5, p. 8). For example, A.J.C. Excavating provided invoices for trucking services based on hours worked. Kucsma divided the hourly rate of truck drivers

($70.00) into the amount due ($3,952.00) to determine there were 52 hours of truck services.  Kucsma deducted from that calculation that the hours of truck services equals the hours paid to truck drivers on the project. (ECF No. 116-5, p. 8). Kucsma developed other methods based on the assumptions work per load and work per volume of material to determine the number of hours that were subject to PWA wages. Kucsma qualifies that "the assumptions or estimations made above are subject to change when calculating total class damages." (ECF No. 116-5, p. 10).

      The above calculation estimates the number of hours worked, and then the actual pay must be deducted to determine the loss.  To find the actual pay, Kucsma selected another subcontractor performing the same services who had provided payroll information, and then utilized that subcontractor's payroll information for her calculations.  Kucsma determined the hourly rate for three different truck drivers, and then calculated the average hourly rate.  Kucsma then utilized this average hourly rate as the "actual" rate of pay for workers in similarly situated services, even though that average rate as calculated was not based on actual employers' records.  As Kucsma noted, "we estimate[d] wage rate paid to those unidentifiable workers."  (ECF No.  116-5, p. 10).

4

II.

When reviewing a motion for class certification in which an expert is relied upon, a Plaintiff must demonstrate conformity with Rule 23 unless the plaintiff also demonstrates, and the trial court finds, that the expert testimony satisfies the standard set out in *Daubert*." *In re Blood Reagents Antitrust Litig.*, 783 F. 3d 183, 187 (3d Cir. 2015); *see also Messner v. Northsore Univ. HealthSystem*, 669 F. 3d 802, 812 (7th Cir. 2012).   "The admissibility of "expert testimony" is a question of law governed by Rule 702 of the Federal Rules of Evidence and the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)." *Feit v. Great-West Life and Annuity ins. Co.*, 460 F. Supp. 2d 632, 635 (D.N.J. 2006). "*Daubert* represents the Supreme Court's definitive pronouncement on the nature of a Rule 702 inquiry . . . [and] requires courts to perform a 'gatekeeping function' to ensure the relevance and reliability of expert testimony.": *Id.* at 636.  "[I]n *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S.- 137 (1999).

The test for determining reliability has a number of factors including whether the relationship of the technique to methods is reliable.  *In Re TMI*, 193 F. 3d 613, 664-665 (3d Cir. 1999)(citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 n.8 (3d Cir.1994)). Here, Kucsma initially relies on certain documents like payroll stubs, payroll records and timecards to identify members and wage

5

rates. On its face, this may be a suitable method to determine class members and wages; but when Kucsma introduces alternate methods of determining the loss of "unidentifiable" members of the class based on "assumptions and estimations", the element of reliability diminishes. Referring back to the determination of hours subject to wages by the services provided demonstrates that Kucsma's technique is questionable. For example, the invoice provides data including a rate per hour for truck services, and a total amount due. Kucsma assumes 52 hours of truck services meaning that there were 52 hours worded by truck drivers. However, there is unknown information such as:

  a. Identity of the truck driver;

  b. operation of the company and how drivers were deployed;

  c. what charges are included in determining an hour of truck services; and

  d. what is the actual wage paid to the truck driver.

An economist such as Kucsma cannot assume each hour of truck service included an hour of pay for a truck driver unless there is some factual support for the proposition. As such, Kucsma's alternate methods to determine "potential additional members" is unreliable. In conclusion, the motion to exclude the testimony of Kucsma is granted in part, and denied in part. That is, those areas where there are identifiable members, and supporting payroll documents, pay stubs

and timecards, the motion is denied.  In other areas where Kucsma utilizes alternate methods to determine unidentifiable members based on assumptions and estimates, the motion is granted. Obviously, the report must be revised to delete the Municipal Project as well.

## ORDER

THIS MATTER having come before the Court on Defendants' motion to exclude the testimony of Plaintiffs' damages expert, Kristin K. Kucsma , and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented; and for good cause shown; and for all the foregoing reasons,

IT IS, on this 20th day of June, 2023;

ORDERED that Defendant's Motion to Exclude Expert (ECF No. 116) is hereby GRANTED IN PART AND DENIED IN PART.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.